]

# EXHIBIT
# A
**CONTINUED (2)**

Case 1:07-cv-03258-VM  Document 1-3  Filed 04/23/2007  Page 1 of 18

migrated onto plaintiffs' properties causing the contamination thereof.

42. GE has incorrectly maintained, and continues to maintain, that PCBs were never released, discharged, emitted and/or migrated outside the confines of its Main Plant into the surrounding environment.

43. GE never tested the surrounding environment because it knew that the surrounding environment was contaminated with PCBs.

44. At all times relevant herein, GE purchased all of its PCBs-containing products from MONSANTO.

45. MONSANTO designed, manufactured and sold all the PCBs-containing products and materials to GE which were utilized by GE at its Main Plant and which thereupon caused and continues to cause the contamination and damages complained of herein.

## FIRST CAUSE OF ACTION AGAINST MONSANTO FOR NEGLIGENCE

46. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "43" inclusive with the same force and effect as if hereinafter set forth at length.

47. From on or about the 1930s and continuing through the 1970s, MONSANTO mined, processed, manufactured, designed, fabricated, fashioned, packaged, distributed, sold and/or delivered various PCBs-containing products to GE, which were used and thereafter disposed of by GE at its Main Plant.

48. At all relevant times, MONSANTO knew, or should have known, that the PCBs-containing products which they provided were inherently dangerous beyond the expectations of the ordinary user or handler who would come into contact with these

-9-

products.

49. MONSANTO negligently failed to provide any or adequate and proper warnings as to the dangers of the use of said products and materials to those persons using, disposing, handling, or coming into contact therewith, including GE and the plaintiffs herein.

50. MONSANTO negligently failed to warn and failed to provide adequate instructions to GE pertaining to safer handling and disposal methods for their PCBs containing products.

51. MONSANTO negligently failed to investigate and/or test for the hazards of PCBs products and materials.

52. To the extent that MONSANTO may have inquired as to the hazards of said materials, MONSANTO negligently failed to convey whatever knowledge of dangers, health hazards, or safety precautions they may have had to the users and consumers of their PCBs-containing products including GE and the plaintiffs herein.

53. MONSANTO negligently failed to develop, make available and/or provide nonhazardous substitutes which could have been used for the same purpose as their PCBs-containing products and materials.

54. MONSANTO negligently failed to design PCBs-containing products and materials in such a fashion as to prohibit or minimize the release of and exposure to PCBs.

55. As a direct result of GE's use and disposal of PCBs-containing products supplied by MONSANTO, PCBs were and continue to be released, discharged, emitted and migrated onto plaintiffs' properties causing contamination thereof.

56. The contamination of plaintiffs' properties was proximately caused by MONSANTO's negligent actions in that, *inter alia*, they negligently designed, processed,

manufactured, packaged, distributed, delivered and/or installed the PCBs-containing products which contaminated plaintiffs' properties, all of which evidenced a callous, reckless, wanton, oppressive, malicious, willful and depraved indifference to the health, safety and welfare of the rights of others and more particularly the rights of the plaintiffs, all of which MONSANTO had due and timely notice.

57.   MONSANTO negligently failed to render warnings, advise, give instructions and/or information to GE and the plaintiffs so that they could have made an adequate and informed judgment as to the use of said products and were otherwise negligent.

58.   MONSANTO since the 1930s has possessed medical and scientific data which clearly indicates that their PCBs-containing products were hazardous to the health and safety of the public and environment and prompted by pecuniary motives, MONSANTO ignored and failed to act upon said medical and scientific data and conspired to deprive the public, including plaintiffs, of said medical and scientific data and further willfully, intentionally and wantonly failed to warn plaintiffs of the serious health and safety risks associated with contamination of their properties.

59.   MONSANTO's utter failure to use reasonable care under all the circumstances is the proximate cause of the contamination of plaintiffs' properties.

60.   As a result of the foregoing, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

61.   By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SECOND CAUSE OF ACTION AGAINST MONSANTO FOR BREACH OF WARRANTY

62. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "61" inclusive with the same force and effect as if hereinafter set forth at length.

63. MONSANTO expressly and impliedly warranted that said PCBs-containing materials were of good and merchantable quality and fit for their intended use.

64. The implied/express warranties made by MONSANTO that its PCBs-containing materials were of good and merchantable quality and fit for their particular use were breached in that said materials contained harmful, toxic, poisonous and carcinogenic levels of PCBs which caused the contamination of plaintiffs' properties.

65. As a direct and/or proximate result of the breach of the implied/express warranties of good and merchantable quality and fitness for the particular use, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

66. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## THIRD CAUSE OF ACTION AGAINST MONSANTO FOR STRICT LIABILITY

67. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "66" inclusive with the same force and effect as if hereinafter set forth at length.

68. From on or about the 1930s and continuing through the 1970s,

-12-

MONSANTO, as part of its business, manufactured, designed, supplied, developed, fashioned, packaged, distributed, delivered, installed, sold, and/or otherwise placed PCBs-containing products and materials into the stream of commerce in a defective, unsafe and inherently dangerous condition and the products and materials were expected to and did reach users, handlers and persons coming into contact with the said products and materials without substantial change in the condition in which they were sold.

69. The PCBs-containing products and/or materials sold by MONSANTO did not contain a warning and/or information concerning the dangers to persons using, handling or coming into contact therewith, including GE and the plaintiffs.

70. The PCBs-containing products and/or materials sold by MONSANTO did not contain adequate and/or correct warnings and instructions of safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said products and/or materials, including GE and the plaintiffs.

71. That at all times herein, the products and/or materials being used herein were being employed for the purposes and in the manner normally intended and the defects of the said products were not discoverable by the plaintiffs by the exercise of reasonable care, nor were the dangers of said products perceivable on the part of the plaintiffs and the plaintiffs would not have otherwise averted their injuries by the exercise of reasonable care.

72. Said PCBs-containing materials were defective and dangerous at the time they were sold as the products and/or materials contained a latent defect and were harmful, poisonous and defective when introduced into the work environment at the GE Main Plant.

73. MONSANTO, by selling their PCBs-containing materials in a defective and dangerous condition to the users thereof, is strictly liable to the plaintiffs for the

-13-

contamination of their properties and the diminution in the value thereof.

74. As a direct and proximate result of the sale by MONSANTO to GE of said defective and unreasonably dangerous products and/or materials, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

75. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## FOURTH CAUSE OF ACTION AGAINST MONSANTO FOR FRAUDULENT CONCEALMENT

76. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "75" inclusive with the same force and effect as if hereinafter set forth at length.

77. From on or abut the 1930s to date and continuing, MONSANTO knew that PCBs were hazardous materials and that exposure thereto caused severe and permanent illnesses and injuries.

78. With full knowledge of the hazards of PCBs, MONSANTO made the conscious decision to suppress and conceal these facts from GE, the public and plaintiffs in order to maintain sales and to avoid liability, publicity, and other adverse consequences of their actions. Most egregiously, instead of attempting to warn GE, the public and plaintiffs of the hazards of PCBs, MONSANTO set out to sell even more PCBs. At all times, MONSANTO had knowledge superior to that of GE, the public and plaintiffs concerning the true hazards of PCBs.

79. In 1969, MONSANTO appointed an "ad hoc" committee on PCBs to address the "situation concerning environmental contamination through the manufacture and use of [PCBs]."

80. The purpose of the committee was to implement a plan to conceal material information from the public while at all times seeking to increase profits from the sales of PCBs. The stated objectives of the committee were to "protect continued sales and profits of [PCBs]" and "protect the image" of MONSANTO in order to "permit continued development of new uses and sales" of PCBs.

81. A memo setting out these objectives candidly acknowledged that "there is little probability that any action that can be taken will prevent the growing incrimination of specific [PCBs] as nearly global environmental contaminants leading to contamination of human food (particularly fish), the killing of some marine species (shrimp), and the possible extinction of several species of fish eating birds." In the face of these admitted environmental hazards, the committee suggested "a number of actions which must be undertaken to prolong the manufacture, sale and use of these particular [PCBs] as well as to protect the continued use of other members of the [PCB] series." MONSANTO was very concerned about its profits: "There can not be too much emphasis given to the threat of curtailment or outright discontinuance of the manufacture and sales of this very profitable series of compounds."

82. In 1975, a supposedly independent laboratory hired by MONSANTO to study the effects of PCBs issued a report on cancer caused by PCBs in laboratory rats. The "independent" lab concluded in its report that PCBs were "slightly tumorigenic." To conceal this information, MONSANTO requested the lab to change and falsify the report by changing the description of PCBs from "slightly tumorigenic" to "does not appear to be carcinogenic" in order to avoid adverse publicity.

83. MONSANTO's plan succeeded, and through the early 1970s it

continued to profit from the sales of PCBs while at all times failing to warn of the contamination at the GE Main Plant and surrounding areas. Only the threat of a national ban on production and the pressure of the United States government stopped MONSANTO from continuing to manufacture PCBs. The ban on production, however, was too late because the damage to the GE Main Plant had already been done. Moreover, PCBs still presently continue to be released and discharged into the environment at the GE Main Plant thereby contaminating the surrounding areas and plaintiffs' properties.

84. MONSANTO established early on a company policy to: "Give no statements or publications which would bring the [PCB] situation to the public's attention."

85. As part of its scheme to conceal, MONSANTO set out to "cooperate" with government authorities in confidential discussions that were not disclosed to GE, the public or to plaintiffs. MONSANTO touted its efforts to decrease the release of PCBs into the environment while failing to do anything about the pollution that had already occurred as a result of years of improper use and disposal. MONSANTO failed to fully disclose to governmental authorities the extent of the pollution and the long term adverse effects of PCBs already discharged into the environment.

86. In like manner, MONSANTO failed to inform certain corporate customers, including GE, of potential problems with PCBs and the need to properly use and dispose of PCBs containing products.

87. MONSANTO made no effort to disclose to GE, the public, and plaintiffs the dangers of PCBs and the fact that the GE Main Plant and surrounding environment had been contaminated with PCBs which will exist for years in the air, soil, sediment and water.

88. The aforementioned conduct and misrepresentations made by

-16-

MONSANTO were intentionally designed to foster the continued sale of its PCBs-containing materials and products and to prevent the general public and buyers of its products, including GE and the plaintiffs herein, from knowing and fully appreciating the dangers and serious health and safety risks associated with contamination of their properties.

89. The general public, GE and the plaintiffs herein relied on the aforementioned conduct, misrepresentations and concealment of MONSANTO to their detriment by continuing to buy and use said products and materials and by improperly disposing of said products and materials after their use thereof.

90. As a direct and proximate result of the conduct, misrepresentations and concealment of MONSANTO, the plaintiffs herein were unreasonably exposed to the dangers of PCBs and their properties have been permanently contaminated and the value of their properties have been severely and permanently diminished.

91. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## FIFTH CAUSE OF ACTION AGAINST MONSANTO FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

92. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "91" inclusive with the same force and effect as if hereinafter set forth at length.

93. From on or about the 1930s to date and continuing, MONSANTO negligently inflicted emotional distress on each plaintiff by its manufacture, creation, production and use of PCBs and by its failure to advise the general public, GE and the plaintiffs of the serious damages associated with exposure to PCBs as alleged above.

94. As a result of said conduct by MONSANTO, plaintiffs have sustained extreme emotional distress and mental anguish associated with the contamination of their properties and the risk of developing serious PCBs-related cancers, diseases and injuries.

95. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SIXTH CAUSE OF ACTION AGAINST MONSANTO FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "95" inclusive with the same force and effect as if hereinafter set forth at length.

97. From on or about the 1930s to date and continuing, MONSANTO intentionally inflicted emotional distress on each plaintiff by knowing and willfully manufacturing, creating, producing and using PCBs and by its failure to advise the general public, GE and the plaintiffs of the serious damages associated with exposure to PCBs as alleged above.

98. As a result of said conduct by MONSANTO, plaintiffs have sustained extreme emotional distress and mental anguish associated with the contamination of their properties and the risk of developing serious PCBs-related cancers, diseases and injuries.

99. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SEVENTH CAUSE OF ACTION AGAINST MONSANTO FOR ABNORMALLY DANGEROUS ACTIVITY

100. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "99" inclusive with the same force and effect as if hereinafter set forth at length.

101. By manufacturing, producing, creating, using, releasing and dispersing PCBs onto plaintiffs' properties and by allowing those PCBs to remain in the environment to date and continuing, MONSANTO has engaged in abnormally dangerous, ultra hazardous and inherently or intrinsically dangerous activities for which it is strictly liable to the plaintiffs. Said conduct is a direct and proximate cause of injuries and damages to the plaintiffs.

102. As a result of the foregoing, the contamination of plaintiffs' properties is permanent and the value of plaintiffs' properties has been severely and permanently diminished.

103. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## EIGHT CAUSE OF ACTION AGAINST MONSANTO FOR MEDICAL MONITORING

104. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "103" inclusive with the same force and effect as if hereinafter set forth at length.

105. As a result of the continuing conduct alleged herein, plaintiffs have elevated levels of PCBs in their blood and body organs causing them severe and permanent

-19-

personal injuries and an increased risk of developing PCBs related cancers, diseases and injuries. As a direct and proximate result thereof, plaintiffs have incurred and continue to incur the cost of medical treatment and monitoring.

106. Also as a result of the conduct alleged herein, plaintiffs will suffer future injuries, symptoms and pain and suffering from the latent effects of their exposure to PCBs as well as the effects of future and continuing exposure to PCBs due to the continuing and persistent discharge and release of PCBs from the GE Main Plant. As a direct and proximate result thereof, plaintiffs will need continual medical treatment, testing and monitoring in the future.

107. As a result of the foregoing, plaintiffs are entitled to recover the costs of past and future medical monitoring, testing and treatment as a separate claim for relief or, alternatively, as additional damages under each of the other claims for relief above.

108. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWO BILLION DOLLARS ($2,000,000,000.00) in compensatory damages and TWO BILLION DOLLARS ($2,000,000,000.00) in punitive damages

## NINTH CAUSE OF ACTION AGAINST MONSANTO FOR FEAR OF SUSTAINING PCBs-RELATED ILLNESSES

109. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "108" inclusive with the same force and effect as if hereinafter set forth at length.

110. As a direct and proximate result of the conduct alleged herein, plaintiffs have reasonably developed the fear of sustaining severe and permanent personal injuries in the future due to the latent effects of their exposure to PCBs as well as the effects of future and continuing exposure to PCBs from the GE Main Plant.

-20-

111. As a result of the foregoing, plaintiffs are entitled to damages for the extreme emotional distress and mental anguish associated with the reasonable fear of sustaining PCBs-related injuries and illnesses in the future.

112. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

### TENTH CAUSE OF ACTION AGAINST MONSANTO FOR NUISANCE

113. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "112" inclusive with the same force and effect as if hereinafter set forth at length.

114. At all times material hereto, plaintiffs were in lawful possession of their properties. The conduct of MONSANTO alleged herein has resulted in an intrusion and the continued intrusion upon plaintiffs' properties significantly and negatively impacting upon the plaintiffs' rights to use and enjoy their own property.

115. MONSANTO's conduct alleged herein caused the unreasonable emission, disposal and release of dangerous and toxic PCBs onto plaintiffs' properties and was substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits.

116. MONSANTO's interference with plaintiffs' rights was so unusual and excessive that in necessarily caused injury, damage, harm and inconvenience to plaintiffs, and it substantially, materially and unusually interfered with their comfort and proper use and enjoyment of their property. Such invasion of plaintiffs' rights was unreasonable.

117. MONSANTO's conduct has resulted in an entry and intrusion and the

-21-

continued entry and intrusion onto the properties of plaintiffs without privilege, permission, invitation or justification. MONSANTO's conduct directly and proximately caused plaintiffs' injuries, including actual harm to their properties and economic interests and an increased risk of future illnesses.

118. By reason of the foregoing, MONSANTO owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

119. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## ELEVENTH CAUSE OF ACTION
## AGAINST MONSANTO FOR TRESPASS

120. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "119" inclusive with the same force and effect as if hereinafter set forth at length.

121. Plaintiffs were at all relevant times in possession of land they owned and/or occupied.

122. MONSANTO knew that its PCBs-containing products were dangerous and defective and that PCBs were intentionally discharged, released, emitted and migrated onto plaintiffs' properties.

123. Despite MONSANTO's knowledge of the harm it was causing, MONSANTO intentionally persisted in its conduct and continued to discharge PCBs onto plaintiffs' properties.

-22-

124. This intentional discharge that MONSANTO knew, or should have known, was migrating onto plaintiffs' properties, was a trespass.

125. Plaintiffs' properties continue to be exposed to and contaminated by PCBs designed, manufactured, sold and distributed by MONSANTO.

126. MONSANTO's conduct has resulted in an entry and intrusion onto the properties of the plaintiffs without privilege, permission, invitation or justification.

127. MONSANTO's conduct directly and proximately caused plaintiffs' injuries, including actual physical harm to their properties and economic interests and an increased risk of future harm to their person. Plaintiffs are entitled to recover damages for such injuries.

128. By reason of the foregoing, MONSANTO owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

129. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## TWELFTH CAUSE OF ACTION AGAINST MONSANTO FOR UNJUST ENRICHMENT

130. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "129" inclusive with the same force and effect as if hereinafter set forth at length.

131. Plaintiffs have and/or will incur the cost of determining the nature and

extent of contamination on their properties and the cost of restoring their properties to their pre-contaminated condition.

132. MONSANTO owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

133. MONSANTO has breached and continues to breach this duty.

134. As a result of its breach, MONSANTO has been unjustly enriched in that it has the use of funds that it otherwise should have expended in fulfilling this duty.

135. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## THIRTEENTH CAUSE OF ACTION AGAINST MONSANTO FOR WILFUL AND WANTON MISCONDUCT

136. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "135" inclusive with the same force and effect as if hereinafter set forth at length.

137. MONSANTO has acted in a wanton and willful manner and in reckless indifference to the safety of plaintiffs' health and the use and enjoyment of their properties in the following ways:

    (a) MONSANTO allowed and continues to allow highly toxic PCBs to be discharged, released, emitted and migrated onto plaintiffs' properties without appropriate safeguards to prevent or remedy such releases;

    (b) MONSANTO failed to warn and advise GE and the plaintiffs that its PCBs-containing products were dangerous and defective and that they needed to be safely and properly handled, used and disposed of;

(c) MONSANTO failed to warn the plaintiffs that their health and properties were at risk due to the release of PCBs from the GE Main Plant; and

(d) MONSANTO failed to determine the import of such contamination on plaintiffs' health and properties.

138. As a direct and proximate result of the willful, wanton, and reckless acts and omissions of MONSANTO, plaintiffs have sustained actual damages and because of these acts and omissions, it is reasonable and proper for the assessment of punitive damages to deter MONSANTO and all others similarly situated from acting in a similar manner in the future.

139. By reason of the foregoing, plaintiffs are entitled to the imposition of punitive damages in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00).

## FIRST CAUSE OF ACTION AGAINST GE FOR NEGLIGENCE

140. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "139" inclusive with the same force and effect as if hereinafter set forth at length.

141. From on or about the 1930s to date and continuing, GE processed, manufactured, assembled, designed, fabricated, fashioned, packaged, distributed, sold, inspected, repaired, tested, delivered and/or used various PCBs-containing products which it thereafter disposed at its Main Plant.

142. At all relevant times, GE knew, or should have known, that their PCBs-containing products were inherently dangerous beyond the expectations of the reasonably foreseeable persons who would come into contact with these products, including the plaintiffs herein.

143. GE negligently failed to provide any or adequate and proper warnings as to the dangers of said products and materials to the plaintiffs herein.

144. GE negligently handled, used and disposed these PCBs-containing products.

145. GE negligently failed to investigate and/or test for the hazards of PCBs