# EXHIBIT C

EXECUTION VERSION

DISTRIBUTION AGREEMENT

by and between

MONSANTO COMPANY,
a Delaware corporation,

and

SOLUTIA INC.,
a Delaware corporation

As of September 1, 1997

DISTRIBUTION AGREEMENT

DISTRIBUTION AGREEMENT, dated as of September 1, 1997 (this "Agreement"), by and between Monsanto Company, a Delaware corporation ("Monsanto"), and Solutia Inc., a newly-formed Delaware corporation ("Chemicals").

WITNESSETH:

WHEREAS, the Board of Directors of Monsanto has determined that it is appropriate and desirable to separate Monsanto and its subsidiaries into two publicly traded organizations by: (1) consolidating into Chemicals and its newly formed subsidiaries certain of the businesses conducted by Monsanto directly and through certain of its other subsidiaries and (2) distributing to the holders of the issued and outstanding shares of common stock, par value $2.00 per share, of Monsanto all of the issued and outstanding shares of common stock, par value $.01 per share, of Chemicals in accordance with Article III hereof (the "Distribution");

WHEREAS, the Distribution is intended to qualify as a tax-free spinoff under Section 355 of the Internal Revenue Code of 1986, as amended;

WHEREAS, the parties hereto have determined that it is necessary and desirable to set forth the principal corporate transactions required to effect the Distribution and to set forth other agreements that will govern certain other matters prior to and following such Distribution;

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained and intending to be legally bound hereby, the parties hereto agree as follows:

ARTICLE I

DEFINITIONS

1.01 General. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

1. *Action:* any demand, action, suit, countersuit, arbitration, inquiry, proceeding or investigation by or before any federal, state, local, foreign or international Governmental Authority or any arbitration or mediation tribunal.

2. *Affiliate:* with respect to any specified Person, a Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person; provided, however, that for purposes of this

Agreement, no member of either Group shall be deemed to be an Affiliate of any member of the other Group.

3. *Agent:* the distribution agent appointed by Monsanto to distribute the shares of Chemicals Common Stock pursuant to the Distribution.

4. *Arbitration Act:* the United States Arbitration Act, 9 U.S.C. §§1-14, as the same may be amended from time to time.

5. *Arbitration Demand Date:* as defined in Section 7.03(a) hereof.

6. *Arbitration Demand Notice:* as defined in Section 7.03(a) hereof.

7. *Assets:* any and all assets, properties and rights (including goodwill), wherever located (including in the possession of vendors or other third parties or elsewhere), whether real, personal or mixed, tangible, intangible or contingent, in each case whether or not recorded or reflected or required to be recorded or reflected on the books and records or financial statements of any Person, including, without limitation, the following:

(i) all accounting and other books, records and files whether in paper, microfilm, microfiche, computer tape or disc, magnetic tape or any other form;

(ii) all apparatus, computers and other electronic data processing equipment, fixtures, trade fixtures, machinery, equipment, capital and other spares, furniture, office equipment, automobiles, trucks, aircraft, rolling stock, vessels, motor vehicles, trailers and other transportation equipment, special and general tools, test devices, prototypes and models and any other tangible personal property;

(iii) all inventories of materials, raw materials, catalysts, precious metals, stores inventories, supplies, work-in-process, consigned goods and finished goods and products and product samples;

(iv) all interests in real property of whatever nature, including easements, leases and licenses, whether as owner, mortgagee or holder of a Security Interest in real property, lessor, sublessor, lessee, sublessee or otherwise;

(v) all buildings and other improvements to real property and all leasehold improvements;

(vi) all bonds, notes, debentures or other securities issued by any Subsidiary or any other Person, all loans, advances or other extensions of credit or capital contributions to any Subsidiary or any other Person, all certificates of deposit, bankers' acceptances, certificates of interest or participation in profit sharing agreements, collateral trust certificates, preorganization certificates or subscriptions, transferable shares, investment contracts, voting trust certificates, fractional

undivided interests in oil, gas or other mineral rights, puts, calls, straddles, options and other securities of any kind;

(vii) all license agreements, leases of personal property and other leases, open purchase orders for raw materials, supplies, parts or services, unfilled orders for the manufacture or sale of products, other sales or purchase agreements, other commitments or arrangements, permits, distribution arrangements, and other contracts, agreements or commitments;

(viii) all deposits, letters of credit and performance and surety bonds;

(ix) all technical information, data, specifications, research and development information, engineering drawings, operating and maintenance manuals, and materials and analyses prepared by consultants and other third parties; environmental clean-up technology, safety and industrial hygiene methods and technology;

(x) all technology, domestic and foreign patents, statutory, common law and registered copyrights, trade names, registered and unregistered trademarks, service marks, service names, trade styles, product bar codes and associated goodwill, and registrations and applications for any of the foregoing, mask works, trade secrets, inventions, formulas, processes, designs, know-how, or other data or information, confidential information, other proprietary information and licenses from third Persons granting the right to use any of the foregoing and other rights in, to and under the foregoing (it being understood that the transfer of Assets described in this clause (x) shall be made pursuant to the Intellectual Property Agreements);

(xi) all computer applications, programs and other software and databases (including all embodiments or fixations thereof and related documentation, registrations and franchises, and all additions, improvements, enhancements, updates and accessions thereto), all technical manuals and documentation made in connection with the foregoing, and the right to sue for past infringement thereof, and all licenses and rights with respect to the foregoing or of like nature, including operating software, network software, firmware, middleware, design software, design tools, systems documentation and instructions;

(xii) all cost information, sales and pricing data, customer prospect lists, supplier records, customer and supplier lists, customer and vendor data, correspondence and lists, product literature, artwork, design, development and manufacturing files, vendor and customer drawings, formulations and specifications, quality records and reports, lists of advertisers, records pertaining to advertisers and accounts, and other books, records, studies, surveys, reports, plans and document forms and any other business information;

(xiii) all prepayments or prepaid expenses, trade accounts and other accounts and notes receivable and all other current assets;

(xiv) the right to receive mail, payments on accounts receivable and other communications;

(xv) all rights under contracts, agreements, warranties or guaranties, all claims or rights or judgments against any Person, all rights in connection with any bids or offers and all claims, choses in action, rights of recovery and rights of set-off or similar rights, whether accrued or contingent, refunds and deposits;

(xvi) all rights under insurance policies and all rights in the nature of insurance, indemnification or contribution;

(xvii) all licenses, permits, approvals and authorizations which have been issued by any Governmental Authority;

(xviii) advertising materials and other printed or written materials;

(xix) employee contracts, including any rights thereunder to restrict an employee or former employee from competing in certain respects, and personnel and medical files and records;

(xx) cash, cash equivalents, bank accounts, lock boxes and other deposit arrangements; and

(xxi) interest rate, currency, commodity or other swap, collar, cap, floor, or other hedging or similar agreements or arrangements.

8.  *Business Transfer Agreements*: the agreements which have been or will be entered into between certain wholly-owned Chemicals Subsidiaries incorporated, or having a branch or presence outside the United States and certain wholly-owned Monsanto Subsidiaries incorporated, or having a branch or presence outside the United States, providing for the transfer of Chemicals Assets and assumption of Chemicals Liabilities outside the United States from such Monsanto Subsidiaries to such Chemicals Subsidiaries. For purposes hereof, the term Business Transfer Agreement shall also include: (i) any other agreements related to the transfer of Chemicals Assets and assumption of Chemicals Liabilities outside the United States, including without limitation, those agreements which are required by local law or are executed in connection with or to implement such transfer of Chemicals Assets and assumption of Chemicals Liabilities; and (ii) the assignment from Monsanto to Chemicals transferring the operating assets in the United States.

9.  *Business Day:* any day other than a Saturday, a Sunday or a day on which banking institutions located in the States of Missouri, New York or Delaware are authorized or obligated by law or executive order to close.

10.  *Chemicals:* as defined in the preamble to this Agreement.

*11.    Chemicals Assets*: excluding the Excluded Chemicals Assets, and any Assets sold or otherwise disposed of on or prior to the Distribution Date (1) all Assets included on the Chemicals Balance Sheet or the accounting records supporting the Chemicals Balance Sheet, as adjusted by the pro forma adjustments thereto as set forth in the Proxy Statement and all Assets of either Group acquired between March 31, 1997 and the Distribution Date which would have been included on the Chemicals Balance Sheet had they been owned on March 31, 1997; (2) all Assets exclusively dedicated to the Chemicals Business and all Assets formerly used in the Former Chemicals Business which are not used in the Monsanto Business on the Distribution Date, which in either case, are owned, leased, licensed or held by any member of either Group on the Distribution Date; (3) real property (including the buildings, fixtures and improvements located thereon) listed on Schedule 1.01(11)(a) and such other real property interests held by members of either Group formerly used in any Former Chemicals Business which are not used in the Monsanto Business on the Distribution Date; (4) all of the outstanding shares of all classes of capital stock of the Chemicals Subsidiaries to the extent owned by any member of the Monsanto Group; (5) the partnership, joint venture and other equity interests listed on Schedule 1.01(11)(b), and Chemicals' rights with respect to and interests in the P4 Joint Venture as provided in the P4 Joint Venture Agreement; (6) all contracts, leases and licenses exclusively dedicated to the Chemicals Business, and such rights under other contracts, leases or licenses as the parties have otherwise agreed pursuant to this Agreement, the Other Agreements or in any other enforceable agreement executed on behalf of a member of the Chemicals Group, on the one hand, and a member of the Monsanto Group, on the other hand; (7) warranties, guarantees, claims or any other rights that members of either Group may have against any Third Party (including Governmental Authorities) to the extent relating to the disposition of any Former Chemicals Business; (8) those books and records to be delivered to the Chemicals Group and rights of access to other books and records as provided in Article VI of this Agreement; (9) the rights of Chemicals under the Insurance Policies as provided in Article IX of this Agreement; (10) any pension assets, pension funds or other Assets expressly contemplated to be transferred, licensed or otherwise made available to any member of the Chemicals Group pursuant to this Agreement or any Other Agreements; and (11) all of the Assets listed on Schedule 1.01(11)(c).

*Chemicals Assets* shall also mean any and all other Assets owned or held on the Distribution Date by members of the Monsanto Group that are related to the Chemicals Business and which the parties agree should have been transferred to the Chemicals Group, if, had the parties given specific consideration to such Asset as of the date hereof, such Asset would have been classified as a Chemicals Asset; provided, however, that no Asset shall be deemed to be a Chemicals Asset solely as a result of this provision unless a claim with respect thereto is made by a member of the Chemicals Group on or prior to eighteen months after the Distribution Date.

*12.    Chemicals Balance Sheet:* the unaudited combined balance sheet of the Chemicals Business as of March 31, 1997 and the notes thereto as set forth in the Proxy Statement.

*13.  Chemicals Business:*  (i) all businesses and operations (including related joint ventures and alliances) of the chemicals businesses of Monsanto as described in the Proxy Statement in the section "Businesses and Properties of Chemicals After the Spinoff" and as conducted on the Distribution Date, consisting principally of those businesses and operations set forth on Schedule 1.01(13) conducted by the Acrilan® Acrylic Fibers Unit, the Carpet Fibers Unit, the Nylon Plastics and Polymers Unit, the Nylon Industrial Unit, the Intermediates Unit, the Saflex® Unit, the Phosphorus and Derivatives Unit, the Resins Unit, the Polymer Modifiers Unit and the Industrial Products Unit and (ii) any other business or operation on the Distribution Date conducted by or for the Chemicals Group through the ownership or use of the Chemicals Assets.

*14.  Chemicals Claim:*  any claim with respect to any injury, Loss, Liability, damage or expense (x) that is or was incurred or asserted to have been incurred prior to the Distribution Date in, or in connection with, the Chemicals Business, the Former Chemicals Business, the Chemicals Assets or the Chemicals Liabilities or the Joint Ownership Properties or the P4 Business to the extent of Chemicals' rights or obligations under the P4 Joint Venture Agreement with respect to such claims; or (y) that is or was incurred prior to the Distribution Date that is against any member of the Chemicals Group or any employee of any member of the Chemicals Group; provided, that in the case of any claim under (x) or (y) or claims identified in (i) through (vi) below, such injury, Loss, Liability, damage or expense (including costs of defense and reasonable attorneys' fees) are or may be insured or insurable under one or more of the Insurance Policies. Chemicals Claims include, without limitation, (i) claims for property or casualty damage or any other injury, Loss, Liability, damage or expense with respect to Chemicals Assets; (ii) claims of injury, Loss, Liability, damage or expense arising from business interruption of any type of the Chemicals Business or Former Chemicals Business; (iii) claims against any member of the Chemicals Group whether or not the Chemicals Group has or has assumed liability for such claims under this Agreement or any of the Other Agreements; (iv) claims against any member of the Monsanto Group to the extent any member of the Chemicals Group has assumed liability for such claims under this Agreement or any of the Other Agreements; (v) claims involving or against any director, officer, employee, fiduciary or agent of the Chemicals Group who are entitled or would have been entitled to indemnification by Monsanto had the Distribution not occurred; and (vi) claims with respect to the Chemicals Business, the Former Chemicals Business, the Chemicals Assets, the Chemicals Liabilities or the Joint Ownership Properties or the P4 Business to the extent of Chemicals rights or obligations under the P4 Joint Venture Agreement involving any other Person who is entitled or would have been entitled to indemnification by any member of the Monsanto Group had the Distribution not occurred.

*15.  Chemicals Common Stock:*  the common stock, par value $.01 per share, of Chemicals.  References to Chemicals Common Stock shall also include the associated preferred share purchase rights issued under the Chemicals Rights Plan.

*16.  Chemicals Director:*  any individual who is a member of the Board of Directors of Chemicals.

17. *Chemicals Facilities:* facilities which are Chemicals Assets.

18. *Chemicals Group:* Chemicals and the Chemicals Subsidiaries of which Chemicals directly or indirectly owns 100% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body.

19. *Chemicals Liabilities:* excluding the Excluded Chemicals Liabilities and excluding those Liabilities (or portions thereof) which have been satisfied, paid or discharged prior to the Distribution Date, (1) all Liabilities included on the Chemicals Balance Sheet or the accounting records supporting such Chemicals Balance Sheet as adjusted by the pro forma adjustments thereto as set forth in the Proxy Statement and all Liabilities of either Group incurred or arising between March 31, 1997 and the Distribution Date which would have been included on the Chemicals Balance Sheet had they been incurred or arisen on or prior to March 31, 1997; (2) all Liabilities relating exclusively to or arising exclusively from the Chemicals Assets, the Chemicals Business or the Former Chemicals Business or the disposition of any Former Chemicals Business, whether incurred or arising prior to or after the Distribution Date; (3) except as expressly provided in the Other Agreements, all Liabilities relating to or arising from the operation of its business or the use of its Assets by any member of the Chemicals Group at any time from and after the Distribution Date; (4) those Liabilities for worker's compensation or Third Party claims incurred prior to the Distribution Date at a site transferred to the Chemicals Group as part of the Chemicals Assets; (5) all Liabilities assumed by any member of the Chemicals Group under an express provision of this Agreement or an Other Agreement; (6) those Liabilities for environmental remediation or other environmental responsibilities as described to be assumed by Chemicals in Schedule 1.01(19)(a); (7) all Liabilities for products of the Chemicals Business or Former Chemicals Business sold to Third Parties by any member of either Group; (8) all Liabilities arising under the Financing Facility and the Third Party indebtedness listed on Schedule 1.01(19)(b); and (9) all Liabilities listed on Schedule 1.01(19)(c).

*Chemicals Liabilities* shall also mean, any and all other Liabilities owed on the Distribution Date by members of the Monsanto Group that are related to the Chemicals Business and which the parties agree should have been transferred to the Chemicals Group, if, had the parties given specific consideration to such Liability as of the date hereof, such Liability would have been classified as a Chemicals Liability; provided, however, that no Liability shall be deemed to be a Chemicals Liability solely as a result of this provision unless a claim with respect thereto is made by a member of the Monsanto Group on or prior to eighteen months after the Distribution Date.

20. *Chemicals Rights Plan:* the share purchase rights plan in the form approved by the Board of Directors of Chemicals prior to the Distribution Date.

21. *Chemicals Subsidiaries:* all of the corporations listed on Schedule 1.01(21).

22. *Chemicals Support Agreements:* any obligation or agreement of the Monsanto Group under any guarantee, letter of credit, bond, letter of comfort or working

-8-

capital maintenance agreement obtained prior to the Distribution Date for the benefit of the Chemicals Business or any member of the Chemicals Group.

23. *Claims Administration:* the processing of claims made under the Insurance Policies, including the reporting of claims to the insurance carrier, management and defense of claims and providing for appropriate releases upon settlement of claims.

24. *Code:* the Internal Revenue Code of 1986, as amended, or any successor legislation and the regulations promulgated thereunder.

25. *CPR:* the Center for Public Resources.

26. *DGCL :* the Delaware General Corporation Law, as amended.

27. *Distribution:* the distribution to holders of shares of Monsanto Common Stock to be effected pursuant to Article III on the basis of one share of Chemicals Common Stock for every five (5) shares of Monsanto Common Stock held of record as of the Record Date.

28. *Distribution Date:* the date, to be determined by the Board of Directors of Monsanto, or such committee of the Board as shall be designated by the Board of Directors, as of which the Distribution shall be effected.

29. *Employee Benefits Allocation Agreement:* an employee benefits and compensation allocation agreement to be entered into between Monsanto and Chemicals substantially in the form attached hereto as Exhibit 1.01(29), with such changes as may be mutually satisfactory to Monsanto and Chemicals.

30. *Escalation Notice:* as defined in Section 7.02(a) hereof.

31. *Exchange Act:* the Securities Exchange Act of 1934, as amended, together with the rules and regulations promulgated thereunder.

32. *Excluded Chemicals Assets:* (i) (a) the Joint Ownership Properties and (b) that undivided interest in the P4 Joint Venture that is to continue to be owned by Monsanto under the P4 Joint Venture Agreement; (ii) the phosphorus trichloride facility and related Assets at Monsanto's plant in Luling, Louisiana; (iii) cash and cash equivalents (as such term is used in connection with the preparation of Monsanto's financial statements) in excess of $75,000,000; (iv) Monsanto Enviro-Chem Systems, Inc.; (v) Leonard Construction Company; (vi) any loan to, note of, or investment in Camelot Superabsorbents Ltd.; (vii) all Assets of Monsanto's diamond coatings and optical/vision business, including without limitation, all Assets which were formerly owned, leased or controlled by Diamonex, Incorporated, its subsidiaries and any entity in which it held at any time an equity interest; (viii) agreements with Third Parties relating to Monsanto Assets, including without limitation, operating agreements at Monsanto Facilities which relate to businesses

sold prior to the Distribution Date; (ix) all Assets of Monsanto's industrial alginates business; and (x) those Assets listed on Schedule 1.01(32).

33.   *Excluded Chemicals Liabilities*: those Liabilities listed on Schedule 1.01(33).

34.   *Financing Facility:* (i) the commercial paper facility, including the Issuing and Paying Agency and Assignment and Assumption Agreement, to be entered into prior to the Distribution Date by Monsanto, Chemicals, and an agent or co-agents selected by Monsanto, pursuant to which, prior to the Distribution Date, Monsanto will issue assumable commercial paper such that the sum of (x) the accreted principal amount on the Distribution Date of commercial paper that Chemicals will assume on the Distribution Date and (y) the principal amount, plus accrued interest, on the Distribution Date of other Third Party indebtedness listed on Schedule 1.01(19)(b) that Chemicals will assume on the Distribution Date (excluding indebtedness relating to the Chemicals SIP Trust (as defined in the Employee Benefits Allocation Agreement)) equals $1,000,000,000; and (ii) the credit agreement or agreements to be entered into by Chemicals.

35.   *Foreign Exchange Rate:* with respect to any currency other than United States dollars as of any date, the average of the bid and asked rates at 9:00 a.m., New York City time, on such date at which such currency may be exchanged for United States dollars as quoted by Citibank, N.A., except that, with respect to any Indemnifiable Loss covered by insurance, the Foreign Exchange Rate for such currency shall be determined as set forth in Section 4.03(d)(2).

36.   *Former Chemicals Business*: those businesses and operations which were formerly operated by Monsanto as part of its chemicals subsidiaries, units or divisions and which have been sold, or otherwise disposed of, or discontinued prior to the Distribution Date including but not limited to those businesses and operations set forth on Schedule 1.01(36)(a) but excluding, without limitation (except to the extent set forth on such Schedule), (i) shut down or sold plant sites and businesses associated with product families that continue in the Monsanto Group or in the P4 Joint Venture; (ii) shut down or sold plant sites and businesses previously closely integrated (supply chain) with upstream or downstream Monsanto subsidiaries, units or divisions other than a chemicals subsidiary, unit or division; (iii) businesses or operations relating to any of the following: (a) health care or vision; (b) pharmaceuticals; (c) environmental products (e.g., Brinks); (d) food products and additives; (e) feed products and additives; (f) BST/animal hormones; (g) agricultural chemicals; (h) pesticides (except for chlorinated cyanuric acids or its salts, 1, 4 dichlorobenzene, 1, 4 nitrophenol); (i) seed and fertilizer; (j) lawn & garden products; (k) blasting products; (l) animal/plant farms; (m) construction of sulfuric acid plants/catalysts; (n) Monsanto Enviro-Chem Systems, Inc.; (o) Leonard Construction Company; (p) controls or control valves (e.g., Fisher Controls); (q) electron beam accelerator; (r) radiation service/products; (s) gas products (e.g., Matheson); (t) hollow fibers (e.g., Permea); (u) the Dayton, Ohio plant site; (v) Pristine and Hershberger offsites; (w) Research Triangle Park site; (x) oil and gas production and exploration; (y) petroleum refining and retailing; (z) Monsanto Research Corporation (e.g., Mound Labs); (aa) Hub Property - Nitro; (bb)

Delmar Street; (cc) metalized fabrics; (dd) DDT; (ee) Phosphorus (P4); and (ff) those sites and businesses listed on Schedule 1.01(36)(b).

37. *Governmental Authority:* any federal, state, local, foreign or international court, government, department, commission, board, bureau, agency, the NYSE or other regulatory, administrative or governmental authority.

38. *Group:* the Monsanto Group or the Chemicals Group as the context requires.

39. *Indemnifiable Losses:* all Losses which are subject to being indemnified by Monsanto or Chemicals pursuant to Article IV.

40. *Indemnifying Party:* a Person who or which is obligated under this Agreement to provide indemnification.

41. *Indemnitee:* a Person who may seek indemnification under this Agreement.

42. *Indemnity Payment:* an amount that an Indemnifying Party is required to pay to an Indemnitee pursuant to Article IV.

43. *Information:* all records, books, contracts, instruments, computer data and other data and information.

44. *Insurance Administration:* with respect to each Insurance Policy, (1) the accounting for retrospectively-rated premiums, defense costs, indemnity payments, deductibles and retentions as appropriate under the terms and conditions of each of the Insurance Policies, (2) the reporting to excess insurance carriers of any losses or claims which may cause the per-occurrence or aggregate limits of any Insurance Policy to be exceeded and (3) the distribution of Insurance Proceeds as contemplated by this Agreement.

45. *Insurance Policy:* insurance policies and insurance contracts of any kind that are owned or maintained by, or provide a benefit in favor of, any member of either Group or any of its predecessors as the insured interest, including without limitation, primary and excess policies; comprehensive general liability policies; automobile insurance policies; aviation and aircraft insurance policies; worker's compensation insurance policies (including without limitation, occupational disease); property, casualty and business interruption insurance policies; directors and officers liability insurance policies; fiduciary insurance policies; fidelity insurance policies; self-insurance and captive insurance company arrangements, together with the rights, benefits and privileges thereunder; and any insurance policy for directors and officers liability which has been purchased to provide occurrence coverage for both continuing and former directors, officers and employees for claims arising from or relating to events, occurrences or other matters prior to or on the Distribution Date. The term "Insurance Policy" expressly includes any insurance policies or insurance contracts issued by Monsure Ltd. or Mongard Ltd.

46. *Insurance Proceeds:* those monies received by or on behalf of an insured from an insurance carrier or paid by an insurance carrier on behalf of the insured.

47. *Insured Claims:* those Liabilities and Losses that, individually or in the aggregate, are covered within the terms and conditions of any of the Insurance Policies, whether or not subject to deductibles, coinsurance, uncollectibility or retrospectively-rated premium adjustments, but only to the extent that such rights or Liabilities are within applicable Insurance Policy limits, including aggregates.

48. *IRB:* the arrangements relating to or arising out of any one or more of the following to the extent that it relates to a Chemicals Asset: (i) Anniston, Ala. PCRBs, Series 1992; (ii) Anniston SWDA, SWRRRBs, Series 1992; (iii) Caribou County PCRBs, Series 1990; (iv) Caribou County PCRBs, Series 1994A; (v) Caribou County PCRBs, Series 1994B; (vi) Southwest III Devel. Auth. Series 1991 (callable 7/15/2004); (vii) Brazos River PCRBs, Series 1990; (viii) Brazos River PCRBs, Series 1988; (ix) Brazos River PCRBs, Series 1994; (x) Decatur IRBs, Series 1996; (xi) Decatur PCRBs, Series 1990; (xii) Decatur PCRBs, Series 1992 Var.; (xiii) Decatur PCRBs, Series 1994 Var.; (xiv) Escambia County Var. Rate Bonds 1993; (xv) Escambia County Var. Rate Bonds 1994; (xvi) Gloucester County PCRBs, Series 1992 Var.; (xvii) Greenville IDRBs, Series 1990 (callable 10/01/2000); (xviii) Missouri PCRBs, Series 1988; (xix) Missouri PCRBs, Var. Rate Series 1993; (xx) Sauget PCRBs, Series 1996; (xxi) Sauget PCRBs, Series 1992; (xxii) Sauget PCRBs, Series 1993; (xxiii) Springfield Adj. Rate PCRBs, Sers. 1984 (callable 11/01/1999); (xxiv) Southwest III Devel. Auth. Series 1989.

49. *Intellectual Property Agreements:* the Intellectual Property Transfer Agreement, substantially in the form attached hereto as Exhibit 1.01(49), together with various agreements attached thereto as exhibits, with such changes as may be mutually agreed, which have been or will be entered into on or prior to the Distribution Date between Monsanto and Chemicals or members of their respective Groups with respect to transfer and licensing of intellectual property.

50. *IRS:* the Internal Revenue Service.

51. *Joint Ownership Properties:* the properties listed on Schedule 1.01(51).

52. *Lease Agreements:* the lease agreements which have been or will be entered into on or prior to the Distribution Date between Monsanto and Chemicals, or the appropriate members of the Monsanto Group and the Chemicals Group, substantially in the form attached hereto as Exhibit 1.01(52) with respect to the facilities listed on Schedules 1.01(52).

53. *Liabilities:* all debts, liabilities and obligations, whether absolute or contingent, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, known or unknown, whenever arising, and whether or not the same would properly be reflected on a balance sheet, including all costs and expenses relating thereto.

54. *Litigation Matters:* as defined in Section 6.06(a) hereof.

55. *Losses*: all losses, liabilities, damages, claims, demands, judgments or settlements of any nature or kind, known or unknown, fixed, accrued, absolute or contingent, liquidated or unliquidated, including all reasonable costs and expenses (legal, accounting or otherwise as such costs are incurred) relating thereto, suffered by an Indemnitee.

56. *Monsanto:* as defined in the preamble to this Agreement.

57. *Monsanto Assets:* all of the Assets other than the Chemicals Assets held on the Distribution Date by any member of either Group, including the Excluded Chemicals Assets.

58. *Monsanto Business:* all of the businesses, other than the Chemicals Business, the Former Chemicals Business or the P4 Business, conducted on or prior to the Distribution Date by any member of either Group.

59. *Monsanto Certificate Amendments:* the amendments to Monsanto's Certificate of Incorporation proposed by the Board of Directors of Monsanto for consideration at the Special Meeting.

60. *Monsanto Common Stock:* the common stock, par value $2.00 per share, of Monsanto.

61. *Monsanto Director:* any individual who is a member of the Board of Directors of Monsanto following the Distribution Date.

62. *Monsanto Facilities:* facilities which are Monsanto Assets.

63. *Monsanto Group:* Monsanto and its Subsidiaries of which Monsanto directly owns 100% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body, other than members of the Chemicals Group.

64. *Monsanto Liabilities:* except as expressly provided in the Other Agreements, all of the Liabilities, other than the Chemicals Liabilities, of any member of the Monsanto Group whether incurred or arising prior to or after the Distribution Date, including the Excluded Chemicals Liabilities.

65. *Notices:* as defined in Section 10.05 hereof.

66. *NYSE:* the New York Stock Exchange, Inc.

67. *Offer of Settlement:* as defined in Section 7.02(c) hereof.

68. *Offeree:* as defined in Section 7.02(c) hereof.

69. *Offeror:* as defined in Section 7.02(c) hereof.

70. *Operating Agreements:* the operating agreements which have been or will be entered into on or prior to the Distribution Date between members of the Monsanto Group and members of the Chemicals Group, substantially in the form attached hereto as Exhibit 1.01(70), with such changes as may be mutually satisfactory, whereby one party will operate a facility listed on Schedule 1.01(70) for the benefit of the other.

71. *Other Agreements:* all Transition Services Agreements, the Employee Benefits Allocation Agreement, all Business Transfer Agreements, the Tax Sharing Agreement, the Intellectual Property Agreements, the Lease Agreements, the Raw Material Supply Agreements, the Plan and Agreement of Reorganization, the Operating Agreements and the P4 Joint Venture Agreement.

72. *P4 Business:* the mining of phosphorus rock and processing it into elemental phosphorous together with related activities, including but not limited to the coking operations at Rock Springs, Wyoming.

73. *P4 Joint Venture:* the limited liability company created pursuant to the P4 Joint Venture Agreement.

74. *P4 Joint Venture Agreement:* the joint venture agreements and other related agreements which have been or will be entered into on or prior to the Distribution Date among any of Monsanto, Chemicals and the P4 Joint Venture with respect to the Joint Ownership Properties and the P4 Business, substantially in the forms attached hereto as Exhibits 1.01(74)(a) through 1.01(74)(g), with such changes as may be satisfactory to Monsanto and Chemicals.

75. *Person:* an individual, a partnership, a joint venture, a corporation, a trust, a limited liability company, an unincorporated organization or a government or any department or agency thereof.

76. *Plan:* as defined in the Employee Benefits Allocation Agreement.

77. *Plan and Agreement of Reorganization:* the Plan and Agreement of Reorganization adopted by Monsanto.

78. *Prime Rate:* the rate which Citibank N.A. (or any successor thereto or other major money center commercial bank agreed to by the parties hereto) announces from time to time as its prime lending rate, as in effect from time to time.

79. *Privileged Information:* as defined in Section 6.06(a) hereof.

80. *Proxy Statement:* the Proxy Statement dated July 14, 1997 sent to the holders of shares of Monsanto Common Stock in connection with the Special Meeting.

81. *Raw Material Supply Agreements:* the agreements which have been or will be entered into on or prior to the Distribution Date between Monsanto and Chemicals, substantially in the forms attached hereto as Exhibit 1.01(81)(a) through 1.01(81)(f), with such changes as may be mutually satisfactory, in each case providing for the supply of raw materials to members of the Monsanto Group by members of the Chemicals Group, or to members of the Chemicals Group by members of the Monsanto Group.

82. *Record Date:* the date determined by the Board of Directors of Monsanto, or such committee of the Board as shall be designated by the Board of Directors, as the record date for determining stockholders of Monsanto entitled to receive the Distribution.

83. *Registration Statement:* the registration statement on Form 10 to effect the registration of the Chemicals Common Stock pursuant to the Exchange Act.

84. *Representative:* with respect to any Person, any of such Person's directors, officers, employees, agents, consultants, advisors, accountants, attorneys and representatives.

85. *SEC:* the Securities and Exchange Commission.

86. *Securities Act:* the Securities Act of 1933, as amended, together with the rules and regulations promulgated thereunder.

87. *Security Interest:* means any mortgage, security interest, pledge, lien, charge, claim, option, right to acquire, voting or other restriction, right-of-way, covenant, condition, easement, encroachment, restriction on transfer, or other encumbrance of any nature whatsoever.

88. *Service Agreement:* any third party administrator or claims handling agreement of any kind or nature to which any member of either Group is directly or indirectly a party, in effect as of the date hereof, related to the handling of Chemicals Claims.

89. *Special Meeting:* the special meeting of stockholders of Monsanto to consider the Distribution and any other matters set forth by the Board of Directors of Monsanto in the notice of the Special Meeting.

90. *Special Meeting Date:* the date determined by the Board of Directors of Monsanto, or by such committee of the Board as designated by the Board of Directors, for the Special Meeting.

91. *Special Meeting Record Date:* the record date determined by the Board of Directors of Monsanto, or by such committee of the Board as designated by the Board of

Directors, as the record date for determining stockholders of Monsanto entitled to vote at the Special Meeting.

92. *Subsidiary:* with respect to any specified Person, any corporation or other legal entity of which such Person or any of its Subsidiaries controls or owns, directly or indirectly, more than 50% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body; provided, however, that for purposes of this Agreement, (1) the Chemicals Subsidiaries shall be deemed to be Subsidiaries of Chemicals and (2) Chemicals and the Chemicals Subsidiaries shall not be deemed to be Subsidiaries of Monsanto or any of Monsanto's Subsidiaries.

93. *Tax:* as defined in the Tax Sharing Agreement.

94. *Tax Sharing Agreement:* the tax sharing and indemnification agreement which has been or will be entered into on or prior to the Distribution Date between Monsanto and Chemicals substantially in the form attached hereto as Exhibit 1.01(94), with such changes as may be mutually satisfactory to Monsanto and Chemicals.

95. *Third Party:* a Person who is not a party hereto or a wholly-owned Subsidiary thereof.

96. *Third Party Claim:* any claim, suit, arbitration, inquiry, proceeding or investigation by or before any court, any governmental or other regulatory or administrative agency or commission or any arbitration tribunal asserted by a Third Party.

97. *Transition Services Agreement:* the transition services agreements which have been or will be entered into on or prior to the Distribution Date between the Monsanto Group and the Chemicals Group, substantially in the form attached hereto as Exhibit 1.01(97), with such changes as may be mutually satisfactory, providing for (1) the Monsanto Group to make available certain personnel and services to the Chemicals Group and (2) the Chemicals Group to make available certain personnel and services to the Monsanto Group, in each case for a period of up to 18 months following the Distribution Date.

1.02 References to Time. All references in this Agreement to times of the day shall be to St. Louis time, except as otherwise specifically provided herein.

## ARTICLE II

## CERTAIN TRANSACTIONS PRIOR TO THE DISTRIBUTION DATE

2.01 **Share Purchase Rights Plan; Certificate of Incorporation; Bylaws.** Prior to the Distribution Date, Chemicals shall adopt the Chemicals Rights Plan. Monsanto and Chemicals shall take all action necessary so that, at the Distribution Date, the Restated Certificate

of Incorporation and Bylaws of Chemicals shall be in the forms attached hereto as Exhibits 2.01(a) and 2.01(b), respectively.

2.02 **Issuance of Stock.** Prior to or as of the Distribution Date, the parties hereto shall take all steps necessary to reclassify the outstanding shares of Chemicals Common Stock so that, except as otherwise contemplated by this Agreement, immediately prior to or as of the Distribution Date the number of shares of Chemicals Common Stock outstanding and held by Monsanto shall equal the number of shares of Monsanto Common Stock outstanding on the Record Date divided by five (rounded to the next highest whole share).

2.03 **Transfer of Assets and Assumption of Liabilities.** On or prior to the Distribution Date, the parties hereto shall and shall cause their respective wholly-owned Subsidiaries (1) to execute instruments of assignment and transfer and to take such other corporate action as is necessary to transfer to Chemicals and its wholly-owned Subsidiaries all of the right, title and interest of the Monsanto Group in the Chemicals Assets; (2) to execute instruments of assignment and transfer and to take such other corporate action as is necessary to transfer to Chemicals a 40% ownership interest in the P4 Joint Venture subject to the terms and conditions set forth in the P4 Joint Venture Agreement; and (3) to take all action necessary to cause Chemicals or its wholly-owned Subsidiaries to assume all of the Chemicals Liabilities. A global assignment and assumption agreement along with Business Transfer Agreements for transfers of Chemicals Assets and assumption of Chemicals Liabilities will be executed on or prior to the Distribution Date; provided, however, that in the event of a conflict between such agreements and this Agreement, this Agreement will control; and provided further that the transfer of the operating Assets of the Chemicals Business shall be substantially completed prior to the Special Meeting.

2.04 **Financing Arrangements.** Each of the parties hereto agrees that it will use reasonable efforts to arrange the Financing Facility and Chemicals agrees that it will assume the obligations with respect to the commercial paper issued thereunder on the Distribution Date with Monsanto becoming a guarantor of the commercial paper obligations thereunder outstanding on the Distribution Date but otherwise having no further liability. Each of the parties hereto agrees that it will use reasonable efforts to obtain, prior to the Distribution Date, all necessary consents, waivers or amendments to each bank credit agreement, debt security or other financing facility to which it or any of its Subsidiaries is a party or by which it or any of its Subsidiaries is bound, or to refinance such agreement, security or facility, in each case on terms satisfactory to Monsanto and Chemicals and to the extent necessary to permit the Distribution to be consummated without any material breach of the terms of such agreement, security or facility.

2.05 **Registration and Listing.** Prior to the Distribution Date:

1. Monsanto and Chemicals shall prepare the Proxy Statement and the Registration Statement. Chemicals shall file the Registration Statement with the SEC. Monsanto shall file the Proxy Statement with the SEC and shall mail the Proxy Statement to the holders of Monsanto Common Stock as of the Special Meeting Record Date. Monsanto and Chemicals shall use reasonable efforts to cause the Registration Statement to become effective under the Exchange Act as promptly as reasonably practicable.