UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
ARMAND CORLEW, VINCENT RIGGI, STEPHEN
CERNAK, JR., RUTH DEPAOLO and ANGELO
RIGGI, individually and on behalf of a class
similarly situated,

                                    Plaintiffs,                          **AFFIDAVIT**

                                                                         **07-CV-3258 (KMW)**

           -against-

GENERAL ELECTRIC COMPANY, MONSANTO
COMPANY, PHARMACIA CORPORATION and
SOLUTIA, INC.

                                    Defendants.
------------------------------------------------------------------

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF ALBANY       )

           **ARTHUR J. SIEGEL, ESQ.**, being duly sworn, deposes and says:

           1.       I am a member of the Bar of this Court and a member of Bond, Schoeneck

& King, PLLC, attorneys for defendant General Electric Company ("GE").  As such, I am fully

familiar with the facts and circumstances of this case.  I submit this affidavit in support of GE's

motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

           2.       A copy of plaintiffs' Complaint, which was served upon GE on or about

April 2, 2007, is attached hereto as Exhibit A.

           3.       On or about March 13, 2007, plaintiffs commenced the underlying action

in New York State Supreme Court, County of New York.  On April 23, 2007, defendants timely

removed this action to the United States District Court, Southern District of New York.  Upon

removal, this action was assigned Civil Action No. 07-CV-3258.

4.     In this putative class action, plaintiffs seek monetary damages for diminution of property value and personal injuries allegedly arising from exposure to polychlorinated biphenyls (PCBs). The complaint alleges that defendants Monsanto Company, Pharmacia Corporation and Solutia, Inc. manufactured PCBs and GE disposed of them at its facility in Schenectady, New York. As a result of these purported, unsubstantiated claims of property damage, plaintiffs seek a total of seven hundred fifty six billion dollars in compensatory and punitive damages, including claims against GE for three hundred ninety six billion dollars.

5.     As described more fully in GE's memorandum of law in support of its motion to dismiss, submitted herewith, this Court should dismiss plaintiffs' complaint in its entirety. However, if the Court does not dismiss plaintiffs' complaint in its entirety, numerous facially deficient causes of action must be dismissed as a matter of law.

6.     First, plaintiffs' negligence based property damage and personal injury causes of action are time barred in that plaintiffs, through the exercise of reasonable diligence, should have discovered their purported injuries three years prior to the commencement of the instant action. Accordingly, plaintiffs' first, third, fifth, sixth, seventh, tenth, and eleventh causes of action are timed barred.

7.     Similarly, plaintiffs' claim that GE breached warranties of fitness and merchantability are also time barred. New York's statute of limitations on this claim is four years from the date the product was delivered. Since the government banned PCBs in the late 1970's, any PCBs that have purportedly contaminated plaintiffs' property had to be delivered to GE nearly thirty years prior to the commencement of this action.

8.     Plaintiffs' fourth cause of action against GE for fraudulent concealment is in violation of the pleading requirements of Federal Rule of Civil Procedure 9(b). Plaintiffs have

185614.1 4/30/2007

not identified a single specific act of concealment, a single person who committed the purported

concealment and any factual basis that would impose a duty on GE to disclose information about

PCBs to plaintiffs.

9.      Plaintiffs' fifth and sixth causes of action for intentional and negligent

inflection of emotional distress should also be dismissed because plaintiffs failed to allege the

requisite elements necessary to assert these causes of action.

10.     Plaintiffs' ninth cause of action for trespass and tenth cause of action for

nuisance are fatally flawed in that plaintiffs failed to allege that GE's purported conduct was

"intentional" in nature.

11.     Plaintiffs' unjust enrichment claim also fails as a matter of law because

plaintiffs never had a contractual or quasi-contractual relationship with GE.  Furthermore,

plaintiffs have failed to adequately allege what benefit, if any, GE has purportedly received at

plaintiffs' expense.

12.     Finally, plaintiffs' eighth, ninth and thirteenth causes of action are

duplicative of plaintiffs' negligence and strict liability causes of action.  Furthermore, plaintiffs

separate and independent "cause of action" for punitive damages in their thirteenth cause of

action must be dismissed since New York law does not recognize a claim for punitive damages

as an independent tort.

13.     Under Federal Rules of Civil Procedure 12(a)(4), the filing of a motion to

dismiss addressing only part of a complaint suspends the time to respond to the entire complaint.

Accordingly, to the extent GE does not address any specific cause of action asserted by

plaintiffs, no answer is due at this time for those claims.  However, to the extent an answer is

185614.1 4/30/2007

required, GE denies each and every allegation of those causes of action and will promptly file a formal answer should the Court so require.

14.    For the reasons set forth in GE's accompanying memorandum of law in support of its motion to dismiss, GE respectfully requests that its motion to dismiss the Complaint be granted in its entirety and the Court grant such other and further relief as it deems proper.

_____
ARTHUR J. SIEGEL
Bar Roll No. AS5181

Sworn to before me this
30th day of April, 2007

_____
Notary Public

MARGRET L. COAGER
Notary Public, State of New York
Qualified in Rensselaer Co. No. 4768047
Commission Expires July 31, 2010

4

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ARMAND CORLEW, VINCENT RIGGI, STEPHEN
CERNAK, JR., RUTH DEPAOLO and ANGELO
RIGGI, individually and on behalf of a class similarly
situated,

                                        Plaintiffs,

                    -against-

GENERAL ELECTRIC COMPANY, MONSANTO
COMPANY, PHARMACIA CORPORATION and
SOLUTIA, INC.,

                                        Defendants.
-------------------------------------------------------------------X

Index No.:
**SUMMONS**
**CLASS ACTION**

Plaintiffs reside in
various counties in New York
State and designate
New York County as the
place of trial

Venue is based upon
defendants' residence. *7 1 0 3 4 1 5*

**TO THE ABOVE-NAMED DEFENDANT(S):**

      **YOU ARE HEREBY SUMMONED** to appear and/or answer the Complaint in
this action and to serve a copy of your answer, or if the Complaint is not served with this
Summons, to serve a Notice of Appearance on the plaintiffs' attorneys within twenty (20) days
after the service of this Summons, exclusive of the day of service; and in case of your failure to
appear and/or answer, judgment will be taken against you by default for the relief demanded in
the Complaint.

Dated: White Plains, New York
      March 6, 2007

                Yours, etc.

                _____
                LAW OFFICES OF LAWRENCE P. BIONDI
                Attorneys for Plaintiff
                81 Main Street - Suite 504
                White Plains, New York 10601
                (914) 946-5093

TO:    GENERAL ELECTRIC COMPANY
        c/o Secretary of State

                        MONSANTO COMPANY
                        c/o Corporation Service Company
                        80 State Street
                        Albany, New York 12207-2543

        SOLUTIA, INC.
        c/o Corporation Service Company
        80 State Street
        Albany, New York 12207-2543

                        PHARMACIA CORPORATION
                        c/o CT Corporation System
                        111 Eighth Avenue
                        New York, New York 10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------ ------------------------------------------X
ARMAND CORLEW, VINCENT RIGGI, STEPHEN
CERNAK, JR., RUTH DEPAOLO and ANGELO
RIGGI, individually and on behalf of a class similarly
situated,

*Index No.:*

Plaintiffs,

**VERIFIED**
**COMPLAINT**

- against -

GENERAL ELECTRIC COMPANY, MONSANTO
COMPANY, PHARMACIA CORPORATION and
SOLUTIA, INC.,

Defendants.                                         $07103415$
------------------------------ ------------------------------------------X

Plaintiffs, ARMAND CORLEW, VINCENT RIGGI, STEPHEN CERNAK,

JR., RUTH DEPAOLO and ANGELO RIGGI, individually and as representatives of a class

of similarly-situated persons, by their attorneys, Law Offices of Lawrence P. Biondi, for their

complaint herein allege on personal knowledge as to themselves and on information and

belief as to all other allegations and class members as follows:

## STATEMENT OF THE ACTION

1.      This is a Class Action for money damages arising out of the diminution

in the value of plaintiffs' properties, and properties of all others similarly situated, caused by

the ongoing release of polychlorinated biphenyls (PCBs) from the General Electric(GE)

Main Plant located in the City of Schenectady and the Town of Rotterdam, Schenectady

County, New York State. Plaintiffs are current owners and/or occupiers of all residential and

commercial properties within a 5 mile radius of the GE Main Plant. Plaintiffs' properties

contain highly toxic levels of PCBs. Plaintiffs seek both compensatory and punitive damages

on behalf of themselves and all others similarly situated.

2.      Plaintiff ARMAND CORLEW resides at 54 Old River Road, Rotterdam, N.Y. 12306. Elevated levels of PCBs were found on his property. The value of his property has been and will continue to be diminished because of contamination of the air, soil, surface water and/or ground water as a result of the ongoing release of PCBs from the GE Main Plant.

3.      Plaintiff VINCENT RIGGI resides at 2138 Campbell Avenue, Schenectady, N.Y. 12306. Elevated levels of PCBs were found on his property. The value of his property has been and will continue to be diminished because of contamination of the air, soil, surface water and/or ground water as a result of the ongoing release of PCBs from the GE Main Plant.

4.      Plaintiff STEPHEN CERNAK, JR., resides at 59 Sacandaga Road, Scotia, N.Y. 12302. Elevated levels of PCBs were found on his property. The value of his property has been and will continue to be diminished because of contamination of the air, soil, surface water and/or ground water as a result of the ongoing release of PCBs from the GE Main Plant.

5.      Plaintiff RUTH DEPAOLO resides at 67 Cheltingham Avenue, Schenectady, N.Y. 12306. Elevated levels of PCBs were found on her property. The value of her property has been and will continue to be diminished because of contamination of the air, soil, surface water and/or ground water as a result of the ongoing release of PCBs from the GE Main Plant.

6.      Plaintiff ANGELO RIGGI resides at 530 Gifford Road, Schenectady, N.Y. 12304. Elevated levels of PCBs were found on his property. The value of his property has been and will continue to be diminished because of contamination of the air, soil, surface water and/or ground water as a result of the ongoing release of PCBs from the GE Main

Plant.

7.    Defendant MONSANTO COMPANY is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Defendant PHARMACIA CORPORATION is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.  SOLUTIA, INC. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri.  These three defendants are collectively referred to herein as "MONSANTO".

8.    MONSANTO is authorized and licensed to transact business in the State of New York.

9.    Defendant General Electric Company ("GE") is a domestic corporation organized and existing under the laws of the State of New York with its principal place of business located at 1251 Avenue of the Americas, New York, N.Y. 10020.

10.    Defendant GE owns and operates an industrial manufacturing facility ("The Main Plant" or the "Site") on approximately 640 acres of land that it owns in the City of Schenectady and the Town of Rotterdam, New York. The Main Plant is located at 1 River Road, Schenectady, New York.

11.    Defendant MONSANTO was the sole United States manufacturer of PCBs-containing products. MONSANTO designed, manufactured and sold all the PCBs-containing products and materials to defendant GE which was utilized by GE at its Main Plant.  Defendant GE purchased all PCBs-containing products from MONSANTO which were used in the manufacture of a variety of products including electric motors and generators, gas turbines, wire and cable, insulating  materials and microwave tubes. Defendant GE for many years released, and continues to release, PCBs into the air, soil,

-3-

surface water and/or groundwater in, on and/or adjacent to the plaintiffs' properties thereby proximately causing injury and damage to the plaintiffs. Said PCBs have an immediate and permanent adverse effect upon the natural environment, and have specifically had an adverse effect upon the plaintiffs' properties.

## CLASS ACTION ALLEGATIONS

12.     The plaintiffs brings this action on behalf of themselves and as representatives of all others similarly situated as a Class defined as follows: all individuals and entities who owned and/or occupied property within a 5 mile radius of the GE Main Plant.

13.     Plaintiffs are presently unable to state the precise size of the Class but believe it to be approximately forty thousand individuals and/or entities. The Class is sufficiently numerous that joinder of all its members is impractical.

14.     There are questions of law or fact common to the Class which predominate over any question affecting only individual members. These questions include:

    a)     Whether the PCBs-containing products which were designed, manufactured, sold, marketed, distributed, used and disposed of by defendants were defective or unreasonably dangerous for the purpose for which they were sold and promoted;

    b)     Whether defendants used reasonable care in designing, manufacturing, selling, marketing, distributing, using and disposing of PCBs-containing products;

    c)     Whether these PCBs-containing products were released, discharged, emitted and/or migrated onto plaintiffs' properties causing contamination thereof; and

    d)     Whether defendants' conduct in designing, manufacturing, selling, marketing, distributing, using and disposing of PCBs-containing products has caused a diminution of value of the properties owned and/or occupied by plaintiffs and members of the class;

15.     The claims of the named plaintiffs herein are typical of the claims of

the class.

16.    The named plaintiffs will fairly and adequately protect the interests of the class and have retained attorneys experienced in mass tort and complex litigation.

17.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## JURISDICTION AND VENUE

18.    Subject matter jurisdiction is proper in this Court pursuant to the New York State Constitution and the Laws of the State of New York. The amount sought exceeds the jurisdictional limits of all lower courts. This Court has in personam jurisdiction over the parties pursuant to the laws of the State of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

19.    PCBs are carcinogenic materials which were manufactured by MONSANTO for use as insulation in electrical transformers and other commercial purposes such as pesticides, hydraulic fluid, paint, newsprint and coils in deep fat fryers. PCBs were favored by the electrical industry because they were non-flammable and could conduct heat without conducting electricity.

20.    MONSANTO was the sole United States manufacturer of PCBs. All PCBs manufactured by MONSANTO in this country were manufactured at two plants; one located in Anniston, Alabama and the other in Sauget, Illinois.

21.    At all times, MONSANTO had superior knowledge concerning PCBs and the manufacture and disposal of PCBs.

22.    PCBs are hazardous to humans and the environment. PCBs remain

toxic and do not readily breakdown in the environment. As set out in more detail below, numerous tests and empirical evidence show that PCBs cause cancer, liver disease, suppression of the immune system, imbalance of hormonal systems, reduction in IQ, thyroid dysfunction, heart dysfunction, hypertension, diabetes, nervous system disorders, sex hormone imbalances, adverse skin conditions and other maladies in humans.

23.    Because of the longevity of PCBs and their hazardous effects on humans and the environment, the United States Government officially banned production of PCBs in the 1970s.

24.    MONSANTO at all times relevant hereto knew of the hazards of PCBs but, because of the profitability of the enterprise, continued to manufacture PCBs.

25.    From the early days of PCBs manufacturing, MONSANTO recognized that PCBs were hazardous materials. As early as the 1930s, MONSANTO was aware that PCBs caused skin and liver disorders. In the 1940s, scientists found that PCBs were linked to serious liver disorders in workers in wire and cable mills where PCBs were handled.

26.    In the 1950s, reports showed that prolonged exposure to PCBs caused liver problems. In 1955, MONSANTO recognized: "We know [PCBs] are toxic but the actual limit has not been precisely defined." In fact, MONSANTO specifically prohibited their workers from eating lunches in the manufacturing areas of the chemical plant due to the dangers of PCBs. Thereafter, MONSANTO, the U.S. Government and others conducted numerous tests related to PCBs which confirmed the toxicity and the dangers of PCBs.

27.    MONSANTO learned in 1968 that 1300 people in Japan had become ill after eating PCBs-contaminated rice oil. They learned in 1970 that cows in Ohio ingesting grain from silos painted with paints containing PCBs produced PCBs-contaminated milk. By the same time, MONSANTO had received reports that PCBs in humans caused cancer,

liver damage and problems with the reproductive process.

28.    In 1969, MONSANTO concluded that "there is little probability that any action that can be taken will prevent the growing incrimination of specific [PCBs] as nearly global environmental contaminants leading to contamination of human food (particularly fish), the killing of some marine species (shrimp), and the possible extinction of several species of fish eating birds."

29.    A 1974 report by the National Institute for Occupational Safety & Health sent to MONSANTO stated that a "tremendous quantity of research has demonstrated that environmental exposure to [PCBs] causes serious impairment of the functions of the liver."

30.    A 1975 report by the United States Environmental Protection Agency sent to MONSANTO confirmed that PCBs "pose a threat to human health and the environment."

31.    MONSANTO knew PCBs were hazardous but manufactured and profited from them for more than 40 years with conscious disregard for the rights of others.

32.    GE owns and operates an industrial manufacturing facility (the "Main Plant" or the "Site") on approximately 640 Acres of land that it owns in the City of Schenectady, and the Town of Rotterdam, New York. The Main Plain is located at 1 River Road, Schenectady, New York.

33.    Over the years, GE has used the Main Plant to manufacture a variety of products including electric motors and generators, gas turbines, wire and cable, insulating materials and microwave tubes.

34.    GE knew that PCBs were hazardous long before MONSANTO stopped manufacturing and selling them but GE nevertheless continued to buy PCBs from

MONSANTO.

35.    From on or about the 1930s to date and continuing, GE knew that it was discharging, releasing and emitting hazardous PCBs into the surrounding environment.

36.    From on or about the 1930s to date and continuing, GE intentionally failed to advise the public and the plaintiffs herein that it was discharging, releasing and emitting hazardous PCBs into the surrounding environment.

37.    In 1987, the New York State Department of Environmental Conservation (NYSDEC) listed the site as a Class 2 site in the Registry of Inactive Hazardous Waste Disposal Sites in New York. A Class 2 site is a site where hazardous waste presents a significant threat to the public health or the environment and action is required.

38.    In 1995, GE entered into Order On Consent (#A4-0336-95-09) to complete a site-wide environmental investigation for the Main Plant. Numerous site investigations were undertaken to determine the nature and extent of contamination resulting from prior manufacturing and disposal operations at the site.    The entire remedial investigation process commenced in 1995 and ended in 2003.

39.    In accordance with the requirements of the site-wide Consent Order, GE completed a Remedial Investigation (RI) and Feasibility Study (FS) for the Main Plant. The purpose of the RI was to collect and evaluate data regarding the nature and extent of contamination at the site.

40.    GE's own investigation found that PCBs were found at excessive concentrations in surface soils, subsurface soils, ground water, seeps, sediment samples and biota samples on or about the Main Plant.

41.    As a result of GE's improper use and improper disposal of PCBs - containing products, PCBs were and continue to be discharged, released, emitted and

migrated onto plaintiffs' properties causing the contamination thereof.

42.    GE has incorrectly maintained, and continues to maintain, that PCBs were never released, discharged, emitted and/or migrated outside the confines of its Main Plant into the surrounding environment.

43.    GE never tested the surrounding environment because it knew that the surrounding environment was contaminated with PCBs.

44.    At all times relevant herein, GE purchased all of its PCBs-containing products from MONSANTO.

45.    MONSANTO designed, manufactured and sold all the PCBs-containing products and materials to GE which were utilized by GE at its Main Plant and which thereupon caused and continues to cause the contamination and damages complained of herein.

## FIRST CAUSE OF ACTION AGAINST MONSANTO FOR NEGLIGENCE

46.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through " 43" inclusive with the same force and effect as if hereinafter set forth at length.

47.    From on or about the 1930s and continuing through the 1970s, MONSANTO mined, processed, manufactured, designed, fabricated, fashioned, packaged, distributed, sold and/or delivered various PCBs-containing products to GE, which were used and thereafter disposed of by GE at its Main Plant.

48.    At all relevant times, MONSANTO knew, or should have known, that the PCBs-containing products which they provided were inherently dangerous beyond the expectations of the ordinary user or handler who would come into contact with these

products.

49.    MONSANTO negligently failed to provide any or adequate and proper warnings as to the dangers of the use of said products and materials to those persons using, disposing, handling, or coming into contact therewith, including GE and the plaintiffs herein.

50.    MONSANTO negligently failed to warn and failed to provide adequate instructions to GE pertaining to safer handling and disposal methods for their PCBs containing products.

51.    MONSANTO negligently failed to investigate and/or test for the hazards of PCBs products and materials.

52.    To the extent that MONSANTO may have inquired as to the hazards of said materials, MONSANTO negligently failed to convey whatever knowledge of dangers, health hazards, or safety precautions they may have had to the users and consumers of their PCBs-containing products including GE and the plaintiffs herein.

53.    MONSANTO negligently failed to develop, make available and/or provide nonhazardous substitutes which could have been used for the same purpose as their PCBs-containing products and materials.

54.    MONSANTO negligently failed to design PCBs-containing products and materials in such a fashion as to prohibit or minimize the release of and exposure to PCBs.

55.    As a direct result of GE's use and disposal of PCBs-containing products supplied by MONSANTO, PCBs were and continue to be released, discharged, emitted and migrated onto plaintiffs' properties causing contamination thereof.

56.    The contamination of plaintiffs' properties was proximately caused by MONSANTO's negligent actions in that, inter alia , they negligently designed, processed,

manufactured, packaged, distributed, delivered and/or installed the PCBs-containing products which contaminated plaintiffs' properties, all of which evidenced a callous, reckless, wanton, oppressive, malicious, willful and depraved indifference to the health, safety and welfare of the rights of others and more particularly the rights of the plaintiffs, all of which MONSANTO had due and timely notice.

57.    MONSANTO negligently failed to render warnings, advise, give instructions and/or information to GE and the plaintiffs so that they could have made an adequate and informed judgment as to the use of said products and were otherwise negligent.

58.    MONSANTO since the 1930s has possessed medical and scientific data which clearly indicates that their PCBs-containing products were hazardous to the health and safety of the public and environment and prompted by pecuniary motives, MONSANTO ignored and failed to act upon said medical and scientific data and conspired to deprive the public, including plaintiffs, of said medical and scientific data and further willfully, intentionally and wantonly failed to warn plaintiffs of the serious health and safety risks associated with contamination of their properties.

59.    MONSANTO's utter failure to use reasonable care under all the circumstances is the proximate cause of the contamination of plaintiffs' properties.

60.    As a result of the foregoing, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

61.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SECOND CAUSE OF ACTION AGAINST MONSANTO
## FOR BREACH OF WARRANTY

62.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "61" inclusive with the same force and effect as if hereinafter set forth at length.

63.    MONSANTO expressly and impliedly warranted that said PCBs-containing materials were of good and merchantable quality and fit for their intended use.

64.    The implied/express warranties made by MONSANTO that its PCBs-containing materials were of good and merchantable quality and fit for their particular use were breached in that said materials contained harmful, toxic, poisonous and carcinogenic levels of PCBs which caused the contamination of plaintiffs' properties.

65.    As a direct and/or proximate result of the breach of the implied/express warranties of good and merchantable quality and fitness for the particular use, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

66.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## THIRD CAUSE OF ACTION
## AGAINST MONSANTO FOR STRICT LIABILITY

67.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "66" inclusive with the same force and effect as if hereinafter set forth at length.

68.    From on or about the 1930s and continuing through the 1970s,

MONSANTO, as part of its business, manufactured, designed, supplied, developed, fashioned, packaged, distributed, delivered, installed, sold, and/or otherwise placed PCBs-containing products and materials into the stream of commerce in a defective, unsafe and inherently dangerous condition and the products and materials were expected to and did reach users, handlers and persons coming into contact with the said products and materials without substantial change in the condition in which they were sold.

69.    The PCBs-containing products and/or materials sold by MONSANTO did not contain a warning and/or information concerning the dangers to persons using, handling or coming into contact therewith, including GE and the plaintiffs.

70.    The PCBs-containing products and/or materials sold by MONSANTO did not contain adequate and/or correct warnings and instructions of safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said products and/or materials, including GE and the plaintiffs.

71.    That at all times herein, the products and/or materials being used herein were being employed for the purposes and in the manner normally intended and the defects of the said products were not discoverable by the plaintiffs by the exercise of reasonable care, nor were the dangers of said products perceivable on the part of the plaintiffs and the plaintiffs would not have otherwise averted their injuries by the exercise of reasonable care.

72.    Said PCBs-containing materials were defective and dangerous at the time they were sold as the products and/or materials contained a latent defect and were harmful, poisonous and defective when introduced into the work environment at the GE Main Plant.

73.    MONSANTO, by selling their PCBs-containing materials in a defective and dangerous condition to the users thereof, is strictly liable to the plaintiffs for the

contamination of their properties and the diminution in the value thereof.

74.    As a direct and proximate result of the sale by MONSANTO to GE of said defective and unreasonably dangerous products and/or materials, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

75.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## FOURTH CAUSE OF ACTION AGAINST MONSANTO FOR FRAUDULENT CONCEALMENT

76.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "75" inclusive with the same force and effect as if hereinafter set forth at length.

77.    From on or about the 1930s to date and continuing, MONSANTO knew that PCBs were hazardous materials and that exposure thereto caused severe and permanent illnesses and injuries.

78.    With full knowledge of the hazards of PCBs, MONSANTO made the conscious decision to suppress and conceal these facts from GE, the public and plaintiffs in order to maintain sales and to avoid liability, publicity, and other adverse consequences of their actions.  Most egregiously, instead of attempting to warn GE, the public and plaintiffs of the hazards of PCBs, MONSANTO set out to sell even more PCBs. At all times, MONSANTO had knowledge superior to that of GE, the public and plaintiffs concerning the true hazards of PCBs.

79.    In 1969, MONSANTO appointed an "ad hoc" committee on PCBs to address the "situation concerning environmental contamination through the manufacture and use of [PCBs]."

80.    The purpose of the committee was to implement a plan to conceal material information from the public while at all times seeking to increase profits from the sales of PCBs. The stated objectives of the committee were to "protect continued sales and profits of [PCBs]" and "protect the image" of MONSANTO in order to "permit continued development of new uses and sales" of PCBs.

81.    A memo setting out these objectives candidly acknowledged that "there is little probability that any action that can be taken will prevent the growing incrimination of specific [PCBs] as nearly global environmental contaminants leading to contamination of human food (particularly fish), the killing of some marine species (shrimp),and the possible extinction of several species of fish eating birds." In the face of these admitted environmental hazards, the committee suggested "a number of actions which must be undertaken to prolong the manufacture, sale and use of these particular [PCBs] as well as to protect the continued use of other members of the [PCB] series." MONSANTO was very concerned about its profits: "There can not be too much emphasis given to the threat of curtailment or outright discontinuance of the manufacture and sales of this very profitable series of compounds."

82.    In 1975, a supposedly independent laboratory hired by MONSANTO to study the effects of PCBs issued a report on cancer caused by PCBs in laboratory rats. The "independent" lab concluded in its report that PCBs were "slightly tumorigenic." To conceal this information, MONSANTO requested the lab to change and falsify the report by changing the description of PCBs from "slightly tumorigenic" to "does not appear to be carcinogenic" in order to avoid adverse publicity.

83.    MONSANTO's plan succeeded, and through the early 1970s it

continued to profit from the sales of PCBs while at all times failing to warn of the contamination at the GE Main Plant and surrounding areas. Only the threat of a national ban on production and the pressure of the United States government stopped MONSANTO from continuing to manufacture PCBs. The ban on production, however, was too late because the damage to the GE Main Plant had already been done. Moreover, PCBs still presently continue to be released and discharged into the environment at the GE Main Plant thereby contaminating the surrounding areas and plaintiffs' properties.

84.     MONSANTO established early on a company policy to: "Give no statements or publications which would bring the [PCB] situation to the public's attention."

85.     As part of its scheme to conceal, MONSANTO set out to "cooperate" with government authorities in confidential discussions that were not disclosed to GE, the public or to plaintiffs. MONSANTO touted its efforts to decrease the release of PCBs into the environment while failing to do anything about the pollution that had already occurred as a result of years of improper use and disposal. MONSANTO failed to fully disclose to governmental authorities the extent of the pollution and the long term adverse effects of PCBs already discharged into the environment.

86.     In like manner, MONSANTO failed to inform certain corporate customers, including GE, of potential problems with PCBs and the need to properly use and dispose of PCBs containing products.

87.     MONSANTO made no effort to disclose to GE, the public, and plaintiffs the dangers of PCBs and the fact that the GE Main Plant and surrounding environment had been contaminated with PCBs which will exist for years in the air, soil, sediment and water.

88.     The aforementioned conduct and misrepresentations made by

MONSANTO were intentionally designed to foster the continued sale of its PCBs-containing materials and products and to prevent the general public and buyers of its products, including GE and the plaintiffs herein, from knowing and fully appreciating the dangers and serious health and safety risks associated with contamination of their properties.

89.    The general public, GE and the plaintiffs herein relied on the aforementioned conduct, misrepresentations and concealment of MONSANTO to their detriment by continuing to buy and use said products and materials and by improperly disposing of said products and materials after their use thereof.

90.    As a direct and proximate result of the conduct, misrepresentations and concealment of MONSANTO, the plaintiffs herein were unreasonably exposed to the dangers of PCBs and their properties have been permanently contaminated and the value of their properties have been severely and permanently diminished.

91.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## FIFTH CAUSE OF ACTION AGAINST MONSANTO
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

92.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "91" inclusive with the same force and effect as if hereinafter set forth at length.

93.    From on or about the 1930s to date and continuing, MONSANTO negligently inflicted emotional distress on each plaintiff by its manufacture, creation, production and use of PCBs and by its failure to advise the general public, GE and the plaintiffs of the serious damages associated with exposure to PCBs as alleged above.

94.    As a result of said conduct by MONSANTO, plaintiffs have sustained extreme emotional distress and mental anguish associated with the contamination of their properties and the risk of developing serious PCBs-related cancers, diseases and injuries.

95.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SIXTH CAUSE OF ACTION AGAINST MONSANTO
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "95" inclusive with the same force and effect as if hereinafter set forth at length.

97.    From on or about the 1930s to date and continuing, MONSANTO intentionally inflicted emotional distress on each plaintiff by knowing and willfully manufacturing, creating, producing and using PCBs and by its failure to advise the general public, GE and the plaintiffs of the serious damages associated with exposure to PCBs as alleged above.

98.    As a result of said conduct by MONSANTO, plaintiffs have sustained extreme emotional distress and mental anguish associated with the contamination of their properties and the risk of developing serious PCBs-related cancers, diseases and injuries.

99.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SEVENTH CAUSE OF ACTION AGAINST
## MONSANTO FOR ABNORMALLY DANGEROUS ACTIVITY

100.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "99" inclusive with the same force and effect as if hereinafter set forth at length.

101.    By manufacturing, producing, creating, using, releasing and dispersing PCBs onto plaintiffs' properties and by allowing those PCBs to remain in the environment to date and continuing, MONSANTO has engaged in abnormally dangerous, ultra hazardous and inherently or intrinsically dangerous activities for which it is strictly liable to the plaintiffs.  Said conduct is a direct and proximate cause of injuries and damages to the plaintiffs.

102.    As a result of the foregoing, the contamination of plaintiffs' properties is permanent and the value of plaintiffs' properties has been severely and permanently diminished.

103.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## EIGHT CAUSE OF ACTION AGAINST
## MONSANTO FOR MEDICAL MONITORING

104.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "103" inclusive with the same force and effect as if hereinafter set forth at length.

105.    As a result of the continuing conduct alleged herein, plaintiffs have elevated levels of PCBs in their blood and body organs causing them severe and permanent

personal injuries and an increased risk of developing PCBs related cancers, diseases and injuries. As a direct and proximate result thereof, plaintiffs have incurred and continue to incur the cost of medical treatment and monitoring.

106.    Also as a result of the conduct alleged herein, plaintiffs will suffer future injuries, symptoms and pain and suffering from the latent effects of their exposure to PCBs as well as the effects of future and continuing exposure to PCBs due to the continuing and persistent discharge and release of PCBs from the GE Main Plant. As a direct and proximate result thereof, plaintiffs will need continual medical treatment, testing and monitoring in the future.

107.    As a result of the foregoing, plaintiffs are entitled to recover the costs of past and future medical monitoring, testing and treatment as a separate claim for relief or, alternatively, as additional damages under each of the other claims for relief above.

108.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWO BILLION DOLLARS ($2,000,000,000.00) in compensatory damages and TWO BILLION DOLLARS ($2,000,000,000.00) in punitive damages

## NINTH CAUSE OF ACTION AGAINST MONSANTO
## FOR FEAR OF SUSTAINING PCBs-RELATED ILLNESSES

109.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "108" inclusive with the same force and effect as if hereinafter set forth at length.

110.    As a direct and proximate result of the conduct alleged herein, plaintiffs have reasonably developed the fear of sustaining severe and permanent personal injuries in the future due to the latent effects of their exposure to PCBs as well as the effects of future and continuing exposure to PCBs from the GE Main Plant.

111.    As a result of the foregoing, plaintiffs are entitled to damages for the extreme emotional distress and mental anguish associated with the reasonable fear of sustaining PCBs-related injuries and illnesses in the future.

112.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## TENTH CAUSE OF ACTION AGAINST MONSANTO FOR NUISANCE

113.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "112" inclusive with the same force and effect as if hereinafter set forth at length.

114.    At all times material hereto, plaintiffs were in lawful possession of their properties. The conduct of MONSANTO alleged herein has resulted in an intrusion and the continued intrusion upon plaintiffs' properties significantly and negatively impacting upon the plaintiffs' rights to use and enjoy their own property.

115.    MONSANTO's conduct alleged herein caused the unreasonable emission, disposal and release of dangerous and toxic PCBs onto plaintiffs' properties and was substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits.

116.    MONSANTO's interference with plaintiffs' rights was so unusual and excessive that in necessarily caused injury, damage, harm and inconvenience to plaintiffs, and it substantially, materially and unusually interfered with their comfort and proper use and enjoyment of their property. Such invasion of plaintiffs' rights was unreasonable.

117.    MONSANTO's conduct has resulted in an entry and intrusion and the

-21-

continued entry and intrusion onto the properties of plaintiffs without privilege, permission, invitation or justification. MONSANTO's conduct directly and proximately caused plaintiffs' injuries, including actual harm to their properties and economic interests and an increased risk of future illnesses.

118. By reason of the foregoing, MONSANTO owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

119. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## ELEVENTH CAUSE OF ACTION
## AGAINST MONSANTO FOR TRESPASS

120. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "119" inclusive with the same force and effect as if hereinafter set forth at length.

121. Plaintiffs were at all relevant times in possession of land they owned and/or occupied.

122. MONSANTO knew that its PCBs-containing products were dangerous and defective and that PCBs were intentionally discharged, released, emitted and migrated onto plaintiffs' properties.

123. Despite MONSANTO's knowledge of the harm it was causing, MONSANTO intentionally persisted in its conduct and continued to discharge PCBs onto plaintiffs' properties.

-22-

124.    This intentional discharge that MONSANTO knew, or should have known, was migrating onto plaintiffs' properties, was a trespass.

125.    Plaintiffs' properties continue to be exposed to and contaminated by PCBs designed, manufactured, sold and distributed by MONSANTO.

126.    MONSANTO's conduct has resulted in an entry and intrusion onto the properties of the plaintiffs without privilege, permission, invitation or justification.

127.    MONSANTO's conduct directly and proximately caused plaintiffs' injuries, including actual physical harm to their properties and economic interests and an increased risk of future harm to their person. Plaintiffs are entitled to recover damages for such injuries.

128.    By reason of the foregoing, MONSANTO owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

129.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.


## TWELFTH CAUSE OF ACTION AGAINST MONSANTO FOR UNJUST ENRICHMENT


130.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "129" inclusive with the same force and effect as if hereinafter set forth at length.

131.    Plaintiffs have and/or will incur the cost of determining the nature and

extent of contamination on their properties and the cost of restoring their properties to their pre-contaminated condition.

132.     MONSANTO owes a duty to reimburse plaintiffs for  the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

133.     MONSANTO has breached and continues to breach this duty.

134.     As a result of its breach, MONSANTO has been unjustly enriched in that it has the use of funds that it otherwise should  have expended in fulfilling this duty.

135.     By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## THIRTEENTH CAUSE OF ACTION AGAINST MONSANTO FOR WILFUL AND WANTON MISCONDUCT

136.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "135" inclusive with the same force and effect as if hereinafter set forth at length.

137.     MONSANTO has acted in a wanton and  willful manner and in reckless indifference to the safety of plaintiffs' health and the use and enjoyment of their properties in the following ways:

(a)     MONSANTO allowed and continues to allow highly toxic PCBs to be discharged, released, emitted and migrated onto plaintiffs' properties without appropriate safeguards to prevent or remedy such releases;

(b)     MONSANTO failed to warn and advise GE and the plaintiffs that its PCBs-containing products were dangerous and defective and that they needed to be safely and properly handled, used and disposed of;

-24-

    ( c )   MONSANTO failed to warn the plaintiffs that their health and properties were at risk due to the release of PCBs from the GE Main Plant; and

    (d)   MONSANTO failed to determine the import of such contamination on plaintiffs' health and properties.

138.   As a direct and proximate result of the willful, wanton, and reckless acts and omissions of MONSANTO, plaintiffs have sustained actual damages and because of these acts and omissions, it is reasonable and proper for the assessment of punitive damages to deter MONSANTO and all others similarly situated from acting in a similar manner in the future.

139.   By reason of the foregoing, plaintiffs are entitled to the imposition of punitive damages in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00).

## FIRST CAUSE OF ACTION AGAINST
## GE FOR NEGLIGENCE

140.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "139" inclusive with the same force and effect as if hereinafter set forth at length.

141.   From on or about the 1930s to date and continuing, GE processed, manufactured, assembled, designed, fabricated, fashioned, packaged, distributed, sold, inspected, repaired, tested, delivered and/or used various PCBs-containing products which it thereafter disposed at its Main Plant.

142.   At all relevant times, GE knew, or should have known, that their PCBs-containing products were inherently dangerous beyond the expectations of the reasonably foreseeable persons who would come into contact with these products, including the plaintiffs herein.

143.   GE negligently failed to provide any or adequate and proper warnings as to the dangers of said products and materials to the plaintiffs herein.

144.   GE negligently handled, used and disposed these PCBs-containing products.

145.   GE negligently failed to investigate and/or test for the hazards of PCBs

-25-

products and materials.

146.  To the extent that GE may have inquired as to the hazards of said materials, GE negligently failed to convey whatever knowledge of dangers, health hazards, or safety precautions they may have had to the plaintiffs herein.

147.  GE negligently failed to develop, make available and/or provide nonhazardous substitutes which could have been used for the same purpose as their PCBs-containing products and materials.

148.  GE negligently failed to design PCBs-containing products and materials in such a fashion as to prohibit or minimize the release of and exposure to PCBs.

149.  As a direct result of GE's improper use and improper disposal of PCBs-containing products, PCBs were and continue to be released, discharged, emitted and migrated onto plaintiffs' properties causing the contamination thereof.

150.  The contamination of plaintiffs' properties was proximately caused by GE's negligent actions in that, inter alia, they negligently designed, processed, manufactured, assembled, fabricated, fashioned, sold, inspected, repaired, tested, packaged, distributed, delivered and/or disposed the PCBs-containing products which contaminated plaintiffs' properties, all of which evidenced a callous, reckless, wanton, oppressive, malicious, willful and depraved indifference to the health, safety and welfare of the rights of others and more particularly the rights of the plaintiffs, all of which GE had due and timely notice.

151.  GE negligently failed to render warnings, advise, give instructions and/or information to the plaintiffs so that they could have made an adequate and informed judgment as to the risks of contamination and were otherwise negligent.

152.  GE since the 1930s has possessed medical and scientific data which clearly indicates that their PCBs-containing products were hazardous to the health and safety of the public and environment and, prompted by pecuniary motives, GE ignored and failed to act upon said medical and scientific data and conspired to deprive the public, including plaintiffs, of said medical and scientific data and further willfully, intentionally and wantonly failed to warn plaintiffs of the serious health and safety risks associated with contamination

of their properties.

153.    GE's utter failure to use reasonable care under all the circumstances is the proximate cause of the contamination of plaintiffs' properties.

154.    As a result of the foregoing, the contamination of plaintiffs' properties is permanent and can not be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

155.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SECOND CAUSE OF ACTION AGAINST GE FOR BREACH OF WARRANTY

156.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "155" inclusive with the same force and effect as if hereinafter set forth at length.

157.    GE expressly and impliedly warranted that said PCBs-containing materials were of good and merchantable quality and fit for their intended use.

158.    The implied/express warranties made by GE that its PCBs-containing materials were of good and merchantable quality and fit for their particular use were breached in that said materials contained harmful, toxic, poisonous and carcinogenic levels of PCBs which caused the contamination of plaintiffs' properties.

159.    As a direct and/or proximate result of the breach of the implied/express warranties of good and merchantable quality and fitness for the particular use, the contamination of plaintiffs' properties is permanent and cannot be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

160.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## THIRD CAUSE OF ACTION
## AGAINST GE FOR STRICT LIABILITY

161.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "160" inclusive with the same force and effect as if hereinafter set forth at length.

162.    From on or about the 1930s and continuing through the 1970s, GE, as part of its business,  manufactured, assembled, fabricated, fashioned, sold, inspected, repaired, tested, designed, supplied, developed, packaged, distributed, delivered, installed, and/or otherwise placed PCBs-containing products and materials into the stream of commerce in a defective, unsafe and inherently dangerous condition and the products and materials were expected to and did reach users, handlers and persons coming into contact with the said products and materials, including the plaintiffs, without substantial change in the condition in which they were sold.

163.    The aforementioned PCBs-containing products and/or materials did not contain a warning and/or information concerning the dangers to persons using, handling or coming into contact therewith, including the plaintiffs.

164.    The aforementioned PCBs-containing products and/or materials did not contain adequate and/or correct warnings and instructions of safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said products and/or materials, including the plaintiffs.

165.    That at all times herein mentioned, the products and/or materials being used were being employed for the purposes and in the manner normally intended and the defects of the said products were not discoverable by the plaintiffs by the exercise of reasonable care, nor were the dangers of said products perceivable on the part of the plaintiffs and the plaintiffs would not have otherwise averted their injuries by the exercise of reasonable care.

166.    Said PCBs-containing materials were defective and dangerous at the time they were sold, used and disposed and contained a latent defect and were harmful, poisonous and defective when released into the environment surrounding the GE Main Plant.

-28-

167.    GE, by using and disposing their PCBs-containing materials in a defective and dangerous manner and condition, is strictly liable to the plaintiffs for the contamination of their properties and the diminution in the value thereof.

168.    As a direct and proximate result of the conduct of GE alleged herein, the plaintiffs' properties were contaminated with PCBs and said contamination is permanent and cannot be remediated and the value of plaintiffs' properties has been severely and permanently diminished.

169.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## FOURTH CAUSE OF ACTION AGAINST
## GE FOR FRAUDULENT CONCEALMENT

170.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "169" inclusive with the same force and effect as if hereinafter set forth at length.

171.    From on or abut the 1930s to date and continuing, GE knew that PCBs were hazardous materials and that exposure thereto caused severe and permanent illnesses and injuries.

172.    With full knowledge of the hazards of PCBs, GE made the conscious decision to suppress and conceal these facts from the public and plaintiffs in order to maintain sales and to avoid liability, publicity, and other adverse consequences of their actions. Most egregiously, instead of attempting to warn the public and plaintiffs of the hazards of PCBs, GE set out to sell even more PCBs-containing products. At all times, GE had knowledge superior to that of the public and plaintiffs concerning the true hazards of PCBs.

173.    GE made no effort to disclose to the public and plaintiffs the dangers of PCBs and the fact that the GE Main Plant and surrounding environment had been contaminated with PCBs and that PCBs are still continuing to be released and discharged

-29-

onto plaintiffs' properties.

174.   GE continuously affirmatively represented to the Department of Environmental Conservation, the public and the plaintiffs that PCBs were never released or discharged into the surrounding environment of the GE Main Plant knowing that these representations were false.

175.   The aforementioned conduct and misrepresentations made by GE were intentionally designed to foster the continued use of its PCBs-containing materials and products and to prevent the general public, buyers of its products, and the plaintiffs herein from knowing and fully appreciating the dangers and serious health and safety risks associated with contamination of PCBs.

176.   Plaintiffs   herein   relied   on   the   aforementioned   conduct, misrepresentations and concealment by GE to their detriment by continuing to reside on their properties and be exposed to PCBs.

177.   As a direct and proximate result of the conduct, misrepresentations and concealment by GE, the plaintiffs herein were unreasonably exposed to the dangers of PCBs and their properties have been permanently contaminated and the value of their properties has been severely and permanently diminished.

178.   By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## FIFTH CAUSE OF ACTION AGAINST
## GE FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

179.   Plaintiffs repeat, reiterate and reallege each and every allegation\ contained in paragraphs "1" through "178" inclusive with the same force and effect as if hereinafter set forth at length.

180.   From on or about the 1930s to date and continuing, GE negligently inflicted emotional distress on each plaintiff by its manufacture, creation, production, use and disposal of PCBs and by its failure to advise the general public and the plaintiffs of the

serious dangers associated with exposure to PCBs as alleged above.

181.  As a result of said conduct by GE, plaintiffs have sustained extreme emotional distress and mental anguish associated with the contamination of their properties and the risk of developing serious PCBs-related cancers, diseases and injuries.

182.  By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SIXTH CAUSE OF ACTION AGAINST GE
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

183.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "182" inclusive with the same force and effect as if hereinafter set forth at length.

184.  From on or about the 1930s to date and continuing, GE intentionally inflicted emotional distress on each plaintiff by knowing and willfully manufacturing, creating, producing, using and disposing of PCBs and by its failure to advise the general public and the plaintiffs of the serious dangers associated with exposure to PCBs as alleged above.

185.  As a result of said conduct by GE, plaintiffs have sustained extreme emotional distress and mental anguish associated with the contamination of their properties and the risk of developing serious PCBs-related cancers, diseases and injuries.

186.  By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## SEVENTH CAUSE OF ACTION AGAINST
## GE FOR ABNORMALLY DANGEROUS ACTIVITY

187.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "186" inclusive with the same force and effect as if

hereinafter set forth at length.

188.    By manufacturing, producing, creating, using, releasing and dispersing PCBs onto plaintiffs' properties and by allowing those PCBs to remain in the environment to date and continuing, GE has engaged in abnormally dangerous, ultra hazardous and inherently or intrinsically dangerous activities for which it is strictly liable to the plaintiffs. Said conduct is a direct and proximate cause of injuries and damages to the plaintiffs.

189.    As a result of the foregoing, the contamination of plaintiffs' properties is permanent and the value of plaintiffs' properties has been severely and permanently diminished.

190.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages.

## EIGHT CAUSE OF ACTION
## AGAINST GE FOR MEDICAL MONITORING

191.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "190" inclusive with the same force and effect as if hereinafter set forth at length.

192.    As a result of the continuing conduct alleged herein, plaintiffs have elevated levels of PCBs in their blood and body organs causing them severe and permanent personal injuries and an increased risk of developing PCBs related cancers, diseases and injuries. As a direct and proximate result thereof, plaintiffs have incurred and continue to incur the cost of medical treatment and monitoring.

193.    Also as a result of the conduct alleged herein, plaintiffs will suffer future injuries, symptoms and pain and suffering from the latent effects of their exposure to PCBs as well as the effects of future and continuing exposure to PCBs due to the continuing and persistent discharge and release of PCBs from the GE Main Plant. As a direct and proximate result thereof, plaintiffs will need continual medical treatment, testing and monitoring in the future.

194.    As a result of the foregoing, plaintiffs are entitled to recover the costs of past and future medical monitoring, testing and treatment as a separate claim for relief or, alternatively, as additional damages under each of the other claims for relief above.

195.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWO BILLION DOLLARS ($2,000,000,000.00) in compensatory damages and TWO BILLION DOLLARS ($2,000,000,000.00) in punitive damages

## NINTH CAUSE OF ACTION AGAINST GE FOR FEAR OF SUSTAINING PCBs RELATED ILLNESSES

196.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "195" inclusive with the same force and effect as if hereinafter set forth at length.

197.    As a direct and proximate result of the conduct alleged herein, plaintiffs have reasonably developed the fear of sustaining severe and permanent personal injuries in the future due to the latent effects of their exposure to PCBs as well as the effects of future and continuing exposure to PCBs from the GE Main Plant.

198.    As a result of the foregoing, plaintiffs are entitled to damages for the extreme emotional distress and mental anguish associated with the reasonable fear of sustaining PCBs-related injuries and illnesses in the future.

199.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWELVE BILLION DOLLARS ($12,000,000,000.00) in compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) in punitive damages

## TENTH CAUSE OF ACTION AGAINST GE FOR NUISANCE

200.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "199" inclusive with the same force and effect as if hereinafter set forth at length.

201.    At all times material hereto, plaintiffs were in lawful possession of their properties. The conduct of GE alleged herein has resulted in an intrusion and the continued intrusion upon plaintiffs' properties significantly and negatively impacting upon the plaintiffs' rights to use and enjoy their own property.

202.    GE's conduct alleged herein caused the unreasonable emission, disposal and release of dangerous and toxic PCBs onto plaintiffs' properties and was substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits.

203.    GE's interference with plaintiffs' rights was so unusual and excessive that it necessarily caused injury, damage, harm and inconvenience to plaintiffs, and it substantially, materially and unusually interfered with their comfort and proper use and enjoyment of their property. Such invasion of plaintiffs' rights was unreasonable.

204.    GE's conduct has resulted in an entry and intrusion, and the continued entry and intrusion onto the properties of plaintiffs without privilege, permission, invitation or justification. GE's conduct directly and proximately caused plaintiffs' injuries, including actual harm to their properties and economic interests and an increased risk of future illnesses.

205.    By reason of the foregoing, GE owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

206.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## ELEVENTH CAUSE OF ACTION AGAINST GE FOR TRESPASS

207.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "206" inclusive with the same force and effect as if hereinafter set forth at length.

208.    Plaintiffs were at all relevant times in possession of land they owned and/or occupied.

209.    GE knew that its PCBs-containing products were dangerous and defective and that PCBs were intentionally discharged, released, emitted and migrated onto plaintiffs' properties.

210.    Despite GE's knowledge of the harm it was causing, GE intentionally

persisted in its conduct and continued to discharge PCBs onto plaintiffs' properties.

211.   This intentional discharge that GE knew, or should have known, was migrating onto plaintiffs' properties, was a trespass.

212.   Plaintiffs' properties continue to be exposed to and contaminated by PCBs containing products designed, manufactured, sold, distributed and disposed by GE.

213.   GE's conduct has resulted in an entry and intrusion onto the properties of the plaintiffs without privilege, permission, invitation or justification.

214.   GE's conduct directly and proximately caused plaintiffs' injuries, including actual physical harm to their properties and economic interests and an increased risk of future harm to their person. Plaintiffs are entitled to recover damages for such injuries.

215.   By reason of the foregoing, GE owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to restore such contaminated properties to their pre-contaminated condition.

216.   By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## TWELFTH CAUSE OF ACTION
## AGAINST GE FOR UNJUST ENRICHMENT

217.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "216" inclusive with the same force and effect as if hereinafter set forth at length.

218.   Plaintiffs have and/or will incur the cost of determining the nature and extent of contamination of their properties and the cost of restoring their properties to their pre-contaminated condition.

219.   GE owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs and the cost to

restore such contaminated properties to their pre-contaminated condition.

220. GE has breached and continues to breach this duty.

221. As a result of its breach, GE has been unjustly enriched in that it has the use of funds that it otherwise should have expended in fulfilling this duty.

222. By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION DOLLARS ($20,000,000,000.00) in compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) in punitive damages.

## THIRTEENTH CAUSE OF ACTION AGAINST GE FOR WILLFUL AND WANTON MISCONDUCT

223. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "222" inclusive with the same force and effect as if hereinafter set forth at length.

224. GE has acted in a wanton and willful manner and in reckless indifference to the safety of plaintiffs' health and the use and enjoyment of their properties in the following ways:

(a) GE allowed and continues to allow highly toxic PCBs to be discharged, released, emitted and migrated onto plaintiffs' properties without appropriate safeguards to prevent or remedy such releases;

(b) GE failed to warn and advise plaintiffs that its PCBs-containing products were dangerous and defective and that they needed to be safely and properly handled, used and disposed of;

( c) GE failed to determine the import of such contamination on plaintiffs' health and properties; and

(d) GE failed to warn the plaintiffs that their health and properties were at risk due to the release of PCBs from the GE Main Plant.

225. As a direct and proximate result of the willful, wanton, and reckless acts and omissions of GE, Plaintiffs have sustained actual damages and because of these acts and omissions, it is reasonable and proper for the assessment of punitive damages to deter GE and all others similarly situated from acting in a similar manner in the future.

226.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION ($20,000,000.00) DOLLARS for punitive damages.

## FOURTEENTH CAUSE OF ACTION
## AGAINST GE FOR CERCLA COST RECOVERY, 42 U.S.C. § 9601etseg.

227.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "226" inclusive with the same force and effect as if hereinafter set forth at length.

228.    GE is a "person" as defined by Section 9601(21) of CERCLA, 42 §9601(21).

229.    GE was and continues to be the "owner" and/or "operator" of a "facility" within the meaning of Sections 9601(20), 9601(9), and 9607(a) of CERCLA, 42 U.S.C.§§9601(20), 9601(9), 9607(a). The "facility" includes the GE Main Plant.

230.    PCBs used or stored at the GE Main Plant were and are "hazardous substances" within the meaning of Section 9601(14)of CERCLA, 42 U.S.C.§9601(14).

231.    From on or about the 1930s to date and continuing, GE has been responsible for "releases" of PCBs into the environment within the meaning of Section 9601(22) of CERCLA 42 U.S.C. § 9601(22).   GE's acts and omissions at the facility caused such "releases."

232.    GE's releases have migrated to plaintiffs' properties and there is no other likely source of the PCBs released onto the plaintiffs' properties.

233.    GE is strictly liable under Section 9607(a) of CERCLA, 42 U.S.C §9607(a), because it is the current operator of the facility and because it owned *or* operated the facility when the PCBs were stored, used, disposed or otherwise discharged therefrom.

234.    As a result of the releases of PCBs, plaintiffs have incurred and/or will incur "response costs" within the meaning of Section 9601(25) of CERCLA, 42 U.S.C. §§ 9601(25). Response costs includes costs associated with investigating the contamination and repairing and remediating same. Plaintiffs will continue to incur such response costs in the

future. Accordingly, plaintiffs are entitled to full reimbursement from GE for all such costs pursuant to Section 9607(a) of CERCLA, 42 U S.C. § 9607(a).

235.    By reason of the foregoing, said plaintiffs have been damaged in the sum of TWENTY BILLION ($20,000,000.00) DOLLARS in compensatory damages and TWENTY BILLION ($20,000,000.00) DOLLARS in punitive damages.

**WHEREFORE**, plaintiffs demand judgment against MONSANTO on the First Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Second Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Third Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Fourth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Fifth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Sixth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Seventh Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Eighth Cause of Action in the amount of TWO BILLION DOLLARS ($2,000,000,000.00) for compensatory damages and TWO BILLION DOLLARS ($2,000,000,000.00) for punitive damages; on the Ninth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Tenth Cause of Action in the amount of TWENTY BILLION

DOLLARS ($20,000,000,000.00) for compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages; and on the Eleventh Cause of Action in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00) for compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages; on the Twelfth Cause of Action in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00) for compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages, and on the Thirteenth Cause of Action in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages,

Plaintiffs also demand judgment against GE on the First Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Second Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Third Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Fourth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Fifth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Sixth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Seventh Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Eighth Cause of Action in the amount of TWO BILLION DOLLARS ($2,000,000,000.00) for compensatory damages and TWO BILLION DOLLARS ($2,000,000,000.00) for punitive

damages; on the Ninth Cause of Action in the amount of TWELVE BILLION DOLLARS ($12,000,000,000.00) for compensatory damages and TWELVE BILLION DOLLARS ($12,000,000,000.00) for punitive damages; on the Tenth Cause of Action in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00) for compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages; and on the Eleventh Cause of Action in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00) for compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages; on the Twelfth Cause of Action in the amount of TWENTY BILLION DOLLARS ($20,000,000,000.00) for compensatory damages and TWENTY BILLION DOLLARS ($20,000,000,000.00) for punitive damages; on the Thirteenth Cause of Action in the amount of TWENTY BILLION ($20,000,000.00) DOLLARS for punitive damages; and on the Fourteenth Cause of Action in the amount of TWENTY BILLION ($20,000,000.00) DOLLARS for compensatory damages and TWENTY BILLION ($20,000,000.00) DOLLARS for punitive damages together with the reasonable costs and disbursements of this action, including attorney's fees and interest.

Dated:    White Plains, New York
          February 14, 2007


                    LAW OFFICES OF LAWRENCE P. BIONDI
                    Attorneys for Plaintiffs


                    LAWRENCE P. BIONDI, ESQ.
                    81 Main Street, Suite 504
                    White Plains, New York 10601
                    (914) 946-5093


TO:    MONSANTO COMPANY
       c/o Corporation Service Company
       80 State Street
       Albany, New York 12207-2543

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK            )
                                                    : SS.:
COUNTY OF WESTCHESTER)

I, the undersigned, an attorney admitted to practice in the courts of New York State, state that I am the attorney of record for the Plaintiffs in the within action; I have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by Plaintiffs is because Plaintiffs do not reside within the county where I have my office. The grounds of my belief as to all matters not stated upon my own knowledge are based on conversations had with Plaintiffs and papers in the file.

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated: White Plains, New York
       February 14 , 2007

                                                            LAWRENCE P. BIONDI

ARMAND CORLEW, VINCENT RIGGI, STEPHEN
CERNAK, JR., RUTH DEPAOLO and ANGELO
RIGGI, individually and on behalf of a class similarly
situated,

                    Plaintiffs,

          -against-

GENERAL ELECTRIC COMPANY, MONSANTO
COMPANY, PHARMACIA CORPORATION and
SOLUTIA, INC.,

                    Defendants.

---

## VERIFIED COMPLAINT

---



LAW OFFICES OF

## LAWRENCE PERRY BIONDI

ATTORNEYS FOR PLAINTIFF(S)
81 MAIN STREET, SUITE 504
WHITE PLAINS, NEW YORK 10601
TELE.:(914) 946-5093
FAX:(914) 946-7372