UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
ARMAND CORLEW, VINCENT RIGGI, STEPHEN
CERNAK, JR., RUTH DEPAOLO and ANGELO
RIGGI, individually and on behalf of a class
similarly situated,

                              Plaintiffs,

                                                    **07-CV-3258 (KMW)**

         -against-

GENERAL ELECTRIC COMPANY, MONSANTO
COMPANY, PHARMACIA CORPORATION and
SOLUTIA, INC.

                              Defendants.
------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF GENERAL ELECTRIC COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Arthur J. Siegel, Esq. (AS-5181)
BOND, SCHOENECK & KING, PLLC
111 Washington Avenue
Albany, New York  12210
Phone: (518) 533-3000
Facsimile: (518) 533-3299
*Email:  asiegel@bsk.com*

Attorneys for Defendant General Electric
Company

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ ii

**PRELIMINARY STATEMENT** ............................................................................. 1

**ARGUMENT** ........................................................................................................... 3

**POINT I**

  **PLAINTIFFS' FIRST, SECOND, THIRD, FIFTH, SIXTH, SEVENTH, TENTH AND
  ELEVENTH CAUSES OF ACTION ARE TIME BARRED** .............................. 3

**POINT II**

  **PLAINTIFFS' FRAUDULENT CONCEALMENT CAUSE OF ACTION MUST BE
  DISMISSED BECAUSE PLAINTIFFS' ALLEGATIONS FAIL TO COMPLY WITH
  THE REQUIREMENTS OF FED. R. CIV. P. 9(b).** ............................................. 6

**POINT III**

  **PLAINTIFFS' FIFTH AND SIXTH CAUSES OF ACTION MUST BE DISMISSED
  BECAUSE PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION
  AGAINST GE FOR INTENTIONAL OR NEGLIGENT INFLICTION OF
  EMOTIONAL DISTRESS** .................................................................................. 8

**POINT IV**

  **PLAINTIFFS' TENTH CAUSE OF ACTION FOR NUISANCE AND ELEVENTH
  CAUSE OF ACTION FOR TRESPASS FAIL TO STATE CLAIMS AND MUST BE
  DISMISSED** ....................................................................................................... 10

**POINT V**

  **PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW
  AND MUST BE DISMISSED** ............................................................................ 11

**POINT VI**

  **PLAINTIFFS' EIGHTH, NINTH AND THIRTEENTH CAUSE OF ACTION ARE
  NOT RECOGNIZED AS INDEPENDENT CAUSES OF ACTION AND SHOULD BE
  DISMISSED** ....................................................................................................... 12

**CONCLUSION** ...................................................................................................... 14

184912.3 4/30/2007

# TABLE OF AUTHORITIES

Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank,
    731 F.2d 112 (2d Cir. 1984)......................................................................7

Askey v. Occidental Chem. Corp.,
    102 A.D.2d 130, 477 N.Y.S.2d 242 (4th Dep't 1984)................................12

Benson v. Cohoes Sch. Bd.,
    98 Misc. 2d 110, 413 N.Y.S.2d 600 (Albany Cty. 1979) ...........................12

Blatman v. Paribas N. Am.,
    198 A.D.2d 172, 604 N.Y.S.2d 70 (1st Dep't 1993)...................................13

Bower v. Weisman,
    639 F. Supp. 532 (S.D.N.Y. 1986) ...........................................................10

Brass v. American Film Tech., Inc.,
    987 F.2d 142 (2d Cir. 1993).......................................................................7

Cohn-Frankel v. United Synagogue of Conservative Judaism,
    246 A.D.2d 332, 667 N.Y.S.2d 360 (1st Dep't 1998) ..................................8

Compudyne Corp. v. Shane,
    453 F. Supp. 2d 807 (S.D.N.Y. 2006).......................................................11

Copart Indus., Inc. v. Consolidated Edison Co.,
    41 N.Y.2d 564, 394 N.Y.S.2d 169 (1977) ................................................10

DiStefano v. Nabisco, Inc.,
    282 A.D.2d 704, 724 N.Y.S.2d 444 (2d Dep't 2001)...................................4

Gurary v. Winehouse,
    190 F.3d 37 (2d Cir. 1999).........................................................................7

Harville v. Lowville Cent. Sch. Dist.,
    245 A.D.2d 1106, 667 N.Y.S.2d 175 (4th Dep't 1997)...............................9

Howell v. New York Post Co., Inc.,
    81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ..................................................8

Invamed, Inc. v. Barr Labs., Inc.,
    22 F. Supp. 2d 210 (S.D.N.Y. 1998).........................................................3

Jensen v. General Elec. Co.,
    82 N.Y.2d 77, 603 N.Y.S.2d 420 (1993) ....................................................4

Jones v. Utilities Painting Corp.,
   198 A.D.2d 268, 603 N.Y.S.2d 546 (2d Dep't 1993) ...................................................12

Kaye v. Grossman,
   202 F.3d 611 (2d Cir. 2000) .........................................................................................11

Lee v. McCue,
   410 F. Supp. 2d 221 (S.D.N.Y. 2006) .........................................................................10

Leeds v. Meltz,
   85 F.3d 51 (2d Cir. 1996) ...............................................................................................3

MRI Broadway Rental v. United States Min. Prods. Co.,
   92 N.Y.2d 421, 681 N.Y.S.2d 783 (1998) .....................................................................4

Mills v. Polar Molecular Corp.,
   12 F.3d 1170 (2d Cir. 1993) ...........................................................................................6

Murphy v. American Home Products Corp.,
   58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) .....................................................................8

Oliver Chevrolet Inc. v. Mobil Oil Corp.,
   249 A.D.2d 793, 671 N.Y.S.2d 850 (3d Dep't 1998) .....................................................4

Orlando v. Novurania of Am., Inc.,
   162 F. Supp. 2d 220 (S.D.N.Y. 2001) ...........................................................................5

Perkins v. Katz,
   81 A.D.2d 763, 439 N.Y.S.2d 114 (1st Dep't 1981) ....................................................13

Phillips v. Sun Oil Co.,
   307 N.Y. 328, 121 N.E.2d 249 (1954) .........................................................................10

Pilarczyk v. Morrsion Knudsen Corp.,
   965 F. Supp. 311 (N.D.N.Y. 1997), aff'd, 162 F.3d 1148 (2d Cir. 1998), ....................6

Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional deVenezuela,
   991 F.2d 42 (2d Cir. 1993) .............................................................................................7

Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,
   317 F. Supp. 2d 301 (S.D.N.Y. 2003) .........................................................................11

Redtail Leasing v. Thrasher (In re Motel 6 Sec. Litig.),
   Nos. 93-2183, 93-2866, 1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. April 2,
   1997) .............................................................................................................................12

184912.TOA 4/30/2007

Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,
    68 F.3d 1478, 1484 (2d Cir. 1995)................................................................7

Rocanova v. Equitable Life Assur. Soc'y,
    83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ...................................................13

Scribner v, Summers,
    84 F.3d 554 (2d Cir. 1996)..........................................................................10

South Road Assocs. v. International Bus. Mach. Corp.,
    216 F.3d 251 (2d Cir. 2000)...........................................................................3

TVT Records v. Island Defense Jam Music Group,
    412 F.3d 82 (2d Cir. 2005)..............................................................................7

Tate v. Metropolitan Life Insurance Co.,
    186 A.D.2d 859, 587 N.Y.S.2d 813 (3rd Dep't 1992) .................................13

Tissenbaum v. Aerovias Nacionales De Colombia, S.A. (In re Air Crash Disaster
at Cove Neck),
    885 F. Supp. 434 (E.D.N.Y. 1995) ................................................................9

Wiener v. UnumProvident Corp.,
    202 F. Supp. 2d 116 (S.D.N.Y. 2002)............................................................8

## OTHER AUTHORITES

Fed. R. Civ. P. 9(b) ...............................................................................................6

Fed. R. Civ. P. 12(b)(6)..........................................................................................3

New York C.P.L.R. § 214-c(2) ...............................................................................3

New York U.C.C. § 2-313 ................................................................................6 n.2

New York U.C.C. § 2-314 ................................................................................6 n.2

New York U.C.C. § 2-315 ...............................................................................6 n. 2

New York U.C.C. § 2-318 ................................................................................6 n.2

New York U.C.C. § 2-275(1)...................................................................................5

Toxic Substance Control Act, 15 U.S.C. § 2605(e)(3)(A) (1998) .........................5

Defendant General Electric Company ("GE"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), submits this memorandum of law, along with the affidavit of Arthur J. Siegel, Esq., with exhibits, in support of its motion to dismiss plaintiffs Armand Corlew, Vincent Riggi, Stephen Cernak, Jr., Ruth DePaolo and Angelo Riggi's (collectively referred to as "plaintiffs") complaint.

## PRELIMINARY STATEMENT

This is a putative class action seeking monetary damages as a result, inter alia, of alleged diminution in the value of plaintiffs' real property as a result of alleged exposure to polychlorinated biphenyls (PCBs). The complaint alleges that defendants Monsanto Company, Pharmacia Corporation and Solutia, Inc. manufactured PCBs and GE disposed of them at its facility in Schenectady, New York (defined by plaintiffs as the "Main Plant"). As a result of these purported, unsubstantiated claims of property damage, plaintiffs seek compensatory and punitive damages totaling $756 billion against defendants, which include a claim for damages against GE alone equaling $396 billion.[1]

Plaintiffs' complaint contains fourteen (14) independently alleged causes of action against GE. A review of these allegations reveal that the complaint should be dismissed

---

[1]     Plaintiffs' counsel previously filed two related cases in the Supreme Court of the State of New York, County of New York styled Michael Abbateillo, et al. v. Monsanto Co., et al. and Alan Abele, et al. v. Monsanto Company, et al. Both of these cases were timely removed by defendants (GE is not a party to either the Abbatiello or Abele cases) to this Court and plaintiffs' subsequent motions to remand were denied.

Abbateillo is a personal injury action commenced by 590 current GE employees at GE's Main Plant. Abele is a personal injury action commenced by 486 former GE employees at GE's Main Plant. To the extent that any of the named plaintiffs in the instant action, or potential class members, are current or former employees of GE, all personal injury claims stemming from their alleged workplace exposure to PCBs would be barred as a matter of law pursuant to New York's Workers Compensation law.

184912.3 4/30/2007

in its entirety. However, if the Court does not dismiss plaintiffs' complaint in its entirety, numerous facially deficient causes of action must be dismissed as a matter of law.

First, plaintiffs' negligence based property damage and personal injury causes of action are time barred in that plaintiffs, through the exercise of reasonable diligence, should have discovered their purported injuries three years prior to the commencement of the instant action. Accordingly, plaintiffs' first, third, fifth, sixth, seventh, tenth, and eleventh causes of action are timed barred.

Similarly, plaintiffs' claim that GE breached warranties of fitness and merchantability are also time barred. New York's statute of limitations on this claim is four years from the date the product was delivered. Since the government banned PCBs in the late 1970s, any PCBs that have purportedly contaminated plaintiffs' property had to be delivered to GE nearly 30 years prior to the commencement of this action.

Plaintiffs' fourth cause of action against GE for fraudulent concealment is in violation of the pleading requirements of Federal Rule of Civil Procedure 9(b). Plaintiffs have not identified a single specific act of concealment, a single person who committed the purported concealment or any factual basis that would impose a duty on GE to disclose information about PCBs to plaintiffs.

Plaintiffs' fifth and sixth causes of action for intentional and negligent infliction of emotional distress should also be dismissed because plaintiffs failed to allege the requisite elements necessary to assert these causes of action.

Plaintiffs' ninth and tenth causes of action for trespass and nuisance are also fatally flawed in that plaintiffs failed to allege that GE's purported conduct was "intentional" in nature and that GE intended that the PCBs it allegedly disposed of would end up on plaintiffs'

property. Plaintiffs' unjust enrichment claim also fails as a matter of law because plaintiffs never had a contractual or quasi-contractual relationship with GE.

Finally, plaintiffs' eighth and ninth causes of action are duplicative of plaintiffs' negligence and strict liability causes of action. Additionally, plaintiffs' attempt to plead a separate and independent cause of action for punitive damages in their 13th cause of action must be dismissed since New York law does not recognize a claim for punitive damages as an independent tort.

## ARGUMENT

"To survive a motion for dismissal under Rule 12(b)(6), the complaint must allege facts that, if true, would create a judicially cognizable cause of action." South Road Assocs. v. International Bus. Mach. Corp., 216 F.3d 251, 253 (2d Cir. 2000). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, each element of each cause of action must be adequately alleged in order for a party to escape dismissal. See, e.g., Invamed, Inc. v. Barr Labs., Inc., 22 F. Supp. 2d 210, 217 (S.D.N.Y. 1998).

## POINT I

### PLAINTIFFS' FIRST, SECOND, THIRD, FIFTH, SIXTH, SEVENTH, TENTH AND ELEVENTH CAUSES OF ACTION ARE TIME BARRED

Plaintiffs allege, in conclusory fashion, that their property has been contaminated by PCBs as a result of GE's improper use and disposal of PCBs and PCB containing products. Plaintiffs' property damage claims are governed by a three year statute of limitations. New York Civil Practice Law and Rules § 214-c(2) provides that the three year limitations period for latent injuries to person or property caused by exposure to harmful substances begins on the date the

3

injury is discovered or the date when the injury should have been discovered by a reasonably

diligent plaintiff, whichever date is earlier. Jensen v. General Elec. Co., 82 N.Y.2d 77, 603

N.Y.S.2d 420 (1993). The Court of Appeals has held that "discovery occurs when, based upon

an objective level of awareness of the dangers and consequences of the particular substance, the

injured party discovers the primary condition on which the claim is based." MRI Broadway

Rental v. United States Min. Prods. Co., 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783 (1998) (internal

quotations omitted). For the limitations period to apply, the plaintiff need not have actual

knowledge of all of the facts constituting the injury, so long as facts known to the plaintiff should

have placed a reasonable person on notice of the need to undertake further investigation. Oliver

Chevrolet Inc. v. Mobil Oil Corp., 249 A.D.2d 793, 671 N.Y.S.2d 850 (3d Dep't 1998). In a

case involving damages due to contamination, plaintiff need not have discovered the full extent

of the contamination, so long as the facts known to plaintiff are sufficient so that through the

exercise of reasonable diligence they would have discovered the injury. See DiStefano v.

Nabisco, Inc., 282 A.D.2d 704, 724 N.Y.S.2d 444 (2d Dep't 2001).

Plaintiffs allege in their complaint that, "[i]n 1987, the New York State

Department of Environmental Conservation (NYSDEC) listed the [GE Main Plant] as a Class 2

site in the Registry of Inactive Hazardous Waste Disposal Sites in New York." Complaint ¶ 37.

Plaintiffs further allege that the "entire remedial investigation process commenced [at the GE

Main Plaint] in 1995 and ended in 2003." Complaint ¶ 38. Plaintiffs then maintain that GE's

own investigation during the remedial investigation – which occurred some time prior to 2003 –

"found that PCBs were found at excessive concentrations in surface soil, subsurface soils,

ground water, seeps, sediment samples and biota samples on or about the Main Plant."

Complaint ¶ 40. Notwithstanding that PCBs were banned for manufacture and distribution in

4

1979 (*infra*, p. 5), according to plaintiffs' own allegations in the complaint, 2003 is the latest possible date that plaintiffs, through the exercise of reasonable diligence, should have discovered their purported injuries.  Accordingly, plaintiffs' negligence (first cause of action), strict liability (second cause of action), negligent infliction of emotional distress (fifth cause of action), abnormally dangerous activity (seventh cause of action), nuisance (tenth cause of action) and trespass (11th cause of action) [three year statute of limitations] causes of action, as well as plaintiffs' intentional infliction of emotional distress (sixth cause of action) [one year statute of limitations] cause of action, are time barred since this action was not commenced until March 2007 – more than three years after the completion of the remedial investigation.

   Plaintiffs' breach of warranty claim, set forth in plaintiff's second cause of action, is also time barred.  The statute of limitations for a breach of warranty claim is four years from the date the cause of action accrued.  <u>See</u> New York Uniform Commercial Code § 2-275(1).  Under UCC § 2-275(2), a breach of warranty cause of action accrues "when the breach accrues, regardless of the aggrieved party's lack of knowledge of the breach."  Claims of breach of warranty of fitness or merchantability "accrue[] on [the] date seller sold the machine to worker's employer, rather than on date of injury."  <u>Orlando v. Novurania of Am., Inc.</u>, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001).  GE respectfully requests that the Court take judicial notice pursuant to Federal Rule of Evidence 201 that PCBs were banned for manufacture and distribution in 1979.  <u>See</u> 15 U.S.C. § 2605(e)(3)(A) (two years and two and a half years from January 1, 1977, effective date of the Toxic Substance Control Act).

   Accordingly, all the PCBs which allegedly caused personal and property damage to plaintiffs must have been delivered before 1980.  Even assuming, *arguendo*, that it could be shown that the alleged release of PCBs violated the warranties of fitness and merchantability,

5

plaintiffs' causes of action accrued on the date of delivery. Since the latest possible date is nearly 30 years prior to the fling of this complaint, plaintiffs' breach of warranty cause of action is time barred. Accordingly, plaintiffs' second cause of action as directed against GE must be dismissed as a matter of law.[2]

## POINT II

### PLAINTIFFS' FRAUDULENT CONCEALMENT CAUSE OF ACTION MUST BE DISMISSED BECAUSE PLAINTIFFS' ALLEGATIONS FAIL TO COMPLY WITH THE REQUIREMENTS OF FED. R. CIV. P. 9(b).

Plaintiffs in their fourth cause of action allege that "GE made the conscious decision to suppress and conceal [ ] facts [about PCBs] from the public and plaintiffs" and as a "direct and proximate result of the conduct, misrepresentations and concealment by GE, the plaintiffs herein were unreasonably exposed to the dangers of PCBs and their properties have been permanently contaminated . . . ." Complaint ¶¶ 172, 177.

Federal Rule of Civil Procedure 9(b) requires that "all averments of fraud" must be "stated with particularity." The Second Circuit has interpreted this requirement as follows:

> [T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

See Pilarczyk v. Morrsion Knudsen Corp., 965 F. Supp. 311, 320 (N.D.N.Y. 1997), aff'd, 162 F.3d 1148 (2d Cir. 1998), quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

---

[2]     New York Uniform Commercial Code governs the breach of express and implied warranties. See New York Uniform Commercial Code §§ 2-313, 2-314 and 2-315. The aforementioned warranty claims relate to transactions between sellers and buyers. It is unrefuted, based upon the allegations contained within plaintiffs' Complaint, that GE was not the seller or manufacturer of the PCBs that has allegedly caused plaintiffs' purported property damage and personal injury. GE recognizes that pursuant to UCC § 2-318, a "seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may . . . be affected by the goods and who is injured . . . ." However, this provision is inapplicable because GE was not the "seller" of the PCBs in question.

184912.3 4/30/2007

Plaintiffs' complaint vaguely refers to GE's purported "concealment" and "misrepresentations" (Complaint ¶¶ 172-175), but otherwise lacks any of the specificity required by Fed. R. Civ. P. 9(b). A complaint that "does not identify any such misstatements" does not comply with Fed. R. Civ. P. 9(b) "and may be disregarded." Gurary v. Winehouse, 190 F.3d 37, 42 n.6 (2d Cir. 1999).

Notwithstanding plaintiffs' pleading deficiencies, plaintiffs' fraudulent concealment claim also fails as a matter of law. Under New York law, fraudulent concealment requires proof of: (1) failure to discharge a duty to disclose; (2) an intention to defraud; (3) reliance; and (4) damages. See Brass v. American Film Tech., Inc., 987 F.2d 142, 152 (2d Cir. 1993). Accordingly, a concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose. See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional deVenezuela, 991 F.2d 42, 47 (2d Cir. 1993). This duty will arise when the parties are in a fiduciary relationship or other relationship signifying a heightened level of trust. See Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 113 (2d Cir. 1984). In the instant action, plaintiffs do not allege, nor could they argue, that they are in a fiduciary relationship with GE.

In the absence of a fiduciary relationship, a duty to disclose may arise if: (1) "one party possesses superior knowledge, not readily available to the other;" and (2) the party with superior knowledge "knows that the other is acting on the basis of mistaken knowledge." TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 91 (2d Cir. 2005). In these circumstances, the "disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact." Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1484 (2d Cir. 1995). This exception

to the general rule does not apply here. Plaintiffs cannot satisfy this requirement because they do not even allege that they were ever parties to a business transaction with GE. Similarly, plaintiffs do not allege that during the course of any purported business relationship with GE, it was apparent to GE that plaintiffs had any mistaken perceptions concerning PCBs. Accordingly, plaintiffs' fraudulent concealment cause of action must be dismissed.

**POINT III**

**PLAINTIFFS' FIFTH AND SIXTH CAUSES OF ACTION
MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED
TO STATE A CAUSE OF ACTION AGAINST GE FOR
INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Under New York law, a claim for infliction of emotional distress requires: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (1993). To satisfy the "extreme and outrageous conduct" element, plaintiff must show that defendants' alleged conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983); see also Wiener v. UnumProvident Corp., 202 F. Supp.2d 116, 122 (S.D.N.Y. 2002) ("the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it"). Courts are reluctant to allow recovery for infliction of emotional distress "absent a deliberate and malicious campaign of harassment or intimidation." Cohn-Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 332, 667 N.Y.S.2d 360, 362 (1st Dep't 1998). Whether the alleged conduct is

184912.3 4/30/2007

"extreme and outrageous", is a question for the Court.  Harville v. Lowville Central School

District, 245 A.D.2d 1106, 667 N.Y.S.2d 175 (4th Dep't 1997).

Assuming, *arguendo*, this claim is timely (see Point I, *supra*), plaintiffs fail to

plead its essential elements.  Plaintiffs' fifth and sixth causes of action summarily allege that GE

intentionally and/or negligently "inflicted emotional distress on each plaintiff" (Complaint ¶¶

180, 184), yet plaintiffs provide no facts to support these conclusory allegations.  In fact, the

complaint fails to allege that GE intended to cause, or engaged in a plan or campaign of conduct

designed to cause plaintiffs emotional distress.  There is simply no factual basis for plaintiffs'

claim for alleged infliction of emotional distress (intentional and negligent), and therefore

plaintiffs' fifth and sixth cause of action should be dismissed for failure to state a claim.

Moreover, to establish the negligent infliction claim plaintiffs must also allege, in

addition to the four elements for an intentional infliction claim, that GE breached a duty owed to

them.  See Tissenbaum v. Aerovias Nacionales De Colombia, S.A. (In re Air Crash Disaster at

Cove Neck), 885 F. Supp. 434, 438-39 (E.D.N.Y. 1995).  Plaintiffs have failed to even allege

"the existence of a duty owed directly to the claimant by one from whom recovery is sought."

Id. at 439.  Furthermore, plaintiffs' negligence and product liability causes of action would

"provide a complete source of recovery for [plaintiffs' alleged] injuries.  Any further claim for

negligent infliction of emotional distress would be duplicative of these common law claims."

Lee v. McCue, 410 F. Supp. 2d 221, 227 (S.D.N.Y. 2006).  For these many reasons, as well as

those set forth in Point I, *supra*, plaintiffs' negligent infliction of emotional distress claim must

be dismissed.

184912.3 4/30/2007

## POINT IV

### PLAINTIFFS' TENTH CAUSE OF ACTION FOR NUISANCE AND ELEVENTH CAUSE OF ACTION FOR TRESPASS FAIL TO STATE CLAIMS AND MUST BE DISMISSED

The elements of a private nuisance claim in New York are: (1) an interference substantial in nature; (2) intentional in origin; (3) unreasonable in character; (4) with a person's property right to use and enjoy land; and (5) caused by another's conduct in acting or failure to act. Copart Indus., Inc. v. Consolidated Edison Co., 41 N.Y.2d 564, 394 N.Y.S.2d 169 (1977); Bower v. Weisman, 639 F. Supp. 532, 541 (S.D.N.Y. 1986) (adopting Copart as the defining case). "An invasion of another's interest in the use and enjoyment of land is intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct." Copart, 41 N.Y.2d at 571, *citing* Restatement of Torts, 2d, § 825.

Similarly, the necessary elements to prove a trespass claim are: (1) intent or recklessness; (2) entry by a person or thing upon land; and (3) in the actual or constructive possession of another. Furthermore, a purported trespasser "must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does." Phillips v. Sun Oil Co., 307 N.Y. 328, 331, 121 N.E.2d 249, 251(1954); see also Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996)

Notably absent from plaintiffs' nuisance and trespass causes of action are any allegations that GE intended that the PCBs end up on plaintiffs' property or that the inevitable consequence of GE's alleged discharge of PCBs was that they would end up on plaintiffs' property. Rather, plaintiffs' complaint is riddled with conclusory, unsubstantiated assertions about GE's alleged discharge of PCBs and purported knowledge of the same. Therefore, since

10

plaintiffs have failed to satisfy the "intentionality" requirement necessary to state a claim for nuisance and trespass, plaintiffs' nuisance and trespass claims must be dismissed.

**POINT V**

**PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS
A MATTER OF LAW AND MUST BE DISMISSED**

Plaintiffs maintain in their twelfth cause of action that they are entitled to damages based upon the equitable doctrine of unjust enrichment because they "have and/or will incur the costs of determining the nature and extent of contamination of their properties and the cost of restoring their properties to their precontamination condition." Complaint ¶ 218. To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: (1) that the defendant benefited; (2) at plaintiff's expense; and (3) equity and good conscience requires restitution. See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000); Compudyne Corp. v. Shane, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006). Furthermore, "unjust enrichment is a quasi-contractual remedy," and its elements cannot be removed "from the context in which they must be viewed: as an alternative to contract, where a contractual relationship has legally failed." Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003) (internal quotations omitted).

Though plaintiffs may recite the basic elements of unjust enrichment under New York law, plaintiffs, not surprisingly, cannot, and do not, truthfully allege that they had any contractual or quasi-contractual relationship with GE.[3] "The requirements that a defendant be

---

[3] Based upon a review of plaintiffs' complaint, it is not clear what benefit, if any, GE has purportedly received. Plaintiffs allege that "GE owes a duty to reimburse plaintiffs for the cost of determining the full extent of the contamination on all properties owned by the plaintiffs." Complaint ¶ 219. However, plaintiffs fail to state whether they have actually incurred such costs. Rather, plaintiffs merely allege that they "have and/or will incur the costs of determining the nature and extent of contamination." Complaint ¶ 218. Even if plaintiffs sufficiently state a claim for unjust enrichment, which GE denies, plaintiffs' unjust enrichment claim is premature at this stage of the litigation and must be dismissed.

11

enriched at plaintiff's expense and that good conscience necessitate that a defendant make

restitution to plaintiff, clearly contemplate that a defendant and plaintiff must have had some

type of direct dealings or an actual, substantive relationship." Redtail Leasing v. Thrasher (In re

Motel 6 Sec. Litig.), Nos. 93-2183, 93-2866, 1997 U.S. Dist. LEXIS 3909, at *21 (S.D.N.Y.

April 2, 1997). Accordingly, plaintiffs' unjust enrichment claim must be dismissed since

plaintiffs have failed to allege and simply cannot prove the existence of any contractual or quasi-

contractual relationship with GE. See Reading, 317 F. Supp. 2d at 334.


## POINT VI

### PLAINTIFFS' EIGHTH, NINTH AND THIRTEENTH CAUSE OF ACTION ARE NOT RECOGNIZED AS INDEPENDENT CAUSES OF ACTION AND SHOULD BE DISMISSED

A cause of action is not legally separate and distinct from another merely because

it is labeled as such in the complaint. Benson v. Cohoes Sch. Bd., 98 Misc. 2d 110, 413

N.Y.S.2d 600, 602 (Albany Cty. 1979). A cause of action is a set of operative facts which gives

rise to a separate and distinct legal right. Id.

Plaintiffs' eighth cause of action for medical monitoring and ninth cause of action

for fear of sustaining PCB related illnesses are not free-standing claims. Rather, these causes of

action would essentially be an element of plaintiffs' damages claim should plaintiffs prevail at

trial and prove that they have in fact been exposed to PCBs. See Askey v. Occidental Chem.

Corp., 102 A.D.2d 130, 137, 477 N.Y.S.2d 242, 247 (4th Dep't 1984) ("future expense of

medical monitoring may be recovered as an element of consequential damages"); see also Jones

v. Utilities Painting Corp., 198 A.D.2d 268, 603 N.Y.S.2d 546 (2d Dep't 1993). Similarly,

12

plaintiffs' 13th cause of action for "willful and wanton misconduct" is essentially a rehashing of plaintiffs' negligence and strict liability causes of action.  As such, plaintiffs' 13th cause of action does not create an independent cause of action.  See Blatman v. Paribas N. Am., 198 A.D.2d 172, 604 N.Y.S.2d 70, 71 (1st Dep't 1993) (dismissing cause of action because it seeks recovery of the same bonus payment for which an accounting was sought in a previously stated cause of action); Perkins v. Katz, 81 A.D.2d 763, 764, 439 N.Y.S.2d 114, 116 (1st Dep't 1981) (dismissing first cause of action because the allegations contained therein were mere "surplusage" as such claim was pleaded in another cause of action).

In addition to duplicating plaintiffs' negligence and strict liability causes of action, plaintiffs' 13th cause of action also attempts to plead punitive damages as an independent cause of action.  As the New York Court of Appeals stated in Rocanova v. Equitable Life Assur. Soc'y., 83 N.Y.2d 603, 616, 612 N.Y.S.2d 339, 344 (1994), "[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action."  Since plaintiffs' medical monitoring, fear of sustaining PCB related illnesses and punitive damages claims are not independently recognized causes of action in New York, plaintiffs' eighth, ninth and 13th causes of action must be dismissed.  See Tate v. Metropolitan Life Ins. Co., 186 A.D.2d 859, 860, 587 N.Y.S.2d 813, 814 (3d Dep't 1992).

184912.3 4/30/2007

## CONCLUSION

Based upon the foregoing reasons, General Electric respectfully requests that its motion to dismiss the complaint in its entirety be granted and the Court award General Electric their reasonable expenses and attorneys' fees incurred on this motion, and for such other relief as the Court deems just and proper.

DATED:  April 30, 2007

BOND, SCHOENECK & KING, PLLC

By:    _Arthur Siegel_

ARTHUR J. SIEGEL (AS-5181)
111 Washington Avenue
Albany, New York  12210
Phone: (518) 533-3000
Facsimile: (518) 533-3299
*Email:  asiegel@bsk.com*

Attorneys for Defendant General Electric
Company

14

184912.3 4/30/2007

UNREPORTED CASE

Service: **Get by LEXSEE®**
Citation: **1997 us dist lexis 3909**

*1997 U.S. Dist. LEXIS 3909, \*; Fed. Sec. L. Rep. (CCH) P99,454*

In re MOTEL 6 SECURITIES LITIGATION; REDTAIL LEASING, INC., individually and on behalf of all others similarly situated, Plaintiffs, -against- HUGH THRASHER, et al., Defendants. ROBERT J. ROSENER, individually and on behalf of all others similarly situated, Plaintiffs, -against- HUGH THRASHER, et al., Defendants.

93 Civ. 2183 (JFK), 93 Civ. 2866 (JFK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 3909; Fed. Sec. L. Rep. (CCH) P99,454

April 1, 1997, Decided
April 2, 1997, FILED

**DISPOSITION:** [\*1] Defendant Hirsh's motion to dismiss the RICO and Securities and Exchange Act claims denied, and the motion to dismiss the New York General Business Law claim, and common law fraud and unjust enrichment claims granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff sellers filed claims against defendant buyer under theories of common law fraud and unjust enrichment, as well as RICO, the Securities and Exchange Act, and the New York General Business Law. The buyer filed a motion to dismiss.

**OVERVIEW:** The sellers claimed that they sold their shares and call options during the period that the buyer purchased them, that the purchase was based upon material inside information regarding an impending acquisition, and that the buyer was unjustly enriched at their expense. The buyer's motion to dismiss the Securities and Exchange Act claim was denied because the court had addressed the adequacy of the sellers' allegations that they traded contemporaneously with the buyer on a prior motion for class certification. The court also denied dismissal on the RICO claim because the sellers adequately pleaded the required pattern of racketeering activity and a causal connection between the RICO violation and their injury. The court dismissed the fraud claim because the sellers failed to allege facts that they directly relied on the buyer's omissions. The unjust enrichment claim was also dismissed because the sellers did not allege any direct dealings or actual, substantive relationship with the buyer. The New York General Business Law claim was dismissed for reasons given in a prior order.

**OUTCOME:** The motion to dismiss was granted with respect to the New York General Business Law claim, the common law fraud claim, and the unjust enrichment claim. The motion to dismiss was denied with respect to the RICO and the Securities and Exchange Act claims.

**CORE TERMS:** conspiracy, pleaded, omission, common law fraud, insider trading, motel, contemporaneous, unjust enrichment, motion to dismiss, inside information, trading, privity, predicate, continuity, trader, contemporaneously, investor, proximate cause, pattern of racketeering activity, material omission, direct dealings, disclose, tipping, traded, federal securities, conspiracy claim, common law, misrepresentation, favorable, presumed

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🗐
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims 🗐

HN1± A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. The factual allegations set forth in the complaint must be accepted as true and the court must view the allegations in the light most favorable to the pleader. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Justiciability > Standing > General Overview 🗐

HN2± Only those investors who trade contemporaneously with the inside trader have standing to sue on an insider trading claim. More Like This Headnote | *Shepardize:* Restrict By Headnote

Securities Law > Liability > RICO Actions > General Overview 🗐

HN3± Where a material omission serves as the basis for a RICO § 10(b) claim, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor would have considered them important in the making of this decision. Once a plaintiff shows the materiality of the omission for a § 10(b) claim, and thus reliance, defendant can avoid liability by proving by a preponderance of the evidence that disclosure of that information would not have altered plaintiff's investment decision. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements 🗐
Securities Law > Liability > RICO Actions > General Overview 🗐

HN4± To demonstrate a RICO conspiracy, the plaintiff must show that the defendant agreed to commit the substantive racketeering offense through agreeing to participate in two predicate acts, that he knew the general nature of the conspiracy, and that the conspiracy extended beyond his individual role. In addition, those two predicate crimes must, as with every other RICO violation, constitute a pattern of racketeering activity. More Like This Headnote | *Shepardize:* Restrict By Headnote

Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview 🗐

HN5± Common law fraud claims must be supported by factual allegations demonstrating plaintiff's actual, direct reliance on the misrepresentation or omission. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Remedies > Restitution 🗐

HN6± In order to recover for unjust enrichment under New York law, a plaintiff must show that (1) defendant is enriched, (2) enrichment is at plaintiff's expense, and (3) the circumstances are such that equity and good conscience require defendant to make restitution. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** APPEARANCES:

For Plaintiffs: SACHNOFF & WEAVER, Chicago, Illinois, Of Counsel: Jonathan S. Quinn, John W. Moynihan. POLLACK & GREENE, LLP, New York, New York, Of Counsel: Alan M. Pollack. LAWRENCE WALNER & ASSOCIATES, Chicago, Illinois, Of Counsel: Lawrence Walner. SUSMAN, BUEHLER & WATKINS, Chicago, Illinois, Of Counsel: Charles R. Watkins. ROBIN J. OMAHANA, Chicago, Illinois, Of Counsel: Robin J. Omahana.

For Defendant Jonathan Hirsh: NAGLER & ASSOCIATES, Beverly Hills, CA, Of Counsel: Lawrence H. Nagler, Robert M. Zaab.

**JUDGES:** JOHN F. KEENAN, United States District Judge

**OPINION BY:** JOHN F. KEENAN

**OPINION:** OPINION AND ORDER

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Jonathan Hirsh's motion to dismiss, pursuant to Fed. R. Civ. Pro. 12(b)(6), Plaintiffs' Securities Exchange Act claims, New York General Business Law claim, and common law fraud and unjust enrichment claims. For the reasons stated below, the Court grants **[\*2]** Defendant's motion in part and denies Defendant's motion in part.

### Background

Plaintiffs allege a nationwide insider trading scheme by persons who possessed material, nonpublic information concerning the proposed acquisition of Motel 6, L.P., a Dallas-based national chain of owner-operated economy motels, by Accor, S.A. ("Accor"), a French-based company. n1 Plaintiffs were the holders of call options on Motel 6 securities. Plaintiffs assert that Defendants were part of a conspiracy to trade on highly sensitive inside information about tender offer negotiations occurring in New York between Motel 6's largest shareholder, Kohlberg Kravis Roberts & Company ("KKR"), and Accor. Defendant Hugh Thrasher ("Thrasher") was executive vice-president of Motel 6 in charge of communication at the time of the tender offer negotiations. Thrasher allegedly tipped Carl V. Harris ("Harris") about the tender offer negotiations in May 1990. Am. Compl. PP 94-95. Harris then allegedly told nine others, including Defendant Jeffrey Sanker. Am. Compl. PP 97-99, 110-12, 121, 125, 162, 177-180. Jeffrey Sanker allegedly tipped Defendant Jonathan Hirsh, who then purchased Motel 6 call options. Am. Compl. **[\*3]** 168-169. Plaintiffs claim Hirsh realized illegal profits of at least $ 29,262 from these transactions in his personal securities accounts. Am. Compl. P 169. Hirsh also allegedly entered into a partnership with Defendant Lee Rosenblatt to trade Motel 6 securities through Rosenblatt's securities account and split the illegal profits. Pursuant to that partnership, these Defendants realized profits of about $ 360,000, of which Defendant Hirsh received $ 180,000. Am. Compl. PP 170-74. Hirsh is also alleged to have tipped Defendant Roger Odwak. Am Compl. PP 175-76.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Court has also discussed the facts underlying this action in In re Motel 6 Securities Litigation v. Thrasher, 1995 U.S. Dist. LEXIS 9954, No. 93-2183, 1995 WL 431326 (S.D.N.Y. July 20, 1995). That decision addressed a prior motion to dismiss by certain other Defendants in this action and provides a background against which this Court bases this decision.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiffs further contend that the scheme to trade on inside information also included a conspiracy to cover-up the alleged **[\*4]** tipping and trading activity through fraud, perjury, money laundering, the widespread dissemination of inside information, and the willful failure to disclose material facts. Am. Compl. PP 69, 87, 164, 189, 200, 201, 206-07, 212, 224.

### Discussion

*HN1* A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957). The factual allegations set forth in the complaint must be accepted as true, see Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990), and the Court must view the allegations in the light most favorable to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974).

As a preliminary matter, the Court will not readdress arguments addressed or decided in the July 5, 1995 Opinion and Order denying a motion to dismiss the RICO claims by Defendants Chammah, Kuznetsky, Schor, Thrasher, and Darrell Sandy Marsh. The Court assumes the readers' familiarity with that decision. **[*5]** Additionally, the Court notes that in his reply papers Defendant Hirsh raised an argument regarding Plaintiffs' failure to specifically allege their losses for RICO standing. In that Hirsh did not raise this argument in his papers in support of the motion to dismiss, and Plaintiffs did not have a chance to address the argument, the Court declines to address the issue raised for the first time in reply papers.

## A. The Securities Exchange Act Claims

Defendant Hirsh argues that the Securities Exchange Act claims must be dismissed because the Amended Complaint fails to allege that Plaintiffs' trades were contemporaneous with those of Hirsh.

The Second Circuit has held that *HN2* only those investors who trade contemporaneously with the inside trader have standing to sue on an insider trading claim. See Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 94-95 (2d Cir. 1981). Defendant argues that Plaintiffs have not adequately pleaded contemporaneous trading because the Amended Complaint does not specifically allege the dates of the purchases and sales of Hirsh and Plaintiffs to demonstrate contemporaneous trading. Defendant therefore contends that the Plaintiffs have not **[*6]** demonstrated standing and the federal securities law claims must be dismissed.

In the September 16, 1996 decision granting Plaintiffs' motion for class certification, this Court addressed the issue as to the adequacy of Plaintiffs' allegations that they traded contemporaneously with the Defendants. Several Defendants had argued that the Plaintiffs did not have standing because they "pleaded the bare legal conclusion that they traded 'contemporaneously' with defendants but only plaintiff Redtail has specified in the Amended Complaint what it traded and when." Defs. Joint Mem. in Supp. of Class Cert. at 20. Addressing this argument, the Court stated:

> Defendants also argue that the proposed class representatives are inadequate because the proposed representatives, especially Hull Trading, are not contemporaneous sellers of securities and therefore lack standing. . . The Court disagrees. The Court finds that a motion to dismiss and not a motion for class certification would have been the proper vehicle to raise this argument. The Court nevertheless finds that Plaintiffs adequately alleged the standing of the proposed representatives such that they would have survived a pre-discovery **[*7]** motion to dismiss: any more detailed examination of the representative Plaintiffs' contemporaneous trading status before discovery and the development of the record would be premature. Defendants are of course free to reassert their argument under the contemporaneous trading rule after discovery as a defense to liability.

In re Motel 6 Securities Litigation, 1996 U.S. Dist. LEXIS 13642, 1996 WL 531819, at *2 (S.D.N.Y. Sept. 18, 1996). This holding is equally applicable to the argument Defendant Hirsh makes here.

## B. The RICO Claims

Defendant argues that the RICO claims must be dismissed because the Amended Complaint fails to plead (1) a causal connection between the RICO violation and Plaintiffs' injury, and (2) the required pattern of racketeering activity.

## 1. RICO's Proximate Cause Requirement

Defendant asserts that the RICO claims are governed by common law concepts of proximate cause, which are narrower than the proximate cause requirement for a § 10(b) insider trading claim based upon material omissions brought by contemporaneous traders on a public market. Defendant recognizes that for this particular type of § 10(b) securities fraud claim a plaintiff need not demonstrate **[*8]** contractual privity or actual reliance on a defendant's omissions of material inside information. The contemporaneous trading requirement serves as a proxy for contractual privity in a § 10(b) claim, and consequently, a plaintiff need not show actual reliance on the omission for standing in such an insider trading action. However, the RICO proximate cause requirement means that a plaintiff must prove both transaction and loss causation, which requires actual reliance, and therefore Defendant argues that Plaintiffs must show a direct relationship between the fraud-doing defendant and the RICO plaintiff. Insofar as Plaintiff has not adequately alleged privity with Defendant Hirsh or actual reliance on his material omission, Defendant contends that the RICO claims based on securities fraud cannot survive because Plaintiff has not adequately met the RICO proximate cause requirement. Defendant makes the argument that "since reliance--which is required under RICO, is not required under § 10(b) as broadly read to permit insider trading claims by contemporaneous traders on a public market, such claims are not actionable under RICO." Defs. Mem. in Supp. at 9.

The Supreme Court has held **[*9]** that [HN3] where a material omission serves as the basis for the § 10(b) claim,

> positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor [would] have considered them important in the making of this decision.

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54, 92 S. Ct. 1456, 1472, 31 L. Ed. 2d 741 (1972); see also duPont v. Brady, 828 F.2d 75, 78 (2d Cir. 1987) (stating that for a § 10(b) and Rule 10b-5 claim, "in instances of total non-disclosure, . . . it is of course impossible to demonstrate reliance" and finding that reliance may be presumed where the plaintiff proves that the facts withheld are material in the sense that a reasonable investor would have considered them important (quoting Titan Group, Inc. v. Faggen, 513 F.2d 234, 239 (2d Cir.), cert. denied, 423 U.S. 840, 96 S. Ct. 70, 46 L. Ed. 2d 59 (1975))). Once a plaintiff shows the materiality of the omission for a § 10(b) claim, and thus reliance, defendant can avoid liability by proving by a preponderance of the evidence that disclosure of that information would not **[*10]** have altered plaintiff's investment decision. See duPont,

828 F.2d at 78. In the instant case, Plaintiffs have adequately pleaded reliance to support a §
10(b) and Rule 10b-5 claim. The Court does not accept Hirsh's view that Plaintiffs,
contemporaneous traders on a public market, alleging insider trading claims as a predicate
act in a RICO action must show actual reliance on the omission and privity beyond that
required for the § 10(b) claim. The Supreme Court, and this Circuit, have recognized that
actual reliance need not be proved for a § 10(b) insider trading claim based on material
omissions and brought by contemporaneous traders because it is near impossible to prove
such reliance. To accept Defendant's argument--requiring proof of actual reliance for such §
10(b) nondisclosure claims which are pleaded as RICO predicate acts--would necessitate
application of a standard of proof for such claims that the Supreme Court and this Circuit
abandoned as unworkable. This Court declines to impose an actual reliance requirement for §
10(b) omission claims pleaded as predicate acts in RICO actions.

## 2. RICO Continuity Requirement

Defendant Hirsh argues that in considering **[*11]** whether the RICO pattern requirement is
met, including whether continuity is sufficiently alleged, the Court must separately evaluate
the pattern of racketeering acts by each defendant. Hirsh contends that Plaintiffs have not
sufficiently pleaded that he engaged in a pattern of racketeering activity because Plaintiffs do
not adequately plead that he engaged in two predicate acts which represent a threat of
continuity. Therefore, Hirsh argues that the RICO claims must be dismissed as against him.
Hirsh also makes an argument that while Plaintiffs make general conspiracy allegations,
Plaintiffs have not alleged a RICO conspiracy because (1) they make no claim under 18
U.S.C. § 1962(d), which is the exclusive means for asserting a RICO conspiracy claim, and
(2) Plaintiffs' conspiracy allegations are too conclusory.

The Court finds that Plaintiffs have adequately pleaded a pattern of racketeering activity by
Hirsh. Plaintiffs have alleged that the twenty-four Defendants, including Hirsh, were part of a
RICO conspiracy to trade on material, nonpublic information concerning Motel 6 and that this
scheme included a continuing conspiracy to conduct illegal acts to cover-up the alleged
tipping **[*12]** and insider trading activity concerning Motel 6. Plaintiffs have sufficiently
pleaded that Defendant Hirsh participated in two predicate acts: Hirsh made illegal trades on
inside information, utilizing mail or wire transmission to execute those trades, Am. Compl. PP
169, 194; Hirsh knowingly disclosed the inside information to Rosenblatt with the expectation
of benefit and with knowledge that Rosenblatt would trade on that information, Am. Compl. P
170; and Hirsh agreed to pay and paid Sanker for the tip, Am. Compl. P 174. Whether these
acts establish a threat of continued racketeering activity depends on the facts of each case,
H.J., Inc v. Northwestern Bell Tele. Co., 492 U.S. 229, 242, 109 S. Ct. 2893, 2902, 106 L.
Ed. 2d 195 (1989), and "external facts may . . . provide evidence of the requisite threat of
continuity. . . ." United States v. Kaplan, 886 F.2d 536, 542-543 (2d Cir. 1989), cert. denied,
493 U.S. 1076, 110 S. Ct. 1127, 107 L. Ed. 2d 1033 (1990). The Court need not examine
one defendant's actions in isolation when considering continuity.

The allegations concerning Hirsh's activities indicate that Hirsh was aware that the insider
trading was not limited to **[*13]** him, that others were involved in the tipping and trading,
including a Motel 6 insider, and that the information was disseminated to many others who
would trade on it. Plaintiffs allege a RICO conspiracy based upon close personal and business
relationships among the Defendants. The Amended Complaint contains factual allegations
that Defendants conspired to cover up the insider trading scheme through fraud, perjury,
money laundering, the widespread dissemination of inside information, and the willful failure
to disclose facts that they were under a legal duty to disclose. Am Compl. PP 69, 87, 164,
189, 200, 201, 206-07, 212, 224. Defendant Hirsh is specifically alleged to have played a
role in this widespread dissemination of inside information by tipping Rosenblatt and Odwak.
Am. Compl. PP 170-175. In the July 5, 1995 decision, the Court viewed the allegations in the
light most favorable to Plaintiffs and found that Plaintiffs had adequately pleaded continuity.
The allegations concerning Hirsh's insider trading, his extending the conspiracy by

disseminating information to others, his willingness to engage in the illegal actions of the conspiracy, and the close relationships among the **[*14]** Defendants, is enough at the pleading stage for this Court to find the same continuity with respect to Hirsh that this Court found in the July 5, 1995 decision. The Court gives Plaintiffs the benefit of the doubt on 12(b) (6) motions. Viewing the allegations in the light most favorable to the pleaders and drawing all reasonable inferences in their favor, the Court will deny Hirsh's motion to dismiss the RICO claims. Defendant Hirsh, however, may reassert these arguments and put the Plaintiffs to their proof in a post-discovery motion.

The Court also finds that Plaintiffs have adequately pleaded a RICO conspiracy claim. The heading of the very first claim cites 18 U.S.C. § 1962(d) and includes allegations of violations of that statute. The Court also finds that Plaintiffs' factual allegations sufficiently support the conspiracy claim against Defendant Hirsh. This Circuit has stated:

> HN4
> [To demonstrate a RICO conspiracy, the plaintiff must show] that the defendant agreed to commit the substantive racketeering offense [here, Section 1962(b) and (c)] through agreeing to participate in two predicate acts, . . . that he [knew] the general nature of the conspiracy and that the **[*15]** conspiracy extended beyond his individual role.

United States v. Rastelli, 870 F.2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982, 110 S. Ct. 515 (1989). In addition, those "two predicate crimes" must, as with every other RICO violation, constitute a pattern of racketeering activity. United States v. Ruggiero, 726 F.2d 913, 923 (2d Cir.), cert. denied, 469 U.S. 831, 105 S. Ct. 118 (1984). The Plaintiffs "need not prove that a conspirator-defendant agreed with every other conspirator, or knew all the other conspirators, or had full knowledge of all the details of the conspiracy." United States v. Rastelli, 870 F.2d at 828. As discussed above, Plaintiffs adequately pleaded that Hirsh engaged in two predicate acts which constituted a pattern, and the factual allegations support a conclusion that Hirsh knew the nature of the conspiracy and that the conspiracy extended beyond his role.

### C. New York General Business Law Claim

Plaintiffs' New York General Business Law § 349(a) claim against Defendant Hirsh is dismissed for the same reasons this Court dismissed this claim against Defendants Chammah, Kuznetsky, Schor, Thrasher and Marsh in the July 5, **[*16]** 1995 Opinion and Order. See In re Motel 6 Securities Litigation, 1995 U.S. Dist. LEXIS 9954, 1995 WL 431326, *6-7 (S.D.N.Y. July 20, 1995).

### D. Common Law Fraud Claim

Defendant argues that because a common law fraud claim requires privity and actual reliance, and the Amended Complaint does not allege direct dealings between the Plaintiffs and Hirsh or any facts which demonstrate direct reliance on the omissions, the fraud claim must be dismissed. This Court agrees to the extent that Plaintiffs have failed to alleged facts to support a claim that they directly relied on Defendants' omissions.

HN5 Common law fraud claims must be supported by factual allegations demonstrating plaintiff's actual, direct reliance on the misrepresentation or omission. See Golden Budha Corp. v. Canadian Land Co., 931 F.2d 196, 202 (2d Cir. 1991); Turtur v. Rothschild Registry

Int'l, Inc., 1993 U.S. Dist. LEXIS 11939, 1993 WL 338205, at *6 (S.D.N.Y. Aug. 27, 1993); see also Aniero Concrete Company, Inc. v. New York City Construction Authority, 1997 U.S. Dist. LEXIS 22, 1997 WL 3268, at *13 (S.D.N.Y. Jan. 3, 1997) ("The elements of fraudulent concealment under New York law are: a relationship between the contracting parties that creates a duty to disclose, knowledge [*17] of the material facts by the party bound to disclose, scienter, reliance, and damage."). Consequently, common law fraud claims

> are distinct from actions brought under the federal securities laws, which "permit a rebuttable presumption of reliance where a plaintiff purchases his shares on the open market."
> Common law fraud cases such as the present one are therefore to be distinguished from cases that involved a fraud on the market theory or other theories in which reliance on a material omission is presumed to have existed and which are applicable primarily in the context of federal securities fraud claims arising under section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

Turtur, 1993 U.S. Dist. LEXIS 11939, 1993 WL 338205, at *7 (citations omitted); see also Basic Inc. v. Levinson, 485 U.S. 224, 241-47, 108 S. Ct. 978, 988-91, 99 L. Ed. 2d 194 (1988) (observing that actions under § 10(b) and Rule 10b-5 are distinct from common law deceit and misrepresentation claims and are designed to add to the protections provided investors by common law). Plaintiffs contend that for a common law fraud claim based on an "omission" theory, reliance is presumed [*18] upon a showing that the omissions were material and that the defendant had a duty to disclose. Pls. Mem. in Opp. at 23 (citing Pollack v. Laidlaw Holdings, Inc., 1995 U.S. Dist. LEXIS 5909, 1995 WL 261518, at *11 (S.D.N.Y. May 3, 1995)). Rather, this is the standard for showing reliance under a § 10(b) or Rule 10b-5 securities fraud claim based on a fraud on the market theory, not common law fraud, and the sole case Plaintiffs cite for this proposition discussed reliance under § 10(b)-- not common law fraud. See Pollack, 1995 U.S. Dist. LEXIS 5909, 1995 WL 261518, at *11. Common law fraud claims do not enjoy a presumption of reliance once a material omission and duty to speak have been sufficiently pleaded. See Turtur, 1993 U.S. Dist. LEXIS 11939, 1993 WL 338205, at *7 ("Because common law fraud claims must be supported by a showing of direct reliance on the misrepresentation or omission, they are distinct from actions brought under the federal securities laws, which 'permit a rebuttable presumption of reliance where a plaintiff purchases his shares on the open market.'"); Schultz v. Commercial Programming Unlimited Inc., 1992 U.S. Dist. LEXIS 19557, 1992 WL 396434, at *4 (S.D.N.Y. 1992) (stating that "this Court will not permit Schultz to circumvent the [reliance] requirement [*19] by infusing the fraud on the market theory into his common law fraud action" and dismissing the common law fraud claim). Certainly, Plaintiffs have alleged facts to support a claim of reliance in their § 10(b) and Rule 10b-5 causes of action for insider trading based on a fraud on the market theory. However, where Plaintiffs' factual allegations focus solely on an insider trading conspiracy that perpetrated a fraud on the market, and Plaintiffs have alleged no connection to the Defendants other than the fact that Plaintiffs traded on the market contemporaneously with Defendants, Plaintiffs have not alleged facts to support a claim of actual, direct reliance on Defendants' omissions. In that Plaintiffs have failed to plead facts to support the direct reliance element of the common law fraud claim, the Court grants Defendant Hirsh's motion to dismiss the common law fraud claim. Cf., In re 3COM Securities Litigation, 761 F. Supp. 1411, 1419 (N.D. Cal. 1990) (finding that Plaintiff adequately pleaded a 10b-5 claim, but dismissing common law fraud claim because Plaintiff had not adequately pleaded actual reliance).

**E. Common Law Unjust Enrichment Claim**

Defendant assets **[*20]** that under New York law, unjust enrichment is a quasi-contract claim and therefore requires direct dealing between the parties to submit to the quasi-contract. In that Plaintiffs allege no such privity, direct dealings or actual relationship with Hirsh, Defendant argues that the unjust enrichment claim must be dismissed.

Plaintiffs counterargue that privity is not a required element of an unjust enrichment claim. In support of their position that privity is not an express requirement of the claim, Plaintiffs correctly point out the elements required:

> *HN6*
>
> In order to recover for unjust enrichment under New York law, a plaintiff must show that (1) defendant was enriched, (2) enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution.

Pls.' Mem. in Opp. at 24 (citing Violette v. Armonk Associates, L.P., 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995)); see also Dolmetta v. Unitak Nat'l Corp., 712 F.2d 15, 20 (2d Cir. 1983).

This Court agrees with Defendant Hirsh's contention that an unjust enrichment claim requires some type of direct dealing or actual, substantive relationship with a defendant. **[*21]** While the elements of the unjust enrichment claim quoted by Plaintiffs do not explicitly spell out such a requirement, those elements imply a more substantive relationship, or greater connection, between a defendant and plaintiff than Plaintiffs have alleged in this case. The requirements that a defendant be enriched at plaintiff's expense and that good conscience necessitate that defendant make restitution to plaintiff, clearly contemplate that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship.

In the instant case, Plaintiffs do not allege any direct dealings or actual, substantive relationship with Defendants other than a "contemporaneous" trading relationship. Plaintiffs claim that they sold their Motel Six shares or call options during the period in which Defendants purchased Six shares and options based upon material inside information regarding the impending acquisition of Motel Six by Accor. Plaintiffs contend that they would not have sold those shares or options had they known about the impending acquisition and that Defendants were unjustly enriched at Plaintiffs' expense in purchasing shares of Motel Six at the same **[*22]** time Plaintiffs sold their shares. These factual allegations do not sound in the quasi-contract common law claim of unjust enrichment. Without factual allegations that Plaintiffs had a more substantive connection to the Defendants beyond a contemporaneous trading relationship, Plaintiffs have not alleged facts to support a claim that Defendants were unjustly enriched at the Plaintiffs' expense and that Defendants should make restitution to Plaintiffs. Cf. Martes v. USLIFE Corp., 927 F. Supp. 146, 149 (S.D.N.Y. 1996) (holding that an unjust enrichment claim lies only where the defendant possesses money or received a benefit which defendant should not retain because it belongs to the plaintiff, and dismissing the unjust enrichment claim because defendant received nothing that belonged to plaintiff or had no contractual or other relationship with plaintiff). Therefore, the Court grants Defendant Hirsh's motion to dismiss the unjust enrichment claim.

**Conclusion**

For the reasons stated above, the Court denies Defendant Hirsh's motion to dismiss the RICO and Securities and Exchange Act claims, and grants the motion to dismiss the New York General Business Law claim, and common **[*23]** law fraud and unjust enrichment claims.

**SO ORDERED.**

**Dated: New York, New York**

**April 1, 1997**

**JOHN F. KEENAN**

**United States District Judge**

Service: **Get by LEXSEE®**
Citation: **1997 us dist lexis 3909**
View: Full
Date/Time: Monday, April 23, 2007 - 9:00 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®    About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.