UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X
ARMOND CORLEW, et al.,

                          Plaintiffs,

                                                **07 CV 3258 (KMW)**

            -against-


GENERAL ELECTRIC COMPANY, et al.,

                          Defendants.

————————————————————————X




**MEMORANDUM OF MONSANTO COMPANY AND
<u>PHARMACIA CORPORATION IN SUPPORT OF MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION.................................................................................................. 1

STANDARD OF REVIEW .................................................................................. 3

ARGUMENT........................................................................................................ 5

I.    The Court Should Dismiss Counts VII, X and XI, Because None Of
      These Counts Alleges That Monsanto's Manufacture And Sale Of PCBs
      Had Anything To Do With Plaintiffs' Alleged Property Damage....................... 5

      A.  The Manufacture And Sale Of PCBs Is Not,  As A Matter Of Law, An
          Ultrahazardous Activity.......................................................................... 5

      B.  Alleged Negligence In The Manufacture And Sale Of a Product Is Not
          Actionable As A Nuisance And The Complaint Does Not Allege That
          Monsanto Had Any Intent To Cause A Nuisance........................................ 9

II.   The Court Should Dismiss Counts V and VI Because The Complaint
      Does Not Allege That Monsanto Did Anything To Cause Emotional
      Distress And The Claims Are Duplicative Of The Product Liability Claim... 11

      A.  Intentional Infliction Of Emotional Distress. ............................................ 12

      B.  Negligent Infliction Of Emotional Distress................................................. 14

III.  The Court Should Dismiss Count XII Because There Is No Allegation
      That Monsanto Conferred Any Benefit On Plaintiffs. ..................................... 15

IV.   The Court Should Dismiss Count IV Because The Complaint Does
      Not Identify Any Specific Misrepresentations, Monsanto Had No
      Fraud-Based Duty Of Disclosure, And Plaintiffs Did Not Directly
      Rely On Anything Monsanto Did Or Did Not Say........................................... 17

V.    The Court Should Dismiss Count II Because The Complaint
      Affirmatively Establishes That The Statute Of Limitations Has Run............. 19

VI.   The Court Should Dismiss Counts VIII, IX and XIII, Because These
      Counts Merely Seek Additional Remedies For The Allegedly Tortious
      Conduct Asserted In Other Courts. ................................................................. 21

VII.  The Other Counts. ........................................................................................... 22

**CONCLUSION** .............................................................................................................. 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X
ARMOND CORLEW, et al.,

                        Plaintiffs,

                                    **07 CV 3258 (KMW)**

-against-

GENERAL ELECTRIC COMPANY, et al.,

                        Defendants.

————————————————————————X

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

       Defendants Monsanto Company and Pharmacia Corporation (collectively "Monsanto") respectfully submit this memorandum in support of their motion to dismiss all counts of plaintiffs' complaint except Counts I and III.

## <u>INTRODUCTION</u>

       As to Monsanto at least this action ought to be nothing more than a straightforward product liability case. Monsanto manufactured polychlorinated biphenyls ("PCB"s) and sold them to General Electric Company ("GE"). In Counts I and III of their complaint, plaintiffs claim that Monsanto is strictly liable to them for the injuries that the PCBs allegedly caused to their property and, alternatively, that Monsanto was negligent.

       Unfortunately, plaintiffs have not chosen to settle for pleading product liability theories. Instead, they have larded up their complaint with numerous additional theories that have no relevance to the real issues. These theories serve no viable purpose and do nothing but distract the Court and the parties. The Court should dismiss them.

1

For example, plaintiffs assert claims for abnormally dangerous or ultrahazardous activity, trespass, and nuisance (Counts VII, X and XI). As a matter of law, these theories do not apply to the manufacture and sale of products, only to the use made of them. There is no meaningful allegation that Monsanto used the PCBs in any manner that caused any alleged damage to plaintiffs.

Similarly, plaintiffs assert claims for negligent and intentional infliction of emotional distress (Counts V and VI). Under New York law, these are highly disfavored claims. Negligent infliction of emotional distress lies only when the defendant owes some duty unique to plaintiff, as opposed to society in general. Intentional infliction of emotional distress lies only when the defendant's conduct is utterly intolerable in a free society. The complaint does not even try to make such allegations. In addition, these torts are only available when some other recognized cause of action, such as products liability, does not apply.

Plaintiffs have also attempted to assert a claim for fraud (Count IV). As it relates to misrepresentations, the complaint has not identified a single misrepresentation, a single author of such a misrepresentation, nor a single reason why it is a misrepresentation. Thus, the complaint violates Rule 9(b). As it relates to omissions, the complaint identifies no reason why Monsanto had any duty to disclose anything. In any event, plaintiffs do not allege, and could not in good faith allege, that they directly relied on anything Monsanto did or did not do.

Plaintiffs claim that Monsanto breached warranties of fitness and merchantability (Count II). Under New York law, the statute of limitations on such claims is four years from the date the product was delivered. Since the government banned PCBs in the late

1970s, it is obvious that any PCBs to which plaintiffs were exposed must have been delivered before 1980, more than 25 years before this untimely lawsuit was filed.

Finally, plaintiffs have added several claims for additional remedies: medical monitoring, fear of cancer and punitive damages. These are not free-standing causes of action (Counts VIII, IX and XIII). Rather, they depend on plaintiffs' ability to establish liability under some other cause of action and hence are entirely duplicative of the product liability claims.

## STANDARD OF REVIEW

As a general rule, in reviewing a motion to dismiss, the Court takes all "factual allegations in the complaint as true and draws inferences from those allegations in the light most favorable to the plaintiff." Cromer Finance Ltd. v. Berger, 137 F.Supp. 2d 452, 468 (S.D.N.Y. 2001). This rule applies, however, only to "well-pleaded facts." Commer v. Keller, 64 F.Supp. 2d 266, 269 (S.D.N.Y. 1999). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not prevent a motion to dismiss." Martinez v. Dr. Williams R., 186 F.Supp. 2d 353, 355 (S.D.N.Y. 2002).

In particular, the Court need not credit "[g]eneral, conclusory allegations" when "they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2nd Cir. 1995). Numerous cases in this District following Hirsch have so held. E.g., Cromer, 137 F.Supp. 2d at 468; Commer, 64 F.Supp. 2d at 269; In re Doubleclick Inc. Privacy Litigation, 154 fs2d 497, 506 (S.D.N.Y. 2001).

## ARGUMENT

I.    **The Court Should Dismiss Counts VII, X and XI, Because None Of These Counts Alleges That Monsanto's Manufacture And Sale Of PCBs Had Anything To Do With Plaintiffs' Alleged Property Damage.**

Count VII alleges liability for ultrahazardous activity. Count X purports to allege a nuisance, while Count XI sounds in trespass. The common thread uniting these claims is that none of them allege that Monsanto had anything to do with any allegedly improper disposition of PCBs.

The only specific allegations against Monsanto are that it manufactured and sold PCBs. Such conduct does not, as a matter of law, make the manufacturer liable for any of those three causes of action, even if plaintiffs allege that some third party improperly disposed of the PCBs.

A.    **As A Matter Of Law The Manufacture And Sale Of PCBs Is Not An Ultrahazardous Activity.**

Count VII purports to state a cause of action for ultrahazardous activity. The manufacture and sale of PCBs is not, as a matter of law, an ultrahazardous activity, and there is no specific allegation that Monsanto had anything whatever to do with the disposition of those PCBs on plaintiffs' property. Thus, Count VII does not state a cause of action.

The New York Court of Appeals has endorsed strict liability for abnormally dangerous or ultrahazardous activities based on § 520 of the Restatement (Second) of Torts. Doundoukalis v. Town of Hempstead, 368 N.E.2d 24, 27 (N.Y. 1977). Under the Restatement, "[w]hether the activity is an abnormally dangerous one is determined by the court." Restatement § 520 comment l.

As a general rule, "the doctrine of ultrahazardous activity does not apply to products." McCarthy v. Sturm, Ruger and Co., 916 F.Supp. 366, 371 (S.D.N.Y. 1996), aff'd, 119 F.3d 148 (2nd Cir. 1997). Rather, it "typically applie[s] to . . . **activities** such as blasting" or atomic power. Dubai Islamic Bank v. Citibank, N.A., 126 F.Supp. 2d 659, 669 (S.D.N.Y. 2000) (emphasis added).

Thus, every case to consider the issue has held that the manufacture and sale of PCBs is not an abnormally dangerous or ultrahazardous activity. The leading case is City of Bloomington v. Westinghouse Elec. Corp., 891 F.2d 611 (7th Cir. 1989). Monsanto sold PCBs to Westinghouse, which installed them in electrical transformers and capacitors that it manufactured in its plant in Bloomington. Westinghouse allowed the PCBs to escape to a landfill and the city's sewer system.

The city sued Monsanto for, among other things, abnormally dangerous or ultrahazardous activity. The District Court dismissed that count and the Seventh Circuit affirmed. First, the Restatement limits liability to "one who carries on an abnormally dangerous activity," so "merely manufacturing dangerous products" does not qualify. 891 F.2d at 615-16 (citations and internal punctuation omitted):

> Cases requiring liability impose liability for the ultrahazardous activity as a result of the use of the product. To recognize liability of a manufacturer or distributor would virtually make them the insurer for such products as explosives, hazardous chemicals or dangerous drugs, even though such products are not negligently made nor contain any defects.

Id. at 616 (citations omitted) (emphasis original).

Moreover, the injury was "the result of actions taken by a third party." 891 F.2d at 617. The Court was "unwilling to extend the doctrine of strict liability for an

abnormally dangerous activity to the party whose activity did not cause the injury." Id. at 616.

In Richmond, Fredericksburg & Potomac R.R. v. David Industries, Inc., 787 F.Supp. 572 (E.D. Va. 1992), the railroad owned a recycling facility that was contaminated with PCBs from scrap gas air conditioners brought to the site by Washington Gas. Washington Gas filed a third party claim for ultrahazardous activity against the manufacturer of the air conditioners.

The Court dismissed the claim as "fatally defective." 787 F.Supp. at 575. Strict liability for ultrahazardous activity applies to "abnormally dangerous activities, not substances." Id. Citing City of Bloomington, the Court held that "[s]trict liability for use of a product cannot be imposed on the manufacturer." Id. Accord, Fisher v. Monsanto Co., 863 F.Supp. 285, 289 (W.D. Va. 1994) ("plaintiff's ultrahazardous activity claim does not pertain to Monsanto"; in selling PCBs, Monsanto did not carry on any ultrahazardous activity involving plaintiff"); U.S. v. Union Corp., 277 F.Supp. 2d 478, 495 (E.D. Pa. 2003) ("the manufacture and sale of PCBs is not an abnormally dangerous activity as a matter of Pennsylvania law").

There is a split in authority as to whether disposal of PCBs constitutes an ultrahazardous activity. Compare State of New York v. Shore Realty Corp., 759 F.2d 1032, 1038, 1052 (2nd Cir. 1985) (presence of PCBs in corroded and leaking tanks, along with eight other chemicals that really are toxic, "constitutes abnormally dangerous activity"), with Davis, 787 F.Supp. at 576 ("storage and disposal of air conditioners containing PCBs are not abnormally dangerous or ultrahazardous activities," because reasonable care can avoid the risk).

6

Assuming <u>arguendo</u> that the improper disposal of PCBs is ultrahazardous activity, there is no well-pleaded allegation that Monsanto had any role in such a disposal. It is true that the complaint alleges that Monsanto engaged in ultrahazardous activity by "manufacturing, producing, creating, using, releasing and dispersing PCBs," and by "allowing those PCBs to remain in the environment to date." ¶ 101. That is precisely the sort of conclusory, inconsistent allegation that is entitled to no weight.

Elsewhere in the complaint, the specific allegations make it crystal clear that Monsanto was not responsible for any improper use or disposition. For example, ¶¶ 11 and 45 allege that Monsanto "designed, manufactured and sold all the PCBs-containing products" to GE and that such products were "utilized by GE at its Main Plant." Paragraph 11 also alleges that GE "released, and continues to release, PCBs into the air, soil, surface water and/or groundwater."

The other specific allegations in the complaint about the use to which the PCBs were put are all addressed to GE's alleged conduct:

- "From the 1930's to date and continuing, GE knew that it was discharging, releasing and emitting hazardous PCBs into the surrounding environment. ¶ 35.

- PCBs were "discharged, released, emitted and migrated onto plaintiffs' properties," [a]s a result of GE's improper use and improper disposal." ¶ 41.

- "PCBs were and continue to be released, discharged, emitted and migrated onto plaintiffs' properties," [a]s a direct result of GE's improper use and disposal." ¶ 55.

Monsanto does not believe that these charges against GE have any factual merit. But the Court decides a motion to dismiss based on the allegations in the complaint. The specific allegations in the complaint allege only that GE "used" the PCBs in a fashion

that allegedly led to the contamination of plaintiffs' property.  The allegations against

Monsanto in ¶ 115 are precisely the kind of conclusory allegations, "belied by more

specific allegations" elsewhere, that <u>Hirsch</u> and its progeny dictate must be ignored.

> **B.    Alleged Negligence In The Manufacture And Sale Of a Product Is Not Actionable As A Nuisance And The Complaint Does Not Allege That <u>Monsanto Had Any Intent To Cause A Nuisance.</u>**

Count X purports to sound in nuisance.  Under New York law, a defendant is

liable for nuisance if its conduct is "a legal cause of the invasion" of plaintiffs' interest in

the use or enjoyment of their land and such invasion is:

> (1) intentional and unreasonable;

> (2) negligent or reckless, <u>or</u>

> (3) actionable under the rules governing liability for abnormally dangerous activity.

<u>Scribner v. Summers</u>, 84 F.3d 554, 559 (2nd Cir. 1996), <u>quoting Copart  Indus., Inc. v.</u>

<u>Consolidated Edison Co.</u>, 362 N.E.2d 968, 971 (N.Y. 1977) (emphasis added by the

Court).

Count X does not satisfy that test.  As previously explained, this case does not

involve any abnormally dangerous activity by Monsanto.  Monsanto's alleged negligence

in the manufacture and sale of PCBs has no connection with the alleged invasion of

plaintiffs' property and there is no allegation that Monsanto intended any such invasion.

The Complaint does allege that Monsanto was negligent in the manufacture and

sale of PCBs.  That kind of alleged negligence, however, does not constitute a nuisance

because it has no direct causal connection to any alleged invasion of plaintiffs' property:

> A product which has caused injury cannot be classified as a nuisance to hold liable the manufacturer or seller for the product's injurious effects,

> since a defendant who does not control the enterprise in which the product is used is not in the situation of one who creates the nuisance; consequently, negligent manufacture or failure to warn of product-caused dangers does not give rise to a nuisance cause of action.

American Law of Product Liability § 1.18 (3rd Ed. 1987). Accord, Sabater v. Lead Industries Ass'n, Inc., 704 N.Y.S.2d 800, 806 (S. Ct. 2000) ("nuisance is the wrongful maintenance of something, whereas negligence relates to the manner of doing the thing"). Nothing in the complaint makes any meaningful allegation that Monsanto had anything to do with the alleged invasion of plaintiffs' property.

To establish an intentional nuisance, plaintiffs must plead that Monsanto either "acted for the purpose of causing" an invasion of plaintiffs' property, or knew that such invasion was "substantially certain to result" from its conduct. Scribner, 84 F.3d at 559, quoting Copart, 362 N.E.2d at 972-73.

The complaint repeatedly alleges that Monsanto's "conduct" "caused" or "resulted in" the alleged invasion. Compl. ¶¶ 114-15; 117. Nothing in the complaint, however, alleges that Monsanto intended that result to occur or knew that it was substantially certain to occur as a result of Monsanto's activities. Thus, the complaint does not state a cause of action for nuisance.

### C.    The Complaint Does Not Allege Either That Monsanto Caused PCB Discharges On Plaintiffs' Property Or Had Any Intent To Trespass.

Count XI purports to allege that Monsanto trespassed on plaintiffs' property because Monsanto "intentionally persisted in its conduct and continued to discharge PCBs onto plaintiffs' properties." Compl. ¶ 123. For two separate reasons, this Count does not state a cause of action.

9

First, it does not allege that **Monsanto** did anything that rises to the level of a trespass. In order to hold Monsanto liable for trespass, plaintiffs must plead that Monsanto did something that directly caused an invasion of their property:

> [T]he claim for trespass requires an affirmative act constituting or resulting in an intentional intrusion upon West Realty's property . . . . The third-party complaint and supporting papers are deficient in detailing any allegations of such conduct on Winston's part . . . .

Stage Club Corp. v. West Realty Co., 622 N.Y.S.2d 948, 951 (App. Div. 1995). Accord, Tornheim v. Federal Home Loan Mortgage Corp., 988 F.Supp. 279, 281 (S.D.N.Y. 1997) (trespass must be "a direct consequence of the defendant's act").

As previously explained, the only specific allegations in this complaint are that GE, not Monsanto, was responsible for disposing of the PCBs. Count XI repeatedly asserts the PCBs ended up on plaintiffs' property and that Monsanto knew or should have known of that result. Compl. ¶¶ 122; 124-27. But it never alleges that Monsanto **caused** that result to occur.

To be sure, ¶ 123 does allege that Monsanto "continued to discharge PCBs onto plaintiffs' properties." Compl. ¶ 122. The word "continued" can only mean that Monsanto persisted in some prior conduct. But the only prior conduct alleged in the complaint is "manufacturing, producing, creating, using, releasing and dispersing PCBs," Compl. ¶ 101, which does not allege that Monsanto had anything to do with any discharge of PCBs onto plaintiffs' property. Paragraph 122 is another illustration of the kind of conclusory allegation that does not satisfy Rule 12(b)(6).

Moreover, Count XI does not allege the requisite intent to establish a trespass. To be liable for trespass, Monsanto "must intend the act which amounts to or produces the unlawful invasion," and "the intrusion must be at least be the immediate or inevitable

consequence" of that act.  Philips v. Sun Oil Co., 121  N.E. 2d 249, 251 (N.Y. 1954).

There is no allegation that Monsanto intended that the PCBs end up on plaintiffs'

property or that Monsanto took any other intentional act of which that was an inevitable

consequence.

Once again, the complaint dances around the requisite allegations.  Monsanto

"knew that its PCB-containing products were . . . intentionally discharged."  Compl. ¶

122.  Monsanto "knew or should have known" that this "intentional discharge" was

migrating onto plaintiffs' property.  Id. ¶ 124.  Monsanto's conduct "resulted in" an

intrusion on plaintiffs' property.  Id. ¶ 126.  None of this alleges that Monsanto

intentionally did any act that directly caused any contamination of plaintiffs' property.

If plaintiffs want to allege in Counts VII, X or XI that Monsanto had anything to

do with the disposition of the PCBs, the Court should require them to say so directly and

not by innuendo.  Any such allegations, of course, would expose plaintiffs and their

counsel to Rule 11 sanctions, which is why they prefer to proceed via innuendo.

II.     **The Court Should Dismiss Counts V and VI Because The Complaint Does Not Allege That Monsanto Did Anything To Cause Emotional Distress And The Claims Are Duplicative Of The Product Liability Claim.**

Count V of the complaint purports to assert a claim for negligent infliction of

emotional distress, while Count VI purports to allege intentional infliction of emotional

distress.  Under New York law, these are disfavored claims, available only when no other

tort claim provides such relief, and then only when the defendant has negligently or

intentionally breached some duty owed directly to the plaintiff.

### A.    Intentional Infliction Of Emotional Distress.

Intentional infliction of emotional distress is a "highly disfavored tort," Lee v.

McCue, 410 F.Supp. 221, 226 (S.D.N.Y. 2006), whose elements are "rigorous" and

"difficult to satisfy." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2nd Cir. 2001):

> The conduct must be so outrageous in character, and so extreme in degree, as to
> go beyond all possible bounds of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized society.

Id. (citations and internal punctuation omitted). Allegations that the conduct was

"tortious, or even criminal," or that it "would support an award of punitive damages," are

insufficient as a matter of law to satisfy that standard. Treglia v. Town of Manlius, 68

F.Supp. 2d 153, 160 (N.D.N.Y. 1999).

Count VI alleges that Monsanto intentionally caused emotional distress by

"knowing [sic] and willfully manufacturing, creating, producing and using PCBs," and by

allegedly failing to give sufficient warning of their alleged dangers. Compl. ¶ 97.

Producing a useful product hardly sounds like "utterly intolerable behavior," and a mere

failure to warn about an allegedly "widespread and deadly" side effect does not, as a

matter of law, rise to "outrageous conduct that is intolerable." Pavlik v/. Lane

Limited/Tobacco Exporters Int;l, 135 F.3d 876, 890 (3rd Cir. 1998).

Moreover, intentional infliction of emotional distress "is a theory of recovery that

is to be invoked only as a last resort, when traditional tort remedies are unavailable."

Thomas v. County of Putnam, 262 F.Supp. 2d 241, 250 (S.D.N.Y. 2003), and cases there

cited. Plaintiffs' negligence and strict liability theories are "traditional tort remedies"

fully adequate to redress any emotional distress damages that they might be able to prove.

12

### B.    Negligent Infliction Of Emotional Distress.

Negligent infliction of emotional distress claims are also "extremely limited" and "narrowly define[d]." In re Air Crash Disaster at Cove Neck Long Island, 885 F.Supp. 434. 438-39 (E.D.N.Y. 1995). New York allows such recovery in two circumstances:

    A.    When the plaintiff suffers emotional distress from viewing death or serious physical injury of a member of his or her immediate family: or

    B.    When defendant breaches a direct duty to plaintiff causing emotional distress.

Id.

There is no suggestion that plaintiffs satisfy the first requirement. Nothing in the complaint suggests that Monsanto owed any direct duty to plaintiffs, separate and apart from "a general duty to society." Id. In Cove Neck, for example, a passenger jet crashed in plaintiffs' back yard, "undoubtedly" causing them emotional injury. The Court held they had no cause of action for emotional distress, because the airline owed no "direct" duty to them:

> In the New York cases in which defendant owes a direct duty to plaintiff for the purposes of collecting purely emotional damages the parties share a relationship analogous to an implied contractual relationship.

885 F.Supp. at 439. Nothing in the complaint suggests that plaintiffs had any implied contractual relationship with Monsanto, or that Monsanto owed them anything more than a general duty owed to the public.

Moreover, New York courts recognize negligent infliction of emotional distress only in "those circumstances where traditional theories of recovery" do not provide a remedy. McCue, 410 F.Supp. 2d at 226-27 and cases there cited (internal punctuation

13

omitted).  When alternative theories, such as the product liability theories pleaded in

Counts I and III, "provide a complete source of recovery," id. at 227, negligent infliction

of emotional distress will not lie.

Once again, plaintiffs have attempted to turn a product liability claim into

something that it is not.

III.    **The Court Should Dismiss Count XII Because There Is No Allegation That**
        **Monsanto Conferred Any Benefit On Plaintiffs.**

Count XII purports to state a cause of action for unjust enrichment.  The essence

of an unjust enrichment claim under New York law is that the plaintiff has "conferred a

benefit on the defendant, thereby resulting in that defendant's unjust enrichment."  In re

JetBlue Airways Corp. Privacy Litigation, 379 F.Supp. 2d 299, 329 (E.D.N.Y. 2005).

Unless defendant "actually benefited [sic] from" plaintiff's actions, there is no unjust

enrichment.  Kaye v. Grossman, 202 F.3d 611, 616 (2nd Cir. 2000).

This complaint fails that test on two grounds.  First, there is no allegation that

plaintiffs have spent any money on testing or cleanup, so there is no allegation that they

conferred a benefit on anyone.  The complaint alleges that they "have and/or will incur

the cost of determining the nature and extent of contamination on their properties and the

cost of restoring their properties."  Compl. ¶ 131.

Plaintiffs are in the best position to know whether they have spent any money on

remediating their property.  Had they made such expenditures, the complaint would say

so directly.  It would not resort to evasions like "have and/or will."

What plaintiffs are really saying is that, if, as and when they spend any money on

remediation, they will have a claim for unjust enrichment.  That kind of speculative,

hypothetical injury does not even confer Article III standing on them. The "irreducible constitutional minimum of standing" under Article III requires:

> an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal punctuation omitted).

Second, there is no allegation that plaintiffs conferred any benefit on Monsanto. To be sure, the complaint asserts that Monsanto owes them a duty to reimburse them for any expenses they may ultimately incur in the future. Compl. ¶ 132. But that is precisely the kind of naked legal conclusion that courts ignore on a motion to dismiss." Martinez, 186 F.Supp. at 355.

In fact, Monsanto has no duty to clean up plaintiffs' property. Under CERCLA, the manufacturer and seller of a chemical has no liability for cleanup costs if someone else improperly disposes of the chemical. Freeman v. Glaxo Wellcome, Inc., 189 F.3d 160, 164 (2nd Cir. 1999). Courts have specifically applied that analysis to PCBs manufactured and sold by Monsanto. Union Corp., 277 F.Supp. 2d at 490-91. Since the complaint does not contain any specific allegations that Monsanto participated in any allegedly improper disposition, there will never be any basis for a claim for unjust enrichment.

**IV.    The Court Should Dismiss Count IV Because The Complaint Does Not Identify Any Specific Misrepresentations, Monsanto Had No Fraud-Based Duty Of Disclosure, And Plaintiffs Did Not Directly Rely On Anything Monsanto Did Or Did Not Say.**

Count IV purports to sound in fraud, both by omission and by misrepresentation. The misrepresentation claim does not comply with Rule 9(b) because plaintiffs identify no specific misrepresentations. The omission claim fails because Monsanto does not have a fraud-based duty to disclose anything to plaintiffs. Both claims fail because plaintiffs did not directly rely on Monsanto's silence.

Rule 9(b) requires that "all averments of fraud" must be "stated with particularity." In this Circuit, that that means that:

> [T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

Pilarczyk v, Morrison Knuden Corp., 965 F.Supp. 311, 320 (S.D.N.Y. 1997), quoting Mills v Polar Molecular Corp., 12 F.3d 1170, 1175 (2nd Cir. 1993).

This complaint casually refers to Monsanto's "misrepresentations," Compl. ¶ 88, but it otherwise does not even try to satisfy the requirements of Rule 9(b). A complaint that "does not identify any such misstatements" does not comply with Rule 9(b) "and may be disregarded." Gurary v. Winehouse, 190 F.3d 37, 42 n.6 (2nd Cir. 1999).

Count IV does allege sundry omissions by Monsanto. But it does not allege any basis on which Monsanto had a fraud-based duty to disclose the alleged dangers of PCBs to plaintiffs. As a result, it fails to state a cause of action for fraudulent omissions.

Under New York law, concealment of facts supports a fraud claim "only if the non-disclosing party has a duty to disclose." Remington Rand Corp. v. Amsterdam-

Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2nd Cir. 1995). That "ordinarily" requires a "fiduciary or other relationship signifying a heightened level of trust." Id.

Monsanto sold the PCBs to GE or other customers. Since a manufacturer does not occupy a fiduciary relationship with a purchaser, Hygienic Specialties Co. v. H.G. Salzman, Inc., 302 F.2d 614, 623 (2nd Cir. 1962), Monsanto owed no fiduciary duties to GE, let alone to plaintiffs.

There is an exception to that general rule. "In the context of a business transaction," there may be a duty to disclose if:

1.    "[O]ne party possesses superior knowledge, not readily available to the other"; and

2.    The party with superior knowledge "knows that the other is acting on the basis of mistaken knowledge."

TVT Records v. Island Defense Jam Music Group, 412 F.3d 82 (2nd Cir. 2005). In these circumstances, the "disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact." Remington, 68 F.3d at 1484.

Plaintiffs cannot satisfy this requirement because they do not allege, and could not in good faith allege, that they were ever parties to a business transaction with Monsanto. They do not allege, and could not in good faith allege, that during the course of that nonexistent transaction, it was apparent to Monsanto that plaintiffs were operating under any misconceptions about PCBs.

The Complaint fails to state a claim for fraud for another, closely related reason: plaintiffs did not **directly** rely on any of those omissions. Giving the complaint its

17

broadest intendment, plaintiffs may have alleged that GE directly relied on Monsanto's alleged statement or omissions in deciding how to use and dispose of PCBs. Compl. ¶ 89. Any reliance by plaintiffs could only be derivative of GE"s reliance and that is insufficient as a matter of law.

As the Court held in <u>Falise v. American Tobacco Co</u>, 94 F.Supp. 2d 316 (E.D.N.Y. 2000):

> New York law requires a party seeking recovery for an action sounding in fraud to establish that <u>he was misled</u>, rather than merely alleging that the misrepresentations and omissions in question were relied on by a third party.

94 F.Supp. 2d at 354 (emphasis original), <u>citing</u> <u>Cement and Concrete Workers District Council Welfare Fund v. Lollo</u>, 148 F.3d 194, 196 (2nd Cir. 1998) ("plaintiff does not establish the reliance element of fraud . . . by showing only that a third party relied on a defendant's false statements"). <u>Accord</u>, <u>Morris v. Castle Rock Entertainment, Inc.</u>, 246 F.Supp. 2d 290, 296 (S.D.N.Y. 2003) ("third party reliance is not enough to sustain a claim for common law fraud").

For all of these reasons, Count IV does not state a cause of action for fraud.

## V.    The Court Should Dismiss Count II Because The Complaint Affirmatively Establishes That The Statute Of Limitations Has Run.

Count II alleges that Monsanto warranted that its PCBs were fit for their intended use and of good and merchantable quality. Compl. ¶ 63. It alleges that Monsanto breached that warranty because its product included PCBs. <u>Id.</u> ¶ 64. Monsanto does not understand how supplying the specified product is somehow a breach of warranty. In any event, the statute of limitations has clearly run.

When an affirmative defense such as the statute of limitations is apparent on the face of the complaint, the Court can dismiss the complaint under Rule 12(b)(6).  The "test is an objective one and dismissal is appropriate when the facts from which the knowledge may be imputed are clear from the pleadings." Salinger v. Projectavision, Inc., 934 F.Supp. 1402, 1408 (S.D.N.Y. 1996) and cases there cited.  Accord, Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1042 (2nd Cir. 1992).

The Uniform Commercial Code (UCC) governs claims for breach of warranty of fitness or merchantability.  Orlando v. Novurania of America, Inc., 162 F.Supp. 2d 220, 223 (S.D.N.Y. 2001).  The statute of limitations for such claims is four years from the date the cause of action accrued.  N.Y. UCC § 2-725(1)

Under § 2-275(2), the cause of action accrues "when the breach accrues, regardless of the aggrieved party's lack of knowledge of the breach."  Claims of breach of warranty of fitness or merchantability "accrue[] on the date seller sold the machine to worker's employer, rather than on date of injury."  Orlando, 162 F.Supp. 2d at 223 and cases there cited.

The complaint alleges that the government banned production of PCBs in the 1970's.  Compl. ¶¶ 23.  The actual dates were January 1, 1979 for production and June 30, 1979 for distribution.  15 U.S.C. § 2605(e)(3)(A) (two years and two and a half years from January 1, 1977, effective date of the Toxic Substances Control Act).

As a result, whatever PCBs plaintiffs claim to have encountered must have been delivered before 1980.  If the PCBs did violate the warranties of fitness and merchantability, the cause of action accrued on the date of delivery.  Since that date is at least 25 years prior to the filing of this complaint, the action is plainly time barred.

19

The Court should dismiss Count II because the complaint clearly discloses that the statute of limitations has run.

## VI.     The Court Should Dismiss Counts VIII, IX and XIII, Because These Counts Merely Seek Additional Remedies For The Allegedly Tortious Conduct Asserted In Other Courts.

The complaint pleads separate counts for medical monitoring (Count VIII), fear of cancer (Count IX), and punitive damages (Count XIII).  The Court should dismiss these purported causes of action because they seek remedies to redress the tort claims purportedly alleged elsewhere.  Since all of these counts are purely derivative of some other claim, they are not a separate basis for relief.

New York cases that have allowed plaintiffs to seek medical monitoring have done so "as an element of consequential damages" from some recognized tort claim. Askey v. Occidental Chem. Corp., 477 N.Y.S.2d 242, 246 (App. Div. 1984).  While the proof problems of such damages are "formidable," the "future expense of medical monitoring[] could be a recoverable consequential damage," if plaintiffs can make the requisite proof. Id. at 247,

New York courts have followed Askey in the related area of fear of cancer.  They have allowed recovery of such damages only after the defendant's liability has been established and the plaintiff has presented proof that his or her fear is "reasonable and attributable to the physician's negligence." Bossio v. Fiorillo, 620 N.Y.S.2d 596, 598 (App. Div. 1994).  Accord, Dangler v. Town of Whitestown, 672 N.Y.S.2d 188 (App. Div. 1998) (allowing evidence of fear of cancer claims in damage phase after finding that town negligently operated its landfill).

Similarly, punitive damages depend upon the existence of an underlying cause of action for actual damages. "A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action." Rocanova v. Equitable Life Assurance Soc'y, 634 N.E.2d 940, 945 (N.Y. 1994).

Counts VIII, IX, and XIII are not free-standing claims. They are merely claims for additional remedies for some other allegedly tortious conduct and the Court should therefore dismiss them.

## VII.    The Other Counts.

Monsanto has not at this time sought to dismiss the other two counts of the complaint. In this District, however, the filing of a timely motion to dismiss parts of a complaint suspends the defendant's obligation to answer the remaining parts. Business Incentives Co. v. Sony Corp., 397 F.Supp. 63, 64-65 (S.D.N.Y. 1975); Ricciuti v. New York Transit Auth., 1991 WL 221110 (S.D.N.Y. 1991) at *2; Alex. Brown & Sons Inc. v. Marine Midland Banks, Inc., 1997 WL 97837 (S.D.N.Y. 1997) at *6-7. Accord, Finnegan v. University of Rochester Med. Ctr., 180 F.R.D. 247, 249-50 (W.D.N.Y. 1998).

Monsanto will file an appropriate response to these counts after the Court rules on its motion to dismiss.

## **CONCLUSION**

For these reasons, Monsanto and Pharmacia respectfully ask the Court to dismiss

all counts of plaintiffs' complaint except Counts I and III.


Dated: New York, New York                    LEADER & BERKON LLP
      April 30, 2007

                                    By: _____
                                        JAMES K. LEADER (JL-9417)
                                        630 Third Avenue, 17th Floor
                                        New York, New York 10017
                                        (212) 486-2400


                                            -and-

                                        Thomas M. Carney, Esq.
                                        Kenneth R. Heineman, Esq.
                                        Carol A. Rutter, Esq.
                                        Adam Miller, Esq.
                                        Mark G. Arnold, Esq.
                                        HUSCH & EPPENBERGER, LLC
                                        The Plaza in Clayton Office Tower
                                        190 Carondelet Plaza, Suite 600
                                        St. Louis, MO 63105
                                        (314) 480-1500

                                        *Attorneys for Defendants*
                                        *Monsanto Company and Pharmacia*
                                        *Corporation*


TO:    Lawrence P. Biondi, Esq.
           Law Offices of Lawrence P. Biondi
           81 Main Street, Suite 504
           White Plains, New York 10601

           *Attorneys for Plaintiffs*