UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ARMAND CORLEW, VINCENT RIGGI,
STEPHEN CERNAK, JR., RUTH DEPAOLO
and ANGELO RIGGI, individually and on                    07 CV 3258 (KMW)
behalf of a class similarly situated,

          Plaintiffs,

   -against-

GENERAL ELECTRIC COMPANY,
MONSANTO COMPANY, PHARMACIA
CORPORATION and SOLUTIA, INC.

         Defendants.
----------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO GENERAL ELECTRIC, MONSANTO AND PHARMACIA MOTIONS TO DISMISS


LAW OFFICES OF LAWRENCE PERRY BIONDI
Attorneys for Plaintiffs ARMAND CORLEW,
VINCENT RIGGI, STEPHEN CERNAK, JR.,
RUTH DEPAOLO and ANGELO RIGGI,
individually and on behalf of a class similarly situated
81 Main Street, Suite 504
White Plains, New York 10601
(914) 946-5093

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT
GE'S AND MONSANTO'S MOTIONS
TO DISMISS SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

POINT I
PLAINTIFFS' CLAIMS ARE NOT
TIME BARRED AS ALLEGED BY GE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

POINT II
PLAINTIFFS' COMPLAINT PROPERLY STATES
A CLAIM FOR FRAUD AND CONCEALMENT . . . . . . . . . . . . . . . . . . . . . . .  10

POINT III
PLAINTIFFS' COMPLAINT PROPERLY STATES
CLAIMS FOR NEGLIGENT AND INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS, FEAR OF
CONTRACTING ILLNESS, AND MEDICAL MONITORING . . . . . . . . . . . . .  18

POINT IV
PLAINTIFFS' COMPLAINT PROPERLY STATES
A CLAIM FOR DAMAGES BASED UPON
ABNORMALLY DANGEROUS OR ULTRAHAZARDOUS
ACTIVITY, NUISANCE AND TRESPASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

A.    Private Nuisance and Trespass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B.    Abnormally Dangerous or Ultrahazardous Activity . . . . . . . . . . . . . . . . . 31

POINT V
PLAINTIFFS' ALLEGATIONS OF WILFUL AND
WANTON CONDUCT, SUPPORTING A CLAIM FOR
PUNITIVE DAMAGES, SHOULD NOT BE STRICKEN ................. 37

POINT VI
PLAINTIFFS' CLAIMS FOR BREACH OF
WARRANTY SHOULD NOT BE DISMISSED ........................ 39

POINT VII
PLAINTIFFS HAVE ALLEGED VALID CLAIMS
FOR UNJUST ENRICHMENT .................................... 42

CONCLUSION ............................................... 43

# PRELIMINARY STATEMENT

Plaintiffs Armand Corlew, Vincent Riggi, Stephen Cernak, Jr., Ruth Depaolo and Angelo Riggi, individually and on behalf of a class similarly situated (collectively "Plaintiffs"), respectfully submit this Memorandum of Law in opposition to the motions of Defendants Monsanto Company and Pharmacia (collectively "Monsanto") and General Electric Corporation ("GE") seeking dismissal of all or part of Plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, including a statute of limitations argument addressed by GE to several of Plaintiffs' claims. Defendants also move to dismiss Plaintiffs' claims for fraudulent concealment under Fed. R Civ. P. 9(b) for failure to allege same with sufficient particularity. For the reasons set forth in further detail below, these motions should be denied.

Contrary to Defendants' contentions, none of Plaintiffs' claims is time barred; Plaintiffs' complaint properly states a claim for fraud and concealment; Plaintiffs' complaint properly, states claims for negligent and intentional infliction of emotional distress, fear of contracting illness, and medical monitoring; Plaintiffs' complaint properly states a claim for damages based upon abnormally dangerous or ultrahazardous activity, nuisance and trespass; Plaintiffs' allegations of wilful and wanton conduct, supporting a claim for punitive damages, should not

1

be stricken; and Plaintiffs have alleged valid claims against Defendants for unjust

enrichment and CERCLA cost recovery.

## ARGUMENT

### GE'S AND MONSANTO'S MOTIONS
### TO DISMISS SHOULD BE DENIED

It is well-settled that the task of the court in ruling on a Rule 12(b)(6)

motion is "merely to assess the legal feasibility of the complaint, not to assay the

weight of the evidence which might be offered in support thereof." Eternity

Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176

(2d Cir. 2004). When deciding a motion to dismiss, courts must accept all factual

allegations in the complaint as true, and draw all reasonable inferences in the

plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d

Cir.2002).

As this Court stated in Orlando v. Novurania of Am., Inc., 162 F.Supp.2d

220, 223-24 (S.D.N.Y.2001):

> The standard of review on a motion to dismiss is heavily weighted in
> favor of the plaintiff. The Court is required to read a complaint
> generously, drawing all reasonable inferences from the complaint's
> allegations. *California Motor Transport Co. v. Trucking Unlimited*,
> 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on
> a motion to dismiss for failure to state a claim upon which relief may
> be granted, the court is required to accept the material facts alleged in
> the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d

2

1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992) [quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)].

See also Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

## POINT I

## PLAINTIFFS' CLAIMS ARE NOT
## TIME BARRED AS ALLEGED BY GE

In the statute of limitations context, dismissal is appropriate only if the complaint itself clearly shows that the claim is out of time. Id. at 250. Since the statute of limitations is an affirmative defense under Fed.R. Civ. P. 8(c), a pleading need not anticipate it, and where a complaint is merely silent as to the date of accrual, a Rule 12(b) motion to dismiss on statute of limitations grounds must be denied. Id. at 251 [citing Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir.1995), and 5 Charles Wright & Arthur Miller, Federal Practice and Procedure: Civil 2d § 1276 (2d Ed.1990 & 1999 pocket part)]. Thus, the survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred. Id.

Moreover, although the parties can raise the defense of the statute of limitations on a motion to strike under Rule 12(b), if there is a question of fact as

to the existence of the defense, the issue cannot be determined on affidavits. See

Competitive Associates, Inc. V. Fantastic Fudge, Inc., 58 F.R.D. 121 (S.D.N.Y.

1973).

In the case at bar, GE argues that the First, Third, Fifth, Sixth, Seventh,

Tenth and Eleventh causes of action alleged in the Complaint are time barred

under New York Civil Practice Law and Rules ("C.P.L.R.") § 214-c(2).  That

statute provides, in relevant part, that:

> the three year period within which an action to recover damages for
> personal injury or injury to property caused by the latent effects of
> exposure to any substance or combination of substances, in any form,
> upon or within the body or upon or within property must be
> commenced shall be computed from the date of discovery of the
> injury by the plaintiff or from the date when through the exercise of
> reasonable diligence such injury should have been discovered by the
> plaintiff, whichever is earlier.

Here, the complaint does not set forth the date when Plaintiffs discovered

that their property was contaminated with PCBs and that they had been exposed to

their harmful effects.  As noted above, there is no requirement that the complaint

do so in anticipation of a statute of limitations-based affirmative defense.

However, as set forth in the Affidavits of the individual Plaintiff class

representatives, annexed to the accompanying Declaration of Lawrence P. Biondi,

Esq. as Exhibits A through E, the applicable date of discovery was after April 20,

4

2006, on which date soil samples were collected from the Plaintiffs' properties.

Inasmuch as this action was commenced by the filing of a Summons and Verified

Complaint in the Supreme Court, New York County, on March 13, 2007, it is well

within the three-year statute of limitations prescribed by C.P.L.R. § 214-c(2) based

upon Plaintiffs' discovery of the contamination.  Plaintiffs similarly did not learn

of the elevated PCB levels in their blood until after their blood samples were taken

for testing on March 14, 2007.  They never learned from any other sources about

the PCB contamination.  See Plaintiffs' Affidavits.

Moreover, none of allegations in the complaint demonstrate, on the face of

the complaint itself, that this action is untimely because Plaintiffs should have,

through the exercise of reasonable diligence, discovered their injuries sooner.

In this respect, GE contends that Plaintiffs knew, or should have known, that they

had been injured from PCB contamination in at least 2003, which is the date set

forth in the complaint as the completion of GE's remedial investigation.   This

contention has no merit whatsoever, and should be rejected.

In the first instance, this argument ignores the additional allegations in the

Complaint that immediately precede and follow the allegations about GE's

remedial investigation.  Specifically, the complaint also alleges that:

"From on or about the 1930's to date and continuing, GE intentionally failed

to advise the public and the plaintiffs herein that it was discharging, releasing and emitting hazardous PCBs into the surrounding environment" (Complaint, ¶35);

"GE has incorrectly maintained, and continues to maintain, that PCBs were never released, discharged, emitted and/or migrated outside the confines of its Main Plaint into the surrounding environment" (Complaint, ¶ 42); and

GE never tested the surrounding environment because it knew that the surrounding environment was contaminated with PCBs (Complaint, ¶ 43).

Thus, contrary to GE's assertions, the Complaint in no way supports the conclusion that Plaintiffs should have known that their properties had been contaminated because *GE's site* was contaminated and *GE* completed an initial remedial investigation with respect to its own property in 2003. Rather, the Complaint alleges that GE *concealed* from Plaintiffs and the public the fact that there had been migration to the surrounding areas.

Moreover, the Revised Feasability Study Report prepared by GE in May 2004, relevant portions of which are annexed to the accompanying Biondi Declaration as Exhibit F, continued to deny, at pp. 29-31, any hazardous impact to the surrounding areas or water supply. It thereafter merely recommended, at pp. 31-34, the collection of further data in order to assess ecological impact.

The New York State Department of Environmental Conservation's Record of Decision dated March 2005, based on GE's remedial investigation, similarly states, for example, that "Off-site contamination (soil, sediment, surface water, or

groundwater) was not found during the course of site investigation" (p. 21); that there was no indication of site-related impact to the quality of water in the Mohawk River (pp. 38, A-4); and that nearby municipal wells were not contaminated above health-based drinking water standards (p. A-10).  See Exhibit G to the attached Biondi Declaration.

Accordingly, there is absolutely no basis for concluding that Plaintiffs' causes of action are time-barred based on their allegations concerning GE's performance of the remedial investigation study of its own property.

In this respect, this case is wholly distinguishable from DiStefano v. Nabisco, Inc., 282 A.D.2d 704, 724 N.Y.S.2d 444 (2d Dep't 2001), on which GE relies. In that case, the groundwater underneath the plaintiffs' homes was contaminated by a nearby manufacturing plant.  The contamination was first discovered in 1984, and the residents were advised not to use their well water for drinking or cooking. In 1985, 25 homes were connected to the public water supply. Articles about the contamination appeared in the *New York Times,* *Newsday,* and a local newspaper, and the EPA kept the residents informed of the results of its investigation. In 1992, the EPA held a public hearing that was attended by several plaintiffs who expressed concerns about, among other things, their diminished property values. Thus, the Appellate Division held that the

7

plaintiffs' commencement of an action in 1996 was untimely, as they had been aware of the groundwater contamination and its effect on their property values as early as 1984 and certainly by 1992.

Here, no such facts are contained within the complaint, and as Plaintiffs specifically state in their affidavits, they never learned from any source that a problem, or potential problems existed with respect to PCB contamination and exposure to their properties prior to the soil testing in April 2006. See Plaintiffs' Affidavits. *Their properties* were not listed as contaminated sites, and no remedial investigation of *their properties* was done prior to that time, despite GE's investigation of its own property, the results of which asserted that there had been no off-site contamination.

In addition, even if there was a limitations problem, which Plaintiffs in no way concede, the Complaint's allegations of concealment and misrepresentation on the part of GE with respect to migration to the surrounding areas would support a tolling of the statute of limitations based on equitable estoppel anyway, or at the very least, an issue of fact in this regard [see further discussion of Plaintiffs' allegations concerning GE's fraudulent concealment at Point II, *infra*]. Under New York law, the Court may use its equity jurisdiction to extend the applicable limitations period when the defendant either fraudulently conceals the cause of

8

action from the plaintiff, General Stencils, Inc. v. Chiappa, 18 N.Y.2d 125, 272

N.Y.S.2d 337, 219 N.E.2d 169 (1966), or when the defendant induces the plaintiff

by positive misrepresentation to abstain from the suit until after the statute of

limitations period has run. Simcuski v. Saeli, 44 N.Y.2d 442, 406 N.Y.S.2d 259,

377 N.E.2d 713 (1972); see Jordan v. Ford Motor Co., 73 A.D.2d 422, 426

N.Y.S.2d 359 (4th Dep't 1980); cf. Atkins v. Exxon Mobil Corp., 9 A.D.3d 758,

780 N.Y.S.2d 666 (3d Dep't 2004) (issues of fact existed as to whether claims of

Village residents and property owners for various injuries arising out of

contamination of Village water supply with gasoline additive MTBE were time

barred under § 214-c where, although they knew that MTBE had been found in

well for more than three years prior to commencement of action, there was support

for their claim that their failure to investigate was the result of their reliance on

Department of Health and Village representations that it posed no hazard).

Finally, in the alternative, in the event the Court finds that Plaintiffs'

allegations about GE's remedial investigation somehow support GE's statute of

limitations argument, Plaintiffs ask the Court to allow them to amend the

Complaint to clarify their allegations, and to set forth the facts contained in

Plaintiffs' affidavits concerning their discovery of the contamination.

## POINT II

## PLAINTIFFS' COMPLAINT PROPERLY STATES
## A CLAIM FOR FRAUD AND CONCEALMENT

Monsanto and GE contend that Plaintiffs have failed to allege fraudulent concealment (separate Fourth counts of the Complaint against each Defendant) with sufficient particularity so as to properly identify the misrepresentations upon which they rely.  They also argue that they had no duty to disclose the dangers of PCBs to Plaintiffs, and that Plaintiffs have failed to demonstrate reliance upon any misrepresentations or omissions.   These arguments should be rejected.

In order to make out a *prima facie* case of fraud, the plaintiff must show that there has been misrepresentation of material facts, falsity, scienter, reliance and injury.  See Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 56-57, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999).  A fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information.  See Kaufman v. Cohen, 307 A.D.2d 113, 119-120, 760 N.Y.S.2d 157 (2003 ). In this respect, "[m]isrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud." City of New York v. Lead Indus. Assn., 190 A.D.2d 173, 177, 597 N.Y.S.2d 698 (1st Dep't 1993).  Thus, contrary to

10

Monsanto's and GE's contentions, it is not necessary for Plaintiffs to allege a

special fiduciary or business relationship with Monsanto or GE in order to

maintain a claim for fraud.

Thus, for example, in <u>City of New York v. Lead Indus. Assn.</u>, <u>supra</u>, the

Appellate Division, First Department, upheld a fraud cause of action based on

allegations and circumstances extremely similar to those presented here.  In that

case, as recited by the Court, the plaintiff alleged that:

> the defendant manufacturers of lead-based paint had known for years,
> from their own privately financed studies, that lead-based interior
> house paint presented a health threat, putting children particularly at
> risk. Despite their decision not to use such paint on toys and
> children's furniture, they nevertheless not only continued to
> manufacture lead-based paint for interior surfaces, but also concealed
> their knowledge of the hazard, suppressed its dissemination, and
> lobbied against governmental regulation that would have required
> appropriate warnings to the public. Indeed, well into the 1950s,
> having known of the hazard for three decades, defendants continued
> to advertise and promote their lead-based product as appropriate for
> uses which might result in exposure to young children through
> inhalation, ingestion or absorption.

Finding that these allegations – which are virtually identical in nature to

those set forth in the Complaint in the case at bar – were sufficient to support a

claim for fraud – the Court stated:

> Misrepresentations of safety to the public at large, for the purpose of
> influencing the marketing of a product known to be defective, gives
> rise to a separate cause of action for fraud (*Young v. Robertshaw*

11

*Controls Co.,* 104 A.D.2d 84, 481 N.Y.S.2d 891 *appeal dismissed* 64
N.Y.2d 885; *Angie v. Johns Manville Corp.,* 94 A.D.2d 939, 463
N.Y.S.2d 956). It is important to note that defendants are alleged not
simply to have marketed a product that failed, but rather to have led
the public to believe in the safety of a product that defendants knew
to be a health hazard, and to have engaged in a scheme that concealed
this knowledge from the public, while at the same time actively
resisting any governmental efforts to regulate the product through
appropriate manufacturing controls or labeling requirements.

Id., 597 N.Y.S.2d at 699-700.

Here, Plaintiffs' complaint similarly sets forth the long history of

affirmative misrepresentations, omissions and concealment by Monsanto and GE,

all designed to grossly mislead Plaintiffs and the public in general, in order to keep

them ignorant of the terrible hazards of PCB exposure for purposes of

profitability.  For example, Plaintiffs allege that:

- Monsanto knew of the hazards of PCBs but, because of the
  profitability of the enterprise, continued to manufacture PCBs
  (Complaint, ¶24);

- Monsanto's knowledge dated back decades, to the 1930's, 1940's and
  1950's (Complaint, ¶¶ 25-26);

- Monsanto definitively knew as of 1968 that PCB's caused very
  serious health problems, including cancer, liver damage, and
  problems with reproduction (Complaint ¶¶ 28-30);

- Monsanto since the 1930's has possessed medical and scientific data
  which clearly indicates that their PCB-containing products were
  hazardous to the health and safety of the public and environment, but
  prompted by pecuniary motives, Monsanto ignored and failed to act

12

upon said medical and scientific data and conspired to deprive the public, including plaintiffs, of said medical and scientific data and further wilfully, intentionally and wantonly failed to warn plaintiffs of the serious health and safety risks associated with contamination of their properties (Complaint ¶ 58; see also ¶ 77);

– Monsanto, instead of warning of the hazards of PCBs, of which it had superior knowledge, set out to sell even more PCBs (Complaint ¶ 78);

– Monsanto established in 1969 an ad hoc committee for the purpose of implementing a plan to conceal material information from the public in the interest of profit (Complaint ¶¶ 79-83);

– Monsanto's concealment included falsifying laboratory results from tests done on rats to indicate that PCBs did not appear to be carcinogenic, whereas the actual results indicated that they were "slightly tumorigenic" (Complaint ¶ 82);

– Monsanto failed to reveal to governmental authorities and to warn of the extent of the contamination that it knew already had occurred before the time PCBs were banned, including contamination to the GE Main Plant and surrounding areas (Complaint ¶¶ 83-85, 87);

– Monsanto failed to instruct corporate customers, including GE, of the need to properly use and dispose of PCB containing products (Complaint ¶ 86);

– The general public, GE and Plaintiffs relied on Monsanto's conduct, which caused the continued sale, use and improper disposal of PCBs, all to Plaintiffs' detriment (Complaint ¶¶ 89-90);

– GE knew that PCB's were hazardous long before Monsanto stopped manufacturing and selling them (Complaint ¶34);

– from on or about the 1930's to date and continuing, GE intentionally failed to advise the public and the plaintiffs herein that it was discharging, releasing and emitting hazardous PCBs into the

13

surrounding environment, but rather, consciously suppressed such facts (Complaint ¶¶ 35, 172-173);

– GE incorrectly maintained, and continues to maintain, that PCBs were never released, discharged, emitted and/or migrated outside the confines of its Main Plant into the surrounding environment (Complaint ¶ 42);

– GE continuously affirmatively represented to the Department of Environmental Conservation, the public and Plaintiffs that PCBs were never released into the surrounding environment of the GE Main Plant, despite knowing that this was false (Complaint ¶ 174); and

– Plaintiffs relied on the above misrepresentations and concealment to their detriment by continuing to reside on their properties and be exposed to PCBs (Complaint ¶176).

Plaintiffs submit that these allegations more than adequately apprise GE and Monsanto of the claims being made against them for Rule 9(b) purposes, and that they adequately allege both a legally cognizable duty and reliance as well.

Notably, although Monsanto contends that Plaintiffs have not alleged direct reliance on Monsanto's own misstatements or omissions, this plainly is not the case. The Complaint clearly alleges that Plaintiffs relied upon Monsanto's words and conduct with respect to the hazards posed by PCBs. The Complaint also alleges that Plaintiffs relied on GE's misstatements and omissions concerning, *inter alia*, the supposed lack of contamination to the surrounding areas.

In addition, Monsanto is incorrect in contending that a claim for fraud

14

cannot lie where the misrepresentation is made to and relied upon by a third party, rather than the plaintiff. To the contrary, courts have accepted that even where misrepresentations are made to a third party, a plaintiff may state a claim for fraud under New York Law so long as it relied on those misrepresentations. See, e.g., Peerless Mills, Inc. v. American Tel. & Tel. Co., 527 F.2d 445 (2d Cir. 1975) (third party can recover damages for a fraudulent misrepresentation if he can establish that he relied upon it to his detriment, and that the defendants intended the misrepresentation to be conveyed to him).

Moreover, allegations pertaining to PCBs such as those in the case at bar have been upheld against Monsanto on motions to dismiss before.

For example, in Hurd v. Monsanto Co., 908 F.Supp. 604 (S.D.Ind. 1995), the plaintiffs were long-time employees of Westinghouse Electric Corporation ("Westinghouse") in Indiana. At the facility where the plaintiffs worked, PCBs were used in the manufacture of component parts of electrical power capacitors. The plaintiffs sued both Monsanto and Westinghouse alleging, as in the case at bar, that they "were aware that PCBs were unreasonably dangerous and likely to cause injury," and that despite this knowledge, the defendants either intentionally withheld information concerning the hazards associated with exposure to PCBs, or affirmatively misrepresented their safety. The District Court denied Monsanto's

15

motion to dismiss the plaintiffs' fraud claims as insufficiently specific under Rule

9(b), stating:

> Defendant Monsanto has moved to dismiss Count 3 of the Second
> Amended Complaint for failure to allege fraud with particularity.
> Rule 9(b) of the Federal Rules of Civil Procedure requires that "the
> circumstances constituting fraud . . . be stated with particularity."
> This rule, however, must be read in conjunction with the general
> requirements of Rule 8(a), which states that a plaintiff need only
> plead a "short and plain statement of the claim showing that the
> pleader is entitled to relief." Taken together, a plaintiff alleging fraud
> must state "the identity of the person making the misrepresentation,
> the time, place, and content of the misrepresentation, and the method
> by which the misrepresentation was communicated to the plaintiff."
> *UniQuality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992);
> *Bankers Trust Co. v. Old Republic Insurance Co.,* 959 F.2d 677, 683
> (7th Cir.1992).

> Here, plaintiffs allege that Monsanto knew that PCBs were dangerous
> and that it affirmatively and continuously misrepresented to the
> public and Westinghouse's Bloomington employees that PCBs were
> safe. Plaintiffs also allege that Monsanto represented "that no worker
> exposed to PCBs from the 1930's to the 1970's suffered any adverse
> health effects," when in fact such representations were false. (Second
> Amended Complaint, ¶¶ 10; *see also* ¶¶ 32). Finally, the Complaint
> alleges that plaintiffs relied on these misrepresentations, all of which
> Monsanto knew to be false.

Here, as set forth above, Plaintiffs similarly allege that Monsanto

fraudulently misrepresented the hazards of PCBs and further, that it actively

concealed from them the fact that the GE Main plant had been contaminated, and

that Plaintiffs relied upon Monsanto's misrepresentations.

16

The Hurd court went on to find that such allegations, though general, were sufficient to satisfy Rule 9(b)'s requirements in this case, stating:

> The time period involved and the content of the misrepresentations are identified.[FN9] Although no specific person is identified, we note that courts are "more lenient in sustaining pleadings where [as here] the transactions involved are complex or cover a long period of time." *In re Eli Lilly & Co., Prozac Products Liability Litigation,* 789 F.Supp. 1448, 1456 (S.D.Ind.1992); *see also Terrell v. Childers,* 836 F.Supp. 468, 475 (N.D.Ill.1993). In short, despite its protestations to the contrary, Monsanto is simply not left guessing about the general nature of the alleged fraud and it has enough information to answer the allegations. *See Levine v. Prudential Bache Properties, Inc.,* 855 F.Supp. 924, 931 (N.D.Ill.1994). Accordingly, Monsanto's motion to dismiss is denied.
>
> FN9. Although Monsanto spills much ink arguing that it cannot be held liable for a fraudulent omission under Indiana law, we note that all Rule 9(b) requires is that plaintiffs "set forth the date and content of the statements or omissions that it claimed to be fraudulent. [They are] not required to go further and allege the facts necessary to show that the alleged fraud was actionable." *Midwest Commerce Banking v. Elkhart City Centre,* 4 F.3d 521, 522 (7th Cir.1993).

Precisely the same reasoning is applicable here, and Defendants' motions to dismiss Plaintiffs' fraud and concealment claims should be denied.

## POINT III

## PLAINTIFFS' COMPLAINT PROPERLY, STATES CLAIMS FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, FEAR OF CONTRACTING ILLNESS, AND MEDICAL MONITORING

Monsanto and GE also attack Counts V, VI, VIII and IX of the Complaint, which respectively allege against each Defendant negligent infliction of emotional distress, intentional infliction of emotional distress, fear of contracting PCB-related illness, and entitlement to medical monitoring. Defendants argue that Plaintiffs cannot maintain the foregoing claims as separate causes of action because they failed to establish the requisite elements, and because such claims would be duplicative of Plaintiffs' other claims for negligence and product liability. These arguments are incorrect and should be rejected.

New York has long recognized claims to recover damages for emotional distress where a plaintiff has been exposed to a toxic substance or traumatic insult. See Ferrara v. Galluchio, 5 N.Y.2d 16, 21, 176 N.Y.S.2d 996, 152 N.E.2d 249(1958) (where patient who went to dermatologist for treatment of X-ray burns sustained in course of therapy administered by defendant physicians was informed by dermatologist that she must have tissue examined every six months as cancer might develop, and, as a result of such statement, she developed severe

cancerophobia, she was entitled to recover for such mental anguish in her successful malpractice action against defendant physicians).

To maintain a cause of action to recover damages for emotional distress following exposure to a toxic substance and for fear of contracting a future disease, including medical monitoring for same, a plaintiff must establish both that he or she was in fact exposed to a disease-causing agent and that there is a "rational basis" for his or her fear of contracting a disease.  See Prato v. Vigliotta, 253 A.D.2d 746, 748, 677 N.Y.S.2d 386 (2d Dep't 1998); Abusio v. Consolidated Edison Co. of N.Y., 238 A.D.2d 454, 656 N.Y.S.2d 371n (2d Dep't 1997); Wolff v. A-One Oil, 216 A.D.2d 291, 292, 627 N.Y.S.2d 788 (2d Dep't 1995).  Where there is a clinically-demonstrable presence of a toxin in the plaintiff's body, or some other indication of a toxin-induced disease, a plaintiff has established such a "rational basis."  See Prato supra; Abusio supra; DiStefano v. Nabisco, Inc., supra, 2 A.D.3d 484, 485, 767 N.Y.S.2d 891 (2d Dep't 2003); see also Atkins v. Exxon Mobil Corp., supra, 9 A.D.3d 758, 759 (3d Dep't 2004); Allen v. General Elec. Co., 32 A.D.3d 1163, 821 N.Y.S.2d 692 (4th Dep't 2006).

These criteria *specifically have been held to apply to exposure to PCBs.* See Abusio supra (in order to maintain cause of action for fear of developing cancer or for future medical monitoring costs following exposure to toxic

substance like polychlorinated biphenyls (PCBs), plaintiff must establish both that

he or she was in fact exposed to disease-causing agent and that there is rational

basis for his or her fear of contracting the disease; rational basis has been

construed to mean clinically demonstrable presence of PCBs in plaintiff's body, or

some indication of PCB-induced disease *i.e.*, some physical manifestation of PCB

contamination).

Here, Plaintiffs allege extreme emotional distress and mental anguish

associated with the contamination of their properties and the risk of developing

serious PCB-related cancers, diseases and injuries, and that they already have been

found to have elevated levels of PCBs in their bodies (see Complaint ¶¶ 94, 98,

105, 106, 110, 181, 185, 192, 193, 197, 198).  These allegations are substantiated

by Plaintiffs' affidavits attesting to elevated PCB levels in their blood (see

Exhibits A through D to the Biondi Declaration).  In accordance with the above

authorities, these allegations properly support valid and recognizable claims for

emotional distress, fear of contracting a future disease, and entitlement to medical

monitoring, such that there is no basis for striking them from the complaint.  See

also Osarczuk v. Associated Universities, Inc., 36 A.D.3d 872, 830 N.Y.S.2d 711

(2d Dep't 2007) (denying defendants' motions for summary judgment on cause of

action seeking medical monitoring in case wherein plaintiffs were exposed to

hazardous materials such as trichloroethane, trichloroethene, perchloroethylene, and other volatile organic compounds, as well as heavy metals such as chromium, cadmium, lead, iron, and mercury).

Moreover, the clinically demonstrable presence of toxins in the body is not the sole requirement for claims for emotional distress, fear of illness and medical monitoring. This was addressed in Patton v. General Signal Corp., 984 F.Supp. 666 (W.D.N.Y. 1997), an action arising out of the plaintiff's exposure to asbestos. In that case, the defendant sought summary judgment seeking dismissal of the plaintiff's claims for future medical monitoring on the grounds that such damages were not available under New York law absent a clinically demonstrable presence of asbestos in his body, or some physical manifestation of prior asbestos contamination. The District Court disagreed, performing a detailed analysis of applicable cases, and finding that under New York law, the clinically demonstrable presence of a toxic substance in the plaintiff's body was not a *sine qua non* of such a claim.

Justice Scheindlin also addressed these issues on defense motions to dismiss in In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, 379 F.Supp.2d 348 (S.D.N.Y. 2005), as well as the plaintiff's claims for negligent and intentional infliction of emotional distress. In that case, the plaintiffs alleged that

21

they had been exposed to MTBE in their drinking water.  The defendants argued, similar to Defendants' arguments in the case at bar, that their conduct in refining, manufacturing, and distributing gasoline containing MTBE did not rise to the level of an "extreme and outrageous act" that would support a claim for intentional infliction of emotional distress. Plaintiffs responded that defendants knowingly contaminated drinking water with a chemical suspected to cause cancer, and that such behavior was more extreme and outrageous than other conduct courts have found adequate to support emotional distress claims.

Justice Scheindlin upheld the plaintiffs' claims at the pleading stage, finding that they had stated a cause of action under New York law, under which "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress," citing Dana v. Oak Park Marina, Inc., 230 A.D.2d 204, 208, 660 N.Y.S.2d 906 (4th Dep't 1997) (reckless conduct is encompassed within tort denominated intentional infliction of emotional distress).

As the Dana Court stated:

[the New York] Court [of Appeals], in a series of cases, has "adopted" the rule formulated in section 46(1) of the Restatement (Second) of Torts that "[o]ne who by extreme and outrageous conduct intentionally *or recklessly* causes severe emotional distress to another is subject to liability for such emotional distress [emphasis added]"

(*see, Howell v. New York Post Co., supra,* at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699; *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349; *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86; *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215). Moreover, the Court has stated that the tort has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, *or disregard of a substantial probability of causing,* severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress [emphasis added]" (*Howell v. New York Post Co., supra,* at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699). The italicized phrase comports with general descriptions of recklessness in tort matters (*see, e.g., Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47, *cert. denied* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698; *Modern Settings v. Prudential-Bache Sec.,* 603 F.Supp. 370, 372; *see generally,* Prosser & Keeton, Torts §§ 34, at 214 [5th ed.]) and is similar to the Restatement's description of recklessness (*see,* Restatement [Second] of Torts §§ 46[1], comment *i;* §§ 500). The Third Department similarly has considered reckless conduct to be encompassed within the tort that is commonly referred to as the intentional infliction of emotional distress (*see, Olmstead v. Federated Dept. Stores,* 208 A.D.2d 979, 981, 617 N.Y.S.2d 225, *lv. denied* 85 N.Y.2d 811, 631 N.Y.S.2d 287, 655 N.E.2d 400), and the Second Department has concluded that a complaint alleging reckless conduct states a cause of action for intentional infliction of emotional distress (*see, Beck v. Libraro,* 220 App.Div. 547, 221 N.Y.S. 737; *see also, Mitran v. Williamson,* 21 Misc.2d 106, 197 N.Y.S.2d 689; *see generally,* 2 N.Y. PJI 2d 47-48 [1997 Cum. Supp.]).

230 A.D.2d at 208-209, 660 N.Y.S.2d at 909 - 910.

Plaintiffs' claims for intentional infliction of emotional distress are similarly valid here, wherein the Complaint alleges acts by the Defendants in causing and contributing to the contamination of their properties with PCBs in a manner that

was not only intentional, but reckless in its disregard for the health and safety of

Plaintiffs and the public.

## POINT IV

## PLAINTIFFS' COMPLAINT PROPERLY STATES A CLAIM FOR DAMAGES BASED UPON ABNORMALLY DANGEROUS OR ULTRAHAZARDOUS ACTIVITY, NUISANCE AND TRESPASS

Monsanto also seeks dismissal of Counts VII, IX and XI of the Complaint, which allege claims for Abnormally Dangerous/Ultrahazardous Activity, Nuisance and Trespass, respectively. GE seeks dismissal of the claims for Nuisance and Trespass, but does not challenge the claim for Abnormally Dangerous/ Ultrahazardous Activity.

### A.    Private Nuisance And Trespass

As Defendants correctly contend, and as the New York Court of Appeals stated in Copart Inds. v. Consolidated Edison, 41 N.Y.2d 564, 569, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977), a defendant is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land, and such invasion is: (1) intentional and unreasonable, (2) negligent or reckless, *or* (3) actionable under the rules governing liability for abnormally dangerous conditions or activities. Id. [citing, *inter alia*, Restatement, Torts, 2d [Tent Draft No. 16], § 822;  Prosser, Torts [4th ed], p 574; 2 NY PJI 653-654].  Because these criteria are stated in the disjunctive, a plaintiff need only

25

prove one of them to sustain a claim for private nuisance.

Here, in light of GE's failure to challenge Plaintiffs' allegations that it engaged in an abnormally dangerous or ultrahazardous activity, its challenge to their claims for nuisance similarly must fail at the outset. As further discussed in section B below, a party who engages in an abnormally dangerous or ultrahazardous activity faces strict liability for resulting harm.

With respect to trespass, as the Second Circuit summarized in Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1006):

> Under New York law, trespass is the intentional invasion of another's property. *See Ivancic v. Olmstead,* 66 N.Y.2d 349, 352, 497 N.Y.S.2d 326, 488 N.E.2d 72 (1985), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986); *Phillips v. Sun Oil Co.,* 307 N.Y. 328, 331, 121 N.E.2d 249 (1954); *see also New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1361 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). To be liable, the trespasser "need not intend or expect the damaging consequences of his intrusion[;]" rather, he need only "intend the act which amounts to or produces the unlawful invasion." *Phillips,* 307 N.Y. at 331, 121 N.E.2d 249; *see New York State Nat'l Org. for Women,* 886 F.2d at 1361. The intrusion itself "must at least be the immediate or inevitable consequence of what [the trespasser] willfully does, or which he does so negligently as to amount to willfulness." *Phillips,* 307 N.Y. at 331, 121 N.E.2d 249; *see also Ivancic,* 66 N.Y.2d at 352, 497 N.Y.S.2d 326, 488 N.E.2d 72.

Here, GE argues that Plaintiffs' complaint fails to allege the requisite "intentionality" elements of claims for nuisance and trespass, which GE

26

overstates.  Monsanto similarly contends that Plaintiffs have not alleged that it caused the PCB discharges onto their properties, or that it had any intent to trespass.

Defendants' contentions ignore the allegations in the Complaint that, *inter alia*, Monsanto's and GE's conduct "caused the unreasonable emission, disposal and release of dangerous and toxic PCBs onto plaintiffs' properties" (Complaint ¶ 115, 202), and that Monsanto's and GE's conduct "has resulted in an entry and intrusion onto the properties of the plaintiffs without privilege, permission, invitation, or justification" (Complaint ¶ 126, 213).  The Complaint also alleges that GE knew, since the 1930's, that it was discharging, releasing and emitting hazardous PCBs into the surrounding environment (Complaint ¶ 35); and that Monsanto knew that its PCB products were dangerous and that they were intentionally being discharged and migrating onto Plaintiffs' properties (Complaint ¶ 122-124).

As such, Plaintiffs clearly have alleged a claim for trespass in that the intrusion was the immediate or inevitable consequence of Defendants' willful and negligent acts (see <u>Scribner</u>, <u>supra</u>). Plaintiffs' trespass claim further is supported by Plaintiffs' allegations that, despite it superior knowledge of the hazards of PCBs and its knowledge that they were not being safely disposed of and were in

27

fact being discharged into the surrounding areas, Monsanto failed to warn GE or others of the dangers, failed to find safer alternatives to PCBs, and failed to instruct GE in proper disposal methods (see Complaint ¶¶ 21, 49, 50, 53). This conduct directly resulted in the trespass onto Plaintiffs' properties.

Similarly, with respect to nuisance, Plaintiffs submit that the Complaint contains numerous allegations, including those cited above that amply address Monsanto's and GE's intentional and unreasonable conduct, as well as its negligent and reckless conduct, either of which is sufficient to support a claim for nuisance.  See Copart, supra.  The same or similar factual circumstances and allegations have been held to support claims for nuisance and trespass in other cases.

For example, in Scribner, supra, the Second Circuit found that the defendants could be liable for both private nuisance and trespass due to the migration of barium onto the plaintiff's properties. In so holding, it reversed the District Court, which found, after a trial, that the plaintiffs had failed to prove the requisite intent on the part of the defendants. Specifically, the District Court had held that although officers of defendants were aware that barium chloride was created by its manufacturing process, and that it was generated from operations on defendants' site, most likely in connection with the cleaning and destruction of old

furnaces and equipment used in the business, there was no evidence that the

defendants intended the water used in that cleaning process to enter the plaintiffs'

land.   The District Court further held that if water that had been contaminated

seeped into the soil on the defendants' property and thereafter migrated onto the

plaintiffs' property, there was no proof that the defendants intended that to occur,

or that the defendants' acts were so reckless that they should be charged with that

consequence.   The District Court, finding this holding erroneous, stated:

> In determining whether [the defendant] Jasco had the requisite intent
> for trespass under New York law, the issue is not, as the district court
> held, whether "defendants intended the [contaminated] water used in
> [its] cleaning process to enter plaintiffs' land." *Id.* Rather, under
> *Phillips* [v. Sun Oil Co., 307 N.Y.328 (1954)], the appropriate
> standard is whether Jasco: (i) "intend[ed] the *act* which amounts to or
> produces the unlawful invasion," and (ii) "had good reason *to know
> or expect* that subterranean and other conditions were such that there
> would be passage [of the contaminated water] from defendant's to
> plaintiff's land." *Phillips,* 307 N.Y. at 331, 121 N.E.2d 249 (emphasis
> added).

Applying this standard, the Second Circuit concluded that the defendant was

liable in trespass, distinguishing as inapposite several New York cases upon which

the District Court had relied, in which the release of toxic substances into the

environment was inadvertent (*i.e.,* nonwillful) and/or where the defendants did not

have "good reason to know or expect" that the invasion of the plaintiff's property

would occur.   The Second Circuit further held that the defendant was liable in

29

private nuisance based on intentional and unreasonable conduct, including its

disposal and cleansing practices coupled with its knowledge that barium was a

hazardous waste.

Moreover, the fact that Monsanto was not the owner or occupier of GE's

plant does not preclude a claim for nuisance. As was stated in State v. Fermenta

ASC Corp., 166 Misc.2d 524, 630 N.Y.S.2d 884 (Sup. Ct. Suffolk Co. 1995), aff'd

238 A.D.2d 400, 656 N.Y.S.2d 342 (2d Dep't 1997):

> While ordinarily nuisance is an action pursued against the owner of
> land for some wrongful activity conducted thereon, everyone who
> creates a nuisance or participates in the creation or maintenance of a
> nuisance are liable for the wrong and injury done thereby (see *State of
> New York v. Schenectady Chems. Inc.,* 117 Misc.2d 960, 459
> N.Y.S.2d 971, supra; *Suffolk County Water Auth. v. Union Carbide
> Corp.,* NYLJ 5/2/91, P. 28, Col 1,; *United States v. Hooker Chems. &
> Plastics Corp.,* 722 F.Supp. 960, supra; 17 Carmody Wait 2d, §§
> 107.59). A non-landowner can be liable for taking part in the creation
> of a nuisance upon the property of another (see *State of New York v.
> Schenectady Chems. Inc.,* 117 Misc.2d 960, 459 N.Y.S.2d 971,
> supra). Whether the claim of nuisance is based upon affirmative acts
> of negligence in the creation of a nuisance or dangerous condition or
> on liability for an abnormally dangerous activity or condition,
> ownership or possession of the property upon which the condition
> was found is not a prerequisite to responsibility for the injury or
> damage resulting therefrom (see *Suffolk County Water Auth. v. Union
> Carbide Corp.,* NYLJ 5/2/91, supra citing *Merrick v. Murphy,* 83
> Misc.2d 39, 371 N.Y.S.2d 97 [1975] ). Control over the product
> which caused the dangerous condition, therefore, is not a material
> element of a cause of action in nuisance (see *Suffolk County Water
> Auth. v. Union Carbide Corp.,* NYLJ 5/2/91, supra).

**B.    Abnormally Dangerous or Ultrahazardous Activity**

Monsanto contends that the manufacture and sale of PCBs is not, as a matter of law, an ultrahazardous or abnormally dangerous activity, and therefore seeks dismissal of Count IX of Plaintiffs' complaint. According to Monsanto, under New York law, which substantively applies here, such liability may only be imposed on landowners for activity occurring on their property, not against a manufacturer. Monsanto further contends that other courts that have considered this issue have held that the manufacture of PCBs is not an ultrahazardous or abnormally dangerous activity as a matter of law. For the reasons set forth below, Monsanto's argument should be rejected.

The general rule in torts is that one who carries on an abnormally dangerous activity is strictly liable for the harm inflicted by the activity. See Spano v. Perini, 25 N.Y.2d 11, 15, 302 N.Y.S.2d 527, 529, 250 N.E.2d 31 (1969); Restatement (Second) of Torts §§ 519(1).  Restatement (Second) of Torts § 520 sets forth the factors to be considered in determining whether an activity is abnormally dangerous, and Monsanto is correct that New York courts have adopted the approach set forth in § 520.  See Doundoulakis v. Town of Hempstead, 42 N.Y.2d 440, 448, 398 N.Y.S.2d 401, 368 N.E.2d 24 (1977).

These factors are: (a) existence of a high degree of risk of some harm to the

31

person, land or chattels of others; (b) likelihood that the harm that results from it

will be great; (c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage; (e)

inappropriateness of the activity to the place where it is carried on; and (f) extent

to which its value to the community is outweighed by its dangerous attributes.

> As noted in comment (f) to Restatement § 520:
> [T]he factors ... are all to be considered, and are all of importance.
> Any one of them is not necessarily sufficient of itself in a particular
> case, and ordinarily several of them will be required for strict
> liability. On the other hand, it is not necessary that each of them be
> present, especially if others weigh heavily.

In City of Bloomington v. Westinghouse Elec. Corp., 891 F.2d 611 (7th Cir.

1989), upon which Monsanto principally relies, the Seventh Circuit held that the

plaintiff City could not recover against Monsanto in nuisance under the

Restatement rule based upon abnormally dangerous activity.  The court found that

the harm to the City's sewage and landfill at issue there was not caused by any

abnormally dangerous activity of Monsanto, but by the failure of the buyer,

Westinghouse, to safeguard its waste.  Thus, the Seventh Circuit agreed with the

District Court that Monsanto did not control the PCBs contained in

Westinghouse's waste, and therefore, that it could not be deemed a party carrying

on an abnormally dangerous activity [citing Restatement § 519(1)].  The Court

also held that Monsanto could not be liable because cases requiring liability

impose liability for the ultrahazardous activity as a result of the *use* of the product,

not its mere manufacture.

Monsanto now urges this Court to adopt the same analysis, and to find that

it may not be liable for an ultrahazardous or abnormally dangerous activity under

New York law. This argument should be rejected because New York law does not,

in fact, require such a result.

In the first instance, unlike Indiana law and the law of other states as applied

in the cases upon which Monsanto relies,[1] New York law *does recognize* the

validity of a claim against a manufacturer based upon an abnormally dangerous

activity. In State v. Fermenta ASC Corp., supra, 166 Misc.2d 524, 630 N.Y.S.2d

884 (Sup. Ct. Suffolk Co. 1995), aff'd 238 A.D.2d 400, 656 N.Y.S.2d 342 (2d

Dep't 1997), the plaintiff water authority sued the defendant pesticide

manufacturer for groundwater contamination based on its abnormally dangerous

activity of manufacturing the pesticide in question.  Earlier decisions in the same

case held that the water authority stated a claim for private nuisance through

---

[1]  See U.S. v. Union Corp., 277 F.Supp.2d 478 (E.D.Pa. 2003) (applying
Pennsylvania law); Fisher v. Monsanto Co., 863 F.Supp. 285 (W.D.Va.1994)
(applying Virginia law, which had not adopted section of Restatement upon which
plaintiffs relied).

abnormally dangerous activity, but that issues of fact existed as to whether the

pesticide was present in the groundwater at levels constituting a threat to public

health, thus precluding summary judgment in the plaintiff's favor.  See State v.

Fermenta ASC Corp., 160 Misc.2d 187, 608 N.Y.S.2d 980 (Sup. Ct. Suffolk Co.

1994); State v. Fermenta ASC Corp., 162 Misc.2d 288, 616 N.Y.S.2d 702 (Sup.

Ct. Suffolk Co. 1994).[2]

Thus, Monsanto has not shown that a New York court would adopt the same

reasoning employed by the Seventh Circuit interpreting Indiana law with respect

to PCBs.   There also can be no dispute that PCBs are hazardous substances. See

State of New York v. Shore Realty Corp., 759 F.2d 1032, 1038, 1052 (2d Cir.

1985).

In this respect, Monsanto's reliance on McCarthy v. Sturm, Ruger and Co.,

Inc., 916 F.Supp. 366, 371 (S.D.N.Y. 1996) is misplaced.  In that case, which

involved the design and manufacture of ammunition, the court found that the

defendant's argument  – that the doctrine of ultrahazardous activity did not apply

to products but was limited to activities involving the use of land – "appear[ed]

to be correct."   However, the Court did not analyze it further, as the plaintiffs

---

[2] Ultimately, the water authority did not prevail at trial because it could not show the requisite level of contamination under applicable regulations.

were not contesting it, but advancing a different argument.

Notably, Justice Scheindlin's analysis of <u>Bloomington</u> in <u>In re Methyl</u> <u>Tertiary Butyl Ether (MTBE) Products Liability Litigation</u>, 175 F.Supp.2d 593, 32 Envtl. L. Rep. 20, 228 (S.D.N.Y. 2001), supports the opposite conclusion. There, Justice Scheindlin upheld the plaintiffs' claims against various manufacturers and distributors of MTBE, a gasoline additive based upon abnormally dangerous activity under New York, Illinois and California law. In rejecting the defendants arguments, Justice Scheindlin stated:

> In support of their position, defendants rely on *Bubalo v. Navegar, Inc.,* No. 96 C 3664, 1998 WL 142359 (N.D.Ill. Mar. 20, 1998), which found that a manufacturer could not be held liable for public nuisance for designing, marketing, and selling guns (legal and non-defective products) that were targeted to appeal to criminals. *See id.* at *4-5. The nuisance in that case involved the interference with the public's right to be free from injury from the use of powerful assault weapons by criminals. *See id.* at *4. Although the defendants allegedly did more than "merely manufacture and [sell]" the guns by targeting criminals as the final users, the court dismissed the public nuisance claim. *Id.* In reaching its decision, the *Bubalo* court relied on the reasoning of a Seventh Circuit case, *City of Bloomington, Ind. v. Westinghouse Elec. Corp.,* 891 F.2d 611 (7th Cir.1989). In that case, a PCB manufacturer sold PCB's to a third-party, who in turn discharged waste containing PCB's into the sewer system. The court held that the manufacturer could not be held liable for public nuisance, noting that once the manufacturer became aware of the risks associated with PCB's, the manufacturer made every effort to have the third-party dispose of the chemicals safely. *See id.* at 613-15 [citing Bloomington, 891 F.2d at 613-15].

Unlike the manufacturer in *City of Bloomington,* plaintiffs in the present actions allege that the defendants had knowledge of the dangers of the product, failed to warn anyone of these dangers, and actively conspired to conceal the threat caused by MTBE. Although the *Bubalo* court dismissed the public nuisance claims against the gun manufacturers, it specifically stated:

Suppose, however, that [the manufacturer in *City of Bloomington* ] had not taken steps to alert customers of the risks of the product, or <u>intentionally marketed the product to customers who it knew or should have known would dispose of PCB's in a manner that would harm the environment</u>. Nothing in the opinion in *City of Bloomington* would preclude the imposition of liability on the manufacturer under those facts. *Bubalo,* 1998 WL 142359, at *4. Further, a recent New York court noted there must be some circumstances under which a defendant can be held liable for common law public nuisance when its conduct results in ... interference [with a common right], even if another party, not within the defendant's control, contributes to the nuisance. To hold otherwise would defeat much of the purpose of the cause of action.

(underline emphasis added).

Here, as in <u>MTBE</u>, Plaintiffs clearly have alleged throughout their complaint that Monsanto had knowledge of the dangers of its product, failed to warn of these dangers, actively conspired to conceal the threat caused by PCBs, and knew that its product was not being safely disposed of by GE.   As such, Plaintiffs have sufficiently alleged that Monsanto engaged in an abnormally dangerous/ultrahazardous activity.

In addition to the foregoing, this Count should not be dismissed because the

allegations contained therein also support a claim for strict products liability, for which no dismissal is sought by Monsanto herein.

## POINT V

### PLAINTIFFS' ALLEGATIONS OF WILFUL AND WANTON CONDUCT, SUPPORTING A CLAIM FOR PUNITIVE DAMAGES, SHOULD NOT BE STRICKEN

Defendants contend that Plaintiffs' allegations pertaining to wilful and wanton conduct (Count XIII alleged against each Defendant), which support a claim for punitive damages, should be stricken. Defendants argue that claims for punitive damages are not free-standing, have no viability absent their attachment to a substantive cause of action, and are merely claims for additional remedies related to other allegedly tortious conduct.

While it is true that a claim for punitive damages is not a separate cause of action in and of itself (Rocanova v. Equitable Life Assur. Socy. of U.S., 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 [1994]), punitive damages, in contrast to compensatory damages, are awarded to punish a defendant for wanton and reckless or malicious acts and to protect society against similar acts. See Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 200, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990).

Here, Plaintiffs allegations of wilful and wanton conduct in support of a

claim for punitive damages are attached to numerous other, viable causes of action as demonstrated above. Cf. Hamilton v. Garlock, 96 F.Supp.2d 352 (S.D.N.Y. 2000) (upholding award for punitive damages; finding that asbestos manufacturer acted recklessly and in concert with others was supported by evidence that its corporate sibling joined with others to suppress scientific studies performed in 1940s which indicated risks of asbestos, its corporate predecessor was warned by its parent of dangers, and its representative attended industry meeting at which it was decided not to conduct proposed health studies because of expected adverse publicity about asbestosis and cancer).

As such, even if these allegations are not viewed as supporting an independent cause of action, they should not be stricken, but should remain as a demand for punitive damages in connection with such other causes of action, lest there be any doubt at a later date that Plaintiffs are asserting their entitlement to same. See Yong Wen Mo v. Gee Ming Chan, 17 A.D.3d 356, 359-360, 792 N.Y.S.2d 589, 591-592 (2d Dep't 2005) (although plaintiff erroneously denominated her request for punitive damages as a separate cause of action, her request for punitive damages would be reinstated as part of *ad damnum* clause).

## POINT VI

## PLAINTIFFS' CLAIMS FOR BREACH OF
## WARRANTY SHOULD NOT BE DISMISSED

Defendants also argue that Plaintiffs' claims for breach of warranty are time

barred under the applicable New York statute of limitations.  However, these

claims should not be dismissed at this juncture.

N.Y. Uniform Commercial Code ("U.C.C.") § 2-318, entitled "Third Party

Beneficiaries of Warranties Express or Implied" provides that :

> A seller's warranty whether express or implied extends to any natural
> person if it is reasonable to expect that such person may use, consume
> or be affected by the goods and who is injured in person by breach of
> the warranty. A seller may not exclude or limit the operation of this
> section.

As Defendants correctly state, U.C.C. § 2-725 governs causes of action for

breach of warranty for the sale of goods, and mandates that a claim for breach of

warranty be brought within four years after the cause of action accrued.  N.Y.

U.C.C. § 2-725(1); see Chase Manhattan Bank, N.A. v. T & N PLC, 905 F.Supp.

107, 112 (S.D.N.Y.1995);  Heller v. U.S. Suzuki Motor Corp., 64 N.Y.2d 407, 410

(1985).

However, U.C.C. § 2-725(2) establishes a discovery rule that pertains to

express warranties relating to future performance.  That portion of the statute

provides in relevant part:

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.*

(emphasis added).

Thus, for example, in <u>Sackman v. Liggett Group, Inc.</u>, 167 F.R.D. 6 (E.D.N.Y.,1996), the Eastern District held that the plaintiff's claim for breach of the defendant's alleged expressed warranty that smoking cigarettes did not present significant health risks accrued when plaintiff was diagnosed with laryngeal cancer and was advised that it resulted from her smoking.

Similarly, in <u>Pozefsky v. Baxter Healthcare Corp.</u>, 194 F.R.D. 438 (N.D.N.Y. 2000), the Northern District found that issues of fact existed as to whether any assurances were made to the plaintiff concerning longevity of her breast implants, and as to when she first observed a potential problem with her implants, thereby precluding summary judgment on the issue of whether her breach of warranty claim against the maker of the implants was time barred.

Notably, an express warranty can arise from direct statements or from literature published about a product. <u>See Imperia v. Marvin Windows of New</u>

York, Inc., 297 A.D.2d 621, 747 N.Y.S.2d 35 (2d Dep't 2002).

Here, Plaintiffs submit that, based upon Monsanto's and GE's course of conduct as detailed in the Complaint, and particularly, the fraud and concealment allegations, these Defendants made express representations and warranties, including issuing publications about PCBs and PCB containing products, as to the future performance and safety of same.   Accordingly, Plaintiffs submit that their breach of warranty claims have been sufficiently plead, and should not be dismissed.

## POINT VII

## PLAINTIFFS HAVE ALLEGED VALID
## CLAIMS FOR UNJUST ENRICHMENT

Monsanto and GE both further contend that Plaintiffs have failed to state a claim for unjust enrichment in Count XII of the Complaint because there is no claim that Plaintiffs have incurred any costs associated with testing or cleanup of their properties, or that any benefit has been conferred on Defendants.  These arguments should be rejected because Plaintiffs do, in fact allege that they have incurred, and will incur in the future, "the cost of determining the nature and extent of contamination of their properties and the cost of restoring their properties to their pre-contaminated condition," and that Defendants have been unjustly enriched by having the use of funds that should otherwise have been expended for same (Complaint, ¶ 131, 134, 218, 221).

## **CONCLUSION**

For the foregoing reasons, Defendants' instant motions to dismiss should be denied. To the extent the Court finds merit to any of Defendants' contentions, Plaintiffs alternatively ask for permission to amend the Complaint to amplify the allegations contained therein as supported by the documentation submitted in opposition to these motions.

Dated:    White Plains, New York
          June 15, 2007

LAW OFFICES OF LAWRENCE PERRY. BIONDI

By: _____
          Lawrence Perry Biondi (LB-9167)
          Attorneys for Plaintiffs ARMAND CORLEW,
          VINCENT RIGGI, STEPHEN CERNAK, JR.,
          RUTH DEPAOLO and ANGELO RIGGI,
          individually and on behalf of a class similarly situated
          81 Main Street, Suite 504
          White Plains, New York 10601
          (914) 946-5093

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ARMAND CORLEW, VINCENT RIGGI,
STEPHEN CERNAK, JR., RUTH DEPAOLO
and ANGELO RIGGI, individually and on                    07 CV 3258 (KMW)
behalf of a class similarly situated,

                                        Plaintiffs,

      -against-

GENERAL ELECTRIC COMPANY,
MONSANTO COMPANY, PHARMACIA
CORPORATION and SOLUTIA, INC.

                                    Defendants.

-------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION TO DISMISS AND
# IN SUPPORT OF MOTION TO AMEND PLEADINGS



LAW OFFICES OF
LAWRENCE PERRY BIONDI
Attorneys for Plaintiffs
ARMAND CORLEW, VINCENT RIGGI,
STEPHEN CERNAK, JR.,
RUTH DEPAOLO and ANGELO RIGGI,
individually and on behalf of a class similarly situated
81 Main Street, Suite 504
White Plains, New York 10601
(914) 946-5093