UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARMAND CORLEW, et al.,

                        Plaintiffs,

    -against-

GENERAL ELECTRIC CO., et al.,

                        Defendants.

No. 06-CV-0266(VM)
(Consolidated Action)
(07-CV-3258)(VM)

---

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

LEADER & BERKON LLP

630 THIRD AVENUE

NEW YORK, NY 10017

(212) 486-2400

# TABLE OF CONTENTS

Page

Table Of Contents .................................................................................................................. i

Table Of Authorities ............................................................................................................ iii

Standard of Review ............................................................................................................... 1

Argument ................................................................................................................................ 1

I.     The Court Should Dismiss Counts VII, X And XI Of the Complaint Because None Of These Counts Alleges That Monsanto's Manufacture And Sale of PCBs Had Anything To Do With Plaintiffs' Alleged Property Damage ........................................................ 1

    A.     The Manufacture And Sale of PCBs Is Not, As A Matter Of Law, An Ultrahazardous Activity ........................................................................ 1

    B.     Alleged Negligence In The Manufacture And Sale Of A Product Is Not Actionable As A Nuisance And The Complaint Does Not Allege That Monsanto Had Any Intent To Cause a Nuisance ........................................................................................................ 4

    C.     The Complaint Does Not Allege Either That Monsanto Caused PCB Discharges On Plaintiffs' Property Or Had Any Intent To Trespass ............................................................................................. 5

II.     The Court Should Dismiss The Emotional Distress Counts Because The Complaint Does Not Allege That Monsanto Did Anything To Cause Such Distress And The Claims Are Duplicative Of The Product Liability Claim .................................................... 6

III.     The Court Should Dismiss Count XII Because There Is No Allegation That Plaintiffs Conferred Any Benefit On Monsanto ............................ 8

IV.     The Court Should Dismiss Count IV Because The Complaint Does Not Identify Any Specific Misrepresentations, Monsanto Had No Fraud-Based Duty Of Disclosure, And Plaintiffs Did Not Directly Rely On Anything Monsanto Did Or Did Not Say ................................ 8

V.     The Court Should Dismiss Count II Because The Complaint Affirmatively Establishes That The Statute Of Limitations Has Run ........................................................................................................................ 11

VII.  The Court Should Dismiss Counts VIII, IX and XIII, Because These Counts Merely Seek Additional Remedies For The Allegedly Tortious Conduct Asserted In Other Courts............................................. 12

Conclusion ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page

**Cases:**

532 Madison Ave Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,
    750 N.E.2d 1097, 1104 (N.Y. 2001).................................................................. 5

Annutto v. Village of Herkimer,
    297 N.Y.S.2d 295 (App. Div. 1968).................................................................. 5, 6

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007)....................................................................... 1, 7, 9, 10

Bubalo v. Navegar, Inc.,
    1998 WL 1452359 (N.D. Ill. Mar.. 16, 1998) ................................................. 3, 4

City of Bloomington v. Westinghouse Elec. Corp.,
    891 F.2d 611, 615-17 (7th Cir. 1989) ............................................................... 2, 3

City of New York v. Lead Industry Ass'n,
    597 N.Y.S.2d 698, 700 (App. Div. 1993)........................................................ 9

Conley v. Gibson,
    355 U.S. 41 (1957) ........................................................................................... 2

County of Johnson, Tenn. V. U.S. Gypsum Co.,
    580 F. Supp. 284, 294 (E.D. Tenn. 1984)........................................................ 4

Dana v. Oak Park Marina, Inc.,
    660 N.Y.S.2d 906 (App. Div. 1997) ................................................................ 7

Frigitemp Corp. v. Financial Dynamics Fund, Inc.,
    524 F.2d 275, 283 (2d Cir. 1975)..................................................................... 10

H. Sand & Co. v. Aritemp Corp.,
    738 F. Supp. 760, 770 (S.D.N.Y. 1990)........................................................... 11

Hirsch v. Arthur Andersen & Co.,
    72 F.3d 1085 (2d Cir. 1995) ............................................................................. 5

Hurd v. Monsanto Co.,
    908 F. Supp. 604 (S.D. Ind. 1995).................................................................... 8

In re Methyl Tertiary Butyl Ether Products Liability Litigation ("MTBE",

| | |
|---|---|
| 175 F. Supp. 2d 593 (S.D.N.Y. 2001) .................................................................. | 3 |
| In re Methyl Tertiary Butyl Ether ("MTBE II") Productions Liability Litigation<br>379 F. Supp. 2d 348, 431 (S.D.N.Y. 2005).......................................................... | 7 |
| Long Island Lighting Co. v. Transamerica Duval, Inc.<br>316 B.R. 127 (S.D.N.Y. 2004)............................................................................ | 6 |
| Marvin Lumber & Cedar Co. v. PPG Industries, Inc.,<br>646 F. Supp. 1442 (S.D.N.Y. 1986) .................................................................... | 11 |
| Orlando v. Novurania of America, Inc.,<br>162 F. Supp.2d 220, 223 (S.D.N.Y. 2001) ......................................................... | 12 |
| Peerless Mills, Inc. v. A.T.&T. Co.,<br>527 F.2d 445 ($2^d$ Cir. 1975) ............................................................................. | 12 |
| Scribner v. Summers,<br>84 F.3d 554 ($2^d$ Cir. 1996) ............................................................................... | 4, 6 |
| State v. Fermenta ACS Corp.,<br>608 N.Y.S.2d 980, (Sup. Ct. 1994) .................................................................... | 2 |
| State v. Fermenta ACS Corp.,<br>616 N.Y.S.2d 702, (Sup. Ct. 1994).................................................................... | 2 |
| State v. Fermenta ACS Corp.,<br>630 N.Y.S.2d 884, (Sup. Ct. 1995), aff'd, 656 N.Y.S.2d 342 (App. Div. 1007)… | 2, 3 |
| State v. Schenectady Chemicals, Inc.,<br>459 N.Y.S.2d 971 (Sup. Ct. 1983) ..................................................................... | 4 |
| Strategic Alliance Partners, LLC v. Dress Barn, Inc.,<br>386 F. Supp. 312, 318 (S.D.N.Y. 2005) ............................................................. | 10 |
| United States v. Hooker Chemicals & Plastics Corp.,<br>722 F. Supp. 960 (W.D.N.Y. 1989) ................................................................... | 4, 5 |

**Statutes And Other Authorities:**

U.C.C. § 2-725(2) ............................................................................................. 11

Restatement (Second) of Torts ........................................................................ 5

Stedman's Medical Dictionary (25th Ed. 1990) ............................................. 9

### Standard of Review

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), specifically overrules Conley v. Gibson, 355 U.S. 41 (1957), which had held that a complaint could not be dismissed unless, under "no set of facts," could plaintiff prevail.

> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.

127 S. Ct. at 1969. Henceforth, plaintiffs must plead more than a "formulaic recitation of the elements of a cause of action"; they must provide "plausible grounds" to infer the existence of all elements of the claim. 127 S. Ct. at 1965.

### Argument

**I.    The Court Should Dismiss Counts VII, X and XI of the Complaint Because None Of These Counts Alleges That Monsanto's Manufacture And Sale Of PCBs Had Anything To Do With Plaintiffs' Alleged Property Damage**

The central flaw in plaintiffs' ultrahazardous activity, nuisance and trespass claims is that there is no specific allegation that Monsanto had anything to do with the allegedly improper disposition of the PCBs. The only specific allegation is that GE was the responsible party. Plaintiffs do not dispute that courts must disregard conclusory allegations that are contrary to specific ones.

**A.    The Manufacture And Sale Of PCBs Is Not, As A Matter Of Law, An Ultrahazardous Activity**

Plaintiffs claim that manufacturing and selling an allegedly hazardous product subjects one to liability for ultrahazardous activity, at least when the manufacturer allegedly provided inadequate warnings and/or "covered up" the danger. If the Court

bought that theory, every strict liability claim against a manufacturer would automatically be a claim for ultrahazardous activity. Plaintiffs have cited no authority for that theory,

Plaintiffs do not dispute that every case to address the issue has held that the manufacture and sale of PCBs is **not** an ultrahazardous activity. Nor do they dispute the reasons given in City of Bloomington v. Westinghouse Elec. Corp., 891 F.2d 611, 615-17 (7th Cir. 1989), why mere manufacture and sale do not warrant such treatment:

Instead, plaintiffs argue that the New York law of ultrahazardous activity does not distinguish between the manufacturer and seller of a product and a third party who allegedly misuses it. The cases they cite, however, are so cryptic that they provide no guidance on what factors create liability for ultrahazardous activity under New York law.

In State v. Fermenta ACS Corp., 608 N.Y.S.2d 980 (Sup. Ct. 1994), the court denied **plaintiff's** motion for summary judgment, holding that the court could not conclude, "as a matter of law," that Fermenta had "engaged in an abnormally dangerous activity." 608 N.Y.S.2d at 987. In State v. Fermenta ACS Corp., 616 N.Y.S.2d 702 (Sup. Ct. 1994), the court held that its prior order meant that "factual questions" existed such that another plaintiff had stated a cause of action for ultrahazardous activity. 616 N.Y.S.2d at 705. The opinion does not explain what allegations led to that conclusion or what the elements of such a tort against a manufacturer might be.

In State v. Fermenta ACS Corp., 630 N.Y.S.2d 884 (Sup. Ct. 1995), aff'd, 656 N.Y.S.2d 342 (App. Div. 1997), the trial court held that both plaintiffs had failed to prove that the chemical was hazardous and the appellate division affirmed. Neither opinion describes the circumstances under which a manufacturer might be liable for ultrahazardous activity.

2

Plaintiffs' only other authority is In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) (MTBE I). The issue in MTBE I was whether plaintiffs had properly alleged a public nuisance under New York law, not ultrahazardous activity. 175 F. Supp. 2d at 627.

Presumably, plaintiffs cited MTBE I for its discussion of City of Bloomington, which MTBE I purported to distinguish based on Bubalo v. Navegar, Inc., 1998 WL 142359 (N.D. Ill. Mar. 16, 1998). Monsanto respectfully submits that MTBE I misunderstood the holding in Navegar, which was that plaintiffs had not stated a cause of action for nuisance even though the complaint alleged that the defendant gun manufacturer had intentionally marketed assault weapons to criminals. Id. at 5. Navegar found City of Bloomington's analysis of the ultrahazardous theory "ample justification for precluding the application of Illinois nuisance law to reach a similar result." 1998 WL 142359 at *4:

> Cases requiring liability impose liability for the ultrahazardous activity as a result of the *use* of the product. To recognize liability of a manufacturer or distributor would virtually make them the insurer for such products as explosives, hazardous chemicals or dangerous drugs even though such products are not negligently made nor contain any defects. Although such a social policy may be adopted by the legislature, it ought not to be imposed by judicial decree.

Id. (emphasis original). That rationale fully applies to the instant case.

Plaintiffs' final argument is that the Court should not dismiss their claim for ultrahazardous conduct because those allegations "also support a claim for strict liability." Br. at 36-37. To establish a strict liability claim, plaintiffs must prove that the PCBs were defective. Monsanto is confident that, as a matter of fact, plaintiffs can never do so. By contrast, a defendant in a ultrahazardous activity claim is liable regardless of product defect. This theory seeks to hold Monsanto liable for alleged misuse of the PCBs

3

over which Monsanto had no control. Just as in <u>Navegar</u>, that improperly makes the manufacturer an insurer of the safety of its non-defective products.

**B.      Alleged Negligence In The Manufacture And Sale Of a Product Is Not Actionable As A Nuisance And The Complaint Does Not Allege That Monsanto Had Any Intent To Cause A Nuisance.**

Plaintiffs claim that they have alleged intentional, unreasonable and negligent conduct by Monsanto. Br. at 28. But that conduct has no connection with the alleged invasion of plaintiffs' property and there is no allegation that Monsanto intended any such invasion. "[A]llowing the plaintiff to bring this action under a nuisance theory would convert almost every products liability action into a nuisance claim." <u>County of Johnson, Tenn. v. U.S. Gypsum Co.</u>, 580 F. Supp. 284, 294 (E.D. Tenn. 1984), <u>mod. on other grounds</u>, 664 F. Supp. 1129 (E.D. Tenn. 1985).

<u>Scribner v. Summers</u>, 84 F.3d 554 ($2^d$ Cir. 1996), is not to the contrary. The Second Circuit found defendants liable for nuisance because their "on-site disposal and cleaning practices" caused barium to enter the environment and "migrate off site onto plaintiffs' property." 84 F.3d at 559. The instant complaint does not allege that Monsanto played any role in the disposal of the PCBs.

Plaintiffs also rely on the final trial court opinion in <u>Fermenta</u>. Br. at 30. The quoted portion of the opinion is pure dictum; the holding is that the chemical was not dangerous and therefore no nuisance could be established. 630 N.Y.S.2d at 891. <u>Fermenta</u> relied on cases like <u>United States v. Hooker Chemicals & Plastics Corp.</u>, 722 F. Supp. 960 (W.D.N.Y. 1989), and <u>State v. Schenectady Chemicals, Inc.</u>, 459 N.Y.S.2d 971 (Sup. Ct. 1983), <u>mod. on other grounds</u>, 479 N.W.S.2d 1010 (App. Div. 1984). The former dealt with the liability of "the generator and disposer of the hazardous wastes,"

4

722 F. Supp. at 966; the latter dealt with a chemical company that hired an independent contractor "to dispose of the waste material' on a site owned by the contractor. 459 N.Y.S.2d at 973.

As it relates to Monsanto, the instant case involves a claim against a manufacturer of a useful product because a third party allegedly disposed of that product improperly. Section 834 of the Restatement imposes liability for nuisance only upon one who "carries on the activity" or "participates to a substantial extent in carrying it on," and New York courts have long followed the Restatement in defining a nuisance. 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 750 N.E.2d 1097, 1104 (N.Y. 2001).

### C. The Complaint Does Not Allege Either That Monsanto Caused PCB Discharges On Plaintiffs' Property Or Had Any Intent To Trespass.

Plaintiffs assert that the complaint alleges that Monsanto's conduct both caused and resulted in the alleged trespass. Br. at 27. Those are precisely the kind of conclusory allegations, contrary to the specific allegations against GE, that Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2$^d$ Cir. 1995) holds are insufficient as a matter of law.

Plaintiffs argue that Monsanto knew that PCBs were dangerous and that they were being discharged onto plaintiffs' property. Br. at 27. That does not allege that Monsanto did anything to cause that state of affairs, let alone that Monsanto intended such an act.

Plaintiffs claim that Monsanto's alleged knowledge of the alleged dangers of PCBs and its alleged failure to warn "directly resulted" in the alleged trespass. Br. at 27-28. That allegation plainly does not satisfy the standard of "direct result" set forth in Annutto v. Village of Herkimer, 297 N.Y.S.2d 295 (App. Div.), rev'g, 288 N.Y.S.2d 79 (Sup. Ct. 1968), where the Village dynamited ice in a creek hoping to send the water down the main channel. Instead, the water went into a side channel, ran up against a

5

bridge, and flooded plaintiffs' property. The trial court granted summary judgment to plaintiffs on their trespass claim, relying on cases in which blasting threw rock or other debris onto another's property. The Appellate Division, however, reversed:

> Here blasting was employed as a means of removing obstructions in the waterway to secure the public safety and the only immediate and direct result of such blasting was the removal of such obstructions.

297 N.Y.S.2d at 296.

In <u>Annutto</u>, the blasting created a condition that made possible the invasion of plaintiffs' property, but was not itself a trespass. Here, Monsanto's manufacture and sale of PCBs may have made possible the alleged invasion of plaintiffs' property, but was not itself a trespass.

Once again, <u>Scribner</u> is readily distinguishable. To repeat, the defendants held liable for trespass there were the persons who improperly disposed of their furnaces knowing that they contained a hazardous substance and knowing that plaintiffs' property was downhill from the demolition site. 84 F.3d at 558. There is no allegation that Monsanto did anything to dispose of the PCBs.

II.     **The Court Should Dismiss The Emotional Distress Counts Because The Complaint Does Not Allege That Monsanto Did Anything To Cause Such Distress And The Claims Are Duplicative Of The Product Liability Claim.**

Much of plaintiffs' response on the emotional distress claims misses the point. They argue at length that New York law allows them to seek **damages** for emotional distress, provided they satisfy the stringent requirements for such damages. Br. at 18-21. Counts V and VI, however, do not merely seek damages; they seek to impose <u>**liability**</u> under these theories as stand-alone torts.

If this is one of the "rare" cases in which emotional distress damages are proven, In re Methyl Tertiary Butyl Ether Products Liability Lit., 379 F. Supp. 2d 348, 431 (S.D.N.Y. 2005) (MTBE II), Monsanto does not dispute plaintiffs' right to seek such damages if they prevail on their product liability theories. It is precisely for that reason that New York would not allow them to recover under these theories as stand-alone torts, an argument to which plaintiffs have never responded.

Plaintiffs are correct that MTBE II denied a motion to dismiss intentional infliction claims against manufacturers. Br. at 21-22. MTBE II is no longer good law on that point. Because the ruling preceded Twombly, Judge Scheindlin properly applied Conley's "no set of facts" standard to the motion to dismiss. 379 F. Supp. 2d at 367.

Had Judge Scheindlin applied Twombly, she would have granted the motion. New York courts are "loathe" to allow recovery of such damages, id. at 431:

> Given that MTBE is only a "probable," and not a known, human carcinogen, it is likely that plaintiffs will be unable to withstand summary judgment on these emotional distress claims. Nonetheless, it is sufficient at the pleading stage that there exists a set of facts which, if proven, would entitle the Tonneson and Basso plaintiffs to relief.

Id. at 432. That pleading would not survive under the "plausible grounds" standard.

Plaintiffs also argue that recklessness will suffice if the other elements of the tort are met. Br. at 22-23, citing Dana v. Oak Park Marina, Inc., 660 N.Y.S.2d 906 (App. Div. 1997). The defendants in Dana videotaped naked women changing into swim trunks in the ladies room and "displayed those tapes to others for purposes of trade." 660 N.Y.S.2d at 910. That kind of conduct is outrageous. Manufacturing and selling a useful product is not, even if plaintiffs' complaints about warnings were valid.

Insofar as Monsanto can determine, plaintiffs have not even tried to respond to the motion to dismiss the negligent infliction claim.

### III. The Court Should Dismiss Count XII Because There Is No Allegation That Plaintiffs Conferred Any Benefit On Monsanto

Whatever monies plaintiffs spent could not, as a matter of law, have benefited Monsanto. The manufacturer of a useful product does not, as a matter of law, have any liability under the environmental laws to clean up property where the product is dumped. That rule specifically applies to PCBs, and plaintiffs do not even try to respond.

### IV. The Court Should Dismiss Count IV Because The Complaint Does Not Identify Any Specific Misrepresentations, Monsanto Had No Fraud-Based Duty Of Disclosure, And Plaintiffs Did Not Directly Rely On Anything Monsanto Did Or Did Not Say

Monsanto's opening memorandum established that Count IV does not comply with Rule 9(b) as it relates to misrepresentations and there is no fraud-based duty on Monsanto to speak as it relates to omissions. Moreover, there is no meaningful allegation that plaintiffs, as opposed to GE, relied on any of these misrepresentations or omissions.

Relying primarily on <u>Hurd v. Monsanto Co.</u>, 908 F. Supp. 604 (S.D. Ind. 1995), plaintiffs claim that they are entitled to a "more lenient" standard of compliance with Rule 9(b), because the "transactions involved are complex or cover a long period of time." Br. at 17. In other words, the broader the alleged fraud, the less specificity is required.

<u>Hurd</u> held that the allegations there were "just barely" adequate to satisfy Rule 9(b) because, although the complaint identified no specific speaker, it did allege the "time period involved and the content of the misrepresentations." 908 F. Supp. at 614. The instant complaint does not do so. The only specific references to the dates of Monsanto's

8

alleged "fraud" appear in ¶¶ 79 and 82. The first of these alleges that, in 1969, Monsanto appointed a committee to address alleged contamination arising from PCBs. Compl. ¶ 79. The complaint does not allege that the committee made any public statement about this topic or any other, in 1969 or at any other time.

The second alleges that, in 1975, Monsanto asked an independent testing laboratory to change its description of PCBs from "slightly tumorigenic" to "does not appear to be carcinogenic." Compl. ¶ 82. The conclusory allegation that Monsanto requested the laboratory to "falsify" its report does not satisfy Twombly.

"Tumorigenic" means "producing tumors." Stedman's Medical Dictionary (25th Ed. 1990) at 1655. "Carcinogenic" means "causing cancer." Id. at 245. Some tumors are carcinogenic and some are benign. The complaint does not allege that Monsanto asked the laboratory to reclassify any cancer-causing tumors as non-carcinogenic.

Every other aspect of the alleged "fraud" involves an alleged failure to disclose to someone some aspect of Monsanto's alleged knowledge. As Monsanto explained in its initial memorandum, under New York law, an omission can be fraudulent only if there is some duty to speak. This complaint alleges no factual basis for such a duty.

Plaintiffs cite City of New York v. Lead Industry Ass'n, 597 N.Y.S.2d 698, 700 (App. Div. 1993), for the proposition that "[m]isrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud." Br. at 10-12. As previously explained, Count IV is not primarily about misrepresentation and the only two paragraphs that do allege misrepresentations do not comply with Rule 9(b). Contrary to plaintiffs' allegation, Br. at 11, Monsanto has never argued that there must be a special fiduciary or

9

business relationship to support a fraud claim based on misrepresentation. It has argued that such a relationship is necessary for a fraud claim based on omission. Strategic Alliance Partners, LLC v. Dress Barn, Inc., 386 F. Supp. 2d 312, 318 (S.D.N.Y. 2005) (granting Rule 12(b)(6) motion because "complaint fails to allege that there was a sufficient relationship between Dress Barn and Strategic such that a duty to disclose existed"); Frigitemp Corp. v. Financial Dynamics Fund, Inc., 524 F.2d 275, 283 ($2^d$ Cir. 1975) (affirming Rule 12(b)(6) dismissal on same grounds).

Monsanto also pointed out that there is no meaningful allegation that plaintiffs, as opposed to some third party, relied on anything Monsanto did or did not say. Plaintiffs claim that ¶¶ 89-90 supply the necessary allegations. Br. at 13-14. But those are just the kind of "formulaic recitation[s] of the elements of a cause of action" that Twombly rejects. 127 S. Ct. at 1965.

Paragraph 89 alleges that "[t]he general public, GE and the plaintiffs herein relied . . . to their detriment by continuing to buy and use said products and materials and by improperly disposing of said products and materials after their use thereof." Are plaintiffs seriously suggesting that they, as opposed to GE, bought and used PCBs? Are they seriously suggesting that they, as opposed to GE, improperly disposed of the PCBs?

Paragraph 90 is no better. It is merely a boilerplate allegation that Monsanto's conduct was a proximate cause of their alleged damages. That is precisely the kind of boilerplate that Twombly rejects as insufficient.

Plaintiffs' real theory here is that Monsanto defrauded GE and that alleged fraud proximately caused their alleged damages. But they do not seriously dispute that a common law fraud claim, whether in misrepresentation or in omission, requires direct

reliance. They do claim that a statement to a third party may be a basis for a fraud claim. Br. at 15, citing Peerless Mills, Inc. v. A. T. & T. Co. 527 F.2d 445 (2$^d$ Cir. 1975). As Peerless itself states, however, that rule applies only when plaintiff "can establish that he relied upon" that statement "to his detriment" and then only if "defendant intended the misrepresentation to be conveyed to him." 527 F.2d at 450. Plaintiffs have not alleged either element.

V. **The Court Should Dismiss Count II Because The Complaint Affirmatively Establishes That The Statute Of Limitations Has Run**

Plaintiffs argue that they are pursuing claims for breach of warranty of future performance, so the discovery rule in U.C.C. § 2-725(2) saves their claims. The discovery rule in § 2-725(2) applies only when the warranty "**explicitly** extends to future performance" (emphasis added). The courts have been "very harsh in determining whether a warranty explicitly extends to future performance." H. Sand & Co. v. Airtemp Corp., 738 F. Supp. 760, 770 (S.D.N.Y. 1990), reversed on other grounds, 934 F.2d 450 (2$^d$ Cir. 1991) (citations and internal punctuation omitted):

> The term "explicit" has been explained as plain language which is distinctly stated, clear and unequivocal to the point that there is no doubt as to its meaning.

Id. By definition, an implied warranty does not satisfy the test. Id.

To qualify as a warranty of future performance, the warranty must explicitly refer to the future. "[A]n express warranty of the present condition of the goods without a specific reference to the future is not an explicit warranty of future performance, even if the description implies that the good will perform a certain way in the future." Marvin Lumber & Cedar Co. v. PPG Industries, Inc., 223 F.3d 873, 879 (8th Cir. 2000).

11

Here, the complaint alleges that Monsanto "expressly and impliedly warranted that said PCBs-containing materials were of good and merchantable quality and fit for their intended use." Compl. ¶ 63. As a matter of law, such a warranty is a present warranty, not a future one. Long Island Lighting Co. v. Transamerica Duval, Inc., 646 F. Supp. 1442 (S.D.N.Y. 1986), aff'd, 6 F.3d 876 (2$^d$ Cir. 1993). The warranty there provided that the goods would be "free from defects in design, workmanship and material and be suited for their intended purpose." 646 F. Supp. at 1455 (internal punctuation omitted). The Court held that this "warranty of merchantability is a present warranty, a breach of which occurs upon delivery." Id. (emphasis original). Accord, Orlando v. Novurania of America, Inc., 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001) (implied "warranty of merchantability and fitness claims . . . accrued on date seller sold machine").

Plaintiffs' "course of conduct" argument, based on Monsanto's alleged "fraud and concealment," Br. at 41, is even more outlandish. The only alleged misrepresentation is the change in the laboratory report, which is silent about the future. Plaintiffs cite no authority for the proposition that concealing the alleged dangers of a product – i.e., **not** telling buyers about an alleged danger – somehow operates as an "explicit" warranty that it is safe, and the proposition is not intuitively obvious.

### VI.   The Court Should Dismiss Counts VIII, IX and XIII, Because These Counts Merely Seek Additional Remedies For The Allegedly Tortious Conduct Asserted In Other Courts

The separate counts for medical monitoring (Count VIII), fear of cancer (Count IX), and punitive damages (Count XIII), are not stand-alone tort claims. Rather, they are

12

remedies which, in narrow circumstances, may be appropriate to redress some other tort, such as plaintiffs' product liability claims.

Plaintiffs admit as much in their discussion of punitive damages. Br. at 37. With respect to medical monitoring and fear of cancer, they repeat the same error that infects their discussion of emotional distress: they assume that the availability of a remedy, if they can satisfy its stringent proof requirements, equates to a theory of liability. Br. at 18-21. They cite no authority for that proposition nor respond to the cases Monsanto has cited.

This is not just a technicality. Plaintiffs may have stated a cause of action in their product liability counts but Monsanto is satisfied that they can never prove their case. When the Court does enter judgment on those counts for Monsanto, that will terminate the case as to Monsanto, and there will be no basis for any of the remedies plaintiffs now seek.

## Conclusion

For these reasons, Monsanto and Pharmacia respectfully request that the Court dismiss all counts of plaintiffs' Complaint except Counts I and III.

Dated: New York, New York  
      June 29, 2007

LEADER & BERKON LLP

By: _/s/ James K. Leader_  
JAMES K. LEADER (JL-9417)  
THOMAS K. RICHARDS (TR-8945)  
630 Third Avenue, 17th Floor  
New York, New York 10017  
(212) 486-2400

-and-

13

Thomas M. Carney, Esq.
Kenneth R. Heineman, Esq.
Carol A. Rutter, Esq.
Adam Miller, Esq.
Mark G. Arnold, Esq.
HUSCH & EPPENBERGER, LLC
The Plaza in Clayton Office Tower
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500

*Attorneys for Defendants*
*Monsanto Company and Pharmacia*
*Corporation*

14